FILED

2012 JAN 17 PM 3: 18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:_____

1 | Ruby Wayne Wood (SBN 229538)
  | rwood@goodwinprocter.com
2 | **GOODWIN PROCTER LLP**
  | 601 S. Figueroa Street, 41st Floor
3 | Los Angeles, CA 90017
  | Tel.: 213.426.2500
4 | Fax:  213.623.1673

5 | Attorneys for Defendants
  | **WISDOM TREE INVESTMENTS,**
6 | **INC.; WISDOM TREE TRUST;**
  | **WISDOM TREE ASSET**
7 | **MANAGEMENT, INC.; WISDOM**
  | **TREE RETIREMENT SERVICES,**
8 | **INC.; MELLON CAPITAL**
  | **MANAGEMENT CORP.; and ALPS**
9 | **DISTRIBUTORS, INC.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| Research Affiliates, LLC, | Case No. SACV11-01846 DOC (ANx) |
|---|---|
| Plaintiff, | **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |
| v. | |
| Wisdom Tree Investments, Inc., Wisdom Tree Trust, Wisdom Tree Asset Management, Inc., Wisdom Tree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc., | Judge:  Hon. David O. Carter Complaint Filed:  December 1, 2011 **DEMAND FOR JURY TRIAL** |
| Defendants. | |

ORIGINAL  BY FAX

LIBA/2254980.1

ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

## ANSWER

Defendants WisdomTree Investments, Inc., WisdomTree Trust, WisdomTree Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc. (collectively "Defendants") hereby answer and otherwise respond to the numbered paragraphs of the Complaint for Patent Infringement ("Complaint") filed by Plaintiff Research Affiliates, LLC ("Plaintiff" or "RA"), as follows:

## NATURE OF THE SUIT

1.     In response to Paragraph 1 of the Complaint, Defendants admit that Plaintiff purports to allege a cause of action for patent infringement arising under Title 35 of the United States Code.

2.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, deny each allegation.

3.     In response to Paragraph 3 of the Complaint, WisdomTree Investments, Inc. ("WT Investments") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017.

4.     WisdomTree Trust ("WT Trust") admits the allegations contained in Paragraph 4, except to state that the Chief Executive Officer of WT Investments currently serves as a Trustee and President of WT Trust; and the Chief Financial Officer of WT Investments currently serves as Treasurer of WT Trust.

5.     In response to Paragraph 5 of the Complaint, WisdomTree Asset Management, Inc. ("WT Asset Management") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017. WT Asset Management admits that it is a wholly-owned subsidiary of WT Investments

1 that provides investment advisory services.  Defendants deny the remaining

2 allegations in Paragraph 5.

3       6.    WisdomTree Retirement Services, Inc. ("WT Retirement Services")

4 admits that it is a corporation organized and existing under the laws of the State of

5 Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York,

6 New York 10017 and that WT Retirement Services is a wholly-owned subsidiary of

7 WT Investments.  Defendants deny the remaining allegations in Paragraph 6.

8       7.    Mellon Capital Management Corp. ("MCM") admits that it is a

9 corporation organized and existing under the laws of the State of Delaware, with a

10 place of business at 50 Fremont Street, Suite 3900, San Francisco, California 94105.

11 MCM admits that it has contracts with WT Asset Management to provide certain

12 services.  Defendants deny the remaining allegations of Paragraph 7.

13       8.    ALPS Distributors Inc. ("ALPS") admits that it is a corporation

14 organized and existing under the laws of the State of Colorado, with a place of

15 business at 1290 Broadway, Suite 1100, Denver, Colorado 80203.

16 Defendant WT Investments admits that ALPS is a distributor of WT ETFs.

17 **JURISDICTION AND VENUE**

18       9.    Defendants admit that this Court has jurisdiction over the subject

19 matter of the Complaint.

20       10.    Paragraph 10 states legal conclusions as to which no responsive

21 pleading is required, and to the extent any responsive pleading is required,

22 Defendants deny the allegations in Paragraph 10.

23       11.    Paragraph 11 states legal conclusions as to which no responsive

24 pleading is required, and to the extent any responsive pleading is required,

25 Defendants deny the allegations in Paragraph 11.

26 **THE PATENTS-IN-SUIT**

27       12.    Defendants admit that U.S. Patent No. 7,747,502 ( "the '502 Patent")

28 was issued on June 29, 2010 and is entitled "Using Accounting Data Based Indexing

ANSWER, AFFIRMATIVE DEFENSES          Case No. SACV11-01846 DOC (ANx)
AND COUNTERCLAIMS

to Create A Portfolio of Assets." Defendants are otherwise without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 12 and on that basis deny them.

13. Defendants admit that U.S. Patent No. 7,792,719 ("the '719 Patent") was issued on September 7, 2010 and is entitled "Valuation Indifferent Non-Capitalization Weighted Index and Portfolio." Defendants are otherwise without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 13 and on that basis deny them.

14. Defendants admit that U.S. Patent No. 8,005,740 ("the '740 Patent") was issued on August 23, 2011 and is entitled "Using Accounting Data Based Indexing to Create a Portfolio of Financial Objects." Defendants are otherwise without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 14 and on that basis deny them.

15. Defendants lack sufficient knowledge or information either to admit or deny the truth of the allegations regarding the ownership of the '502 Patent, '719 Patent, and '740 Patent (collectively, "Patents-in-Suit") and on that basis deny the allegations in Paragraph 15.

16. Defendants deny the allegations of Paragraph 16.

17. WT Investments was advised of the existence of a published version of the patent application corresponding to the '719 Patent and had knowledge of the existence of the Patents-in-Suit at different points after their issuance. Defendants deny the remaining allegations in Paragraph 17.

18. WT Investments received a letter from counsel for RA in September 2005 identifying a patent application published as U.S. Pub. No. 20050171884 ("the '884 Application"). That application evolved into the '719 Patent five years later with a different title and claims. Defendants deny the remaining allegations of Paragraph 18.

19.   WT Investments admits that Mr. S. Craig Hemenway responded to the September 2005 letter with an October 7, 2005 letter on behalf of WT Investments. Defendants deny the remaining allegations in Paragraph 19.

20.   WT Investments admits that Mr. Hemenway's October 7, 2005 letter did mention service copies of a Third Party Submission to the United States Patent and Trademark Office ("USPTO") that included prior art references material to the patentability of the '884 Application but apparently not disclosed by the applicant to the USPTO at the time of the letter. Defendants deny the remaining allegations in Paragraph 20.

21.   WT Investments admits that Mr. Hemenway provided copies of the two Third Party Submissions regarding the application for the '719 Patent in an October 12, 2005 letter to RA. Defendants deny the remaining allegations of Paragraph 21.

22.   WT Investments admits that Mr. Hemenway also submitted prior art during the prosecution of the application that led to the issuance of the '502 Patent. Defendants deny the remaining allegations of Paragraph 22.

23.   Defendants deny the allegations of Paragraph 23.

24.   Defendants lack sufficient knowledge or information either to admit or deny the truth of the allegations in Paragraph 24 of the Complaint and, therefore, deny those allegations.

25.   Defendants lack sufficient knowledge or information either to admit or deny the truth of the allegations in Paragraph 25 of the Complaint and, therefore, deny those allegations.

26.   WT Investments admits that Mr. Arnott met in 2007 in New York with Mr. Michael Steinhardt, who is the current chairman of the Board of Directors of WT Investments. Defendants are without sufficient knowledge or information either to admit or deny the truth of the remaining allegations in Paragraph 26 and on that basis deny them.

1        27.    WT Investments denies that Bruce Lavine attended or was aware of

2   matters discussed at the purported meeting referenced in Paragraph 27 of the

3   Complaint.  Defendants lack sufficient knowledge or information either to admit or

4   deny the truth of the remaining allegations in Paragraph 27 of the Complaint and,

5   therefore, deny those allegations.

6        28.    Defendants deny the allegations of Paragraph 28.

7        29.    Defendants lack sufficient knowledge or information either to admit or

8   deny the truth of the allegations in Paragraph 29 and, therefore, deny those

9   allegations.

10   **COUNT I – INFRINGEMENT OF THE '502 PATENT**

11   **(Against All Defendants)**

12        30.    Defendants incorporate by reference their responses to Paragraphs 1

13   through 29 of the Complaint, as if fully set forth herein.

14        31.    Defendants deny each of the allegations of Paragraph 31.

15        32.    Defendants deny each of the allegations in Paragraph 32.

16        33.    Defendants deny each of the allegations in Paragraph 33.

17        34.    Defendants deny each of the allegations in Paragraph 34.

18        35.    Defendants admit that WT Trust issues certain ETFs that seek to track

19   the WT Indexes.  Defendants deny the remaining allegations in Paragraph 35.

20        36.    Defendants deny each of the allegations in Paragraph 36.

21        37.    Defendants deny each of the allegations in Paragraph 37.

22        38.    Defendants deny each of the allegations in Paragraph 38.

23        39.    Defendants deny each of the allegations in Paragraph 39.

24        40.    Defendants deny each of the allegations in Paragraph 40.

25        41.    Defendants deny each of the allegations in Paragraph 41.

26        42.    Defendants deny each of the allegations in Paragraph 42.

27        43.    Defendants deny each of the allegations in Paragraph 43.

28

LIBA/2254980.1

ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

## COUNT II – INFRINGEMENT OF THE '719 PATENT

### (Against WT Investments, WT Trust and WT Asset Management)

44. Defendants incorporate by reference their responses to Paragraphs 1 through 43 of the Complaint, as if fully set forth herein.

45. Defendants deny each of the allegations in Paragraph 45.

46. Defendants deny each of the allegations in Paragraph 46.

47. Defendants deny each of the allegations in Paragraph 47.

48. Defendants deny each of the allegations in Paragraph 48.

49. Defendants deny each of the allegations in Paragraph 49.

50. Defendants deny each of the allegations in Paragraph 50.

51. Defendants deny each of the allegations in Paragraph 51.

## COUNT III – INFRINGEMENT OF THE '740 PATENT

### (Against WT Investments, WT Trust and WT Asset Management)

52. Defendants incorporate by reference their responses to Paragraphs 1 through 51 of the Complaint, as if fully set forth herein.

53. Defendants deny each of the allegations in Paragraph 53.

54. Defendants deny each of the allegations in Paragraph 54

55. Defendants deny each of the allegations in Paragraph 55.

56. Defendants deny each of the allegations in Paragraph 56.

57. Defendants deny each of the allegations in Paragraph 57.

58. Defendants deny each of the allegations in Paragraph 58.

59. Defendants deny each of the allegations in Paragraph 59.

## PRAYER FOR RELIEF

60. Defendants deny that RA is entitled to any judgment or relief, including but not limited to that requested in Paragraphs A through H, of the Prayer for Relief in the Complaint.

## GENERAL DENIAL

61.     Except as specifically admitted, Defendants deny each and every allegation contained in Plaintiff's Claims.

## AFFIRMATIVE AND OTHER DEFENSES

62.     In addition to the defenses described below, each Defendant expressly reserves the right to allege additional defenses as they become known through the course of discovery.

## FIRST AFFIRMATIVE DEFENSE: NON-INFRINGEMENT

63.     Plaintiff is not entitled to any relief against Defendants because Defendants do not infringe, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and enforceable claim of the Patents-in-Suit.

## SECOND AFFIRMATIVE DEFENSE: INVALIDITY

64.     The Patents-in-Suit are invalid for failure to meet one or more of the conditions for patentability set forth in Title 35 of the U.S. Code, 35 U.S.C. §§ 100 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

## THIRD AFFIRMATIVE DEFENSE: UNENFORCEABILITY/ INEQUITABLE CONDUCT

65.     Defendants reserve the right to allege after appropriate discovery that one or more of the Patents-in-Suit are unenforceable as a result of inequitable conduct in connection with the Patents-in-Suit.

## FOURTH DEFENSE: NO INJUNCTIVE RELIEF

66.     Plaintiff is not entitled to injunctive relief because any injury to RA is not immediate or irreparable, and/or RA has an adequate remedy at law.

## FIFTH AFFIRMATIVE DEFENSE:
## PROSECUTION HISTORY ESTOPPEL & DISCLAIMER

67.     The Patents-in-Suit are unenforceable in whole or in part and/or are limited in scope because of the doctrines of prosecution history estoppel and/or prosecution disclaimer and/or specification disclaimer.

## SIXTH AFFIRMATIVE DEFENSE:  LACHES, WAIVER, & ESTOPPEL

68.     The Patents-in-Suit are unenforceable in whole or in part because of laches, waiver and/or estoppel.

## SEVENTH AFFIRMATIVE DEFENSE:
## LIMITS ON DAMAGES UNDER 35 U.S.C. § 287

69.     Plaintiff's claims for relief and alleged damages are limited by 35 U.S.C. § 287.

## EIGHTH AFFIRMATIVE DEFENSE:  UNCLEAN HANDS,
## PATENT MISUSE & UNFAIR COMPETITION

70.     Plaintiff's claims are barred in whole or part by reason of its unclean hands, patent misuse, and/or unfair competition, such as by Plaintiff abusing and/or attempting to abuse, the exclusive rights purportedly enjoyed as a result of the issuance of the Patents-in-Suit with anticompetitive effect.

## COUNTERCLAIMS

71.     For their counterclaims against Counterclaim Defendant Research Affiliates, LLC ("RA"), Counterclaim Plaintiffs WisdomTree Investments, Inc., WisdomTree Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc. (collectively "Counterclaim Plaintiffs ") aver as set forth below.

## THE PARTIES

72.     Counterclaim Plaintiff WisdomTree Investments, Inc. ("WT Investments") is a corporation organized and existing under the laws of the State of

1   Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York,

2   New York 10017.

3        73.    Counterclaim Plaintiff WisdomTree Trust ("WT Trust") is a trust

4   organized and existing under the laws of the State of Delaware, with a place of

5   business at 380 Madison Avenue, 21st Floor, New York, New York 10017.

6        74.    Counterclaim Plaintiff WisdomTree Asset Management, Inc. ("WT

7   Asset Management") is a corporation organized and existing under the laws of the

8   State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor,

9   New York, New York 10017.  WT Asset Management is a wholly-owned subsidiary

10  of WT Investments.

11       75.    Counterclaim Plaintiff WisdomTree Retirement Services, Inc. ("WT

12  Retirement Services") is a corporation organized and existing under the laws of the

13  State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor,

14  New York, New York 10017.  WT Retirement Services is a wholly-owned

15  subsidiary of WT Investments.

16       76.    Counterclaim Plaintiff Mellon Capital Management Corp. ("MCM") is

17  a corporation organized and existing under the laws of the State of Delaware, with a

18  place of business at 50 Fremont Street, Suite 3900, San Francisco, California 94105.

19       77.    Counterclaim Plaintiff ALPS Distributors Inc. ("ALPS") is a

20  corporation organized and existing under the laws of the State of Colorado, with a

21  place of business at 1290 Broadway, Suite 1100, Denver, Colorado 80203.  ALPS is

22  a distributor or broker-dealer.

23       78.    On information and belief, Counterclaim-Defendant Research Affiliates

24  LLC ("RA") is a limited liability company organized under the laws of the State of

25  California and has a principal place of business at 620 Newport Center Dr., Suite

26  900, Newport Beach, California.

27

28

## NATURE OF THE COUNTERCLAIMS

79. The counterclaims seek a declaration of non-infringement and invalidity of U.S. Patent Nos. 7,747,502; 7,792,719; and 8,005,740 ("the Patents-in-Suit").

80. RA alleges in its Complaint that it is the owner of all right, title, and interest to the Patents-in-Suit and has the right to bring an action and recover damages for infringement of the Patents-in-Suit. RA further alleges that each of the Counterclaim Plaintiffs infringes some or all of the Patents-in-Suit.

81. Defendants deny that they have ever directly or indirectly infringed, or infringed in any manner, any valid and enforceable claim of the Patents-in-Suit.

## JURISDICTION AND VENUE

82. These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*

83. This Court has subject matter jurisdiction over these counterclaims based upon 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

84. This Court has personal jurisdiction over Counterclaim-Defendant RA at least for the reason that it consented to jurisdiction by initiating this action. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND FACTS ON COUNTERCLAIM PLAINTIFFS' DECLARATORY JUDGMENT COUNTERCLAIMS

85. Exchange traded funds (ETFs) are funds that are traded on major exchanges as shares much in the same way that shares of an individual stock can be traded. Typically, ETFs are built by selecting a portfolio of a particular set of assets (such as stocks) and then weighting them in some fashion. Certain ETFs also attempt to track an index representing a selected set of assets.

86. For many years, various stock indexes have been developed to factor in the share price or market capitalization of the selected assets so that those indexes

1    are sensitive to price changes in the market.  For example, the Dow Jones Industrial

2    30 index weights its assets based on price.  The S&P 500 index weights its assets

3    based on market capitalization of the companies associated with each equity asset.

4    Other indexes have equally weighted their components, without respect to price.

5         87.    Over the years, some academics and investors have found price or

6    market-cap based funds to be unsatisfactory because they believe these funds to be

7    overly influenced by market valuation, too volatile, and susceptible to providing

8    sub-optimal returns.

9         88.    These and other criticisms of price or market-cap based funds arise

10   from some very old ideas—value investing and the related notion of investing based

11   on a company's fundamentals instead of blindly following market valuation.

12   Warren Buffet has long preached value investing.  Popular financial books like

13   "Beating the Dow" (HarperCollins 1991) by Michael B. O'Higgins published in the

14   early 1990's taught investors to select stocks based on fundamental factors like

15   dividend yields.

16        89.    In the early 1990s, Robert Jones of Goldman Sachs identified a

17   problem with market-cap indexes and so recommended the use of "economic

18   investing" such as the use of earnings as a fundamental factor to create funds.  Mr.

19   Jones went on to construct a stock index that was weighted on the basis of adjusted

20   operating earnings and he managed funds on this basis from 1990 to 1996.

21        90.    In 2003, Paul Wood and Richard Evans published "Fundamental Profit-

22   based Equity Indexation" (Journal of Indexes 2003), which advocated using

23   "fundamental accounting items" for indexes "instead of market capitalization."  The

24   Wood and Evans article described an index called the "SandsEnd Profit based US

25   100 Index" that was constructed by selecting the 100 U.S. companies with the

26   largest profits, and then applying a weighting factor based on profitability to

27   calculate the index.

28

1    91.    The article by Wood and Evans also disclosed in 2003 that "Counsel
2  Trust (a Pennsylvania based Trust Company) is in the process of creating a U.S. 100
3  profit based index fund with Paul Wood acting as subadvisor."

4    92.    Also in 2003, Dow Jones introduced the Dow Jones U.S. Select
5  Dividend Index, which selected stocks based on dividend data and which weighted
6  stocks based on dividend per share instead of market capitalization.  In November
7  2003, Barclay's Global Investors launched an ETF based on the Dow Jones U.S.
8  Select Dividend Index.

9    93.    The work of Mr. Jones, the 2003 publication by Wood and Evans, the
10 launching of the Counsel Trust profit based index fund, and the launching of the
11 Dow Jones U.S. Select Dividend Index and the related ETF based on that index,
12 each referenced above, predated the filing of any patent application by Mr. Robert
13 Arnott, who is the sole named inventor of the '719 Patent and one of the two named
14 inventors of the '502 and '740 Patents.

15   94.    On February 4, 2004, Mr. Arnott filed, listing himself as the sole
16 inventor, a provisional U.S. patent application, Serial No. 60/541,733, which stated
17 in part: "A new method of passive investing that is based on indexes which are built
18 with metrics other than market capitalization weighting or equal weighting is
19 provided." On October 12, 2004, Mr. Arnott filed, again listing himself as the sole
20 inventor, U.S. patent application No. 10/961,404, in which he claimed to have
21 invented "a new method, system and computer program product for passive
22 investing that is based on indexes which are built with metrics other than market
23 capitalization weighting, share price weighting or equal weighting." Counterclaim
24 Defendant RA, in the subsequent prosecution of the three Patents-in-Suit, claimed
25 the benefit of these two patent applications by Mr. Arnott for purposes of
26 determining the priority of the claims that RA is now asserting are infringed by
27 Counterclaim Plaintiffs.

28

ANSWER, AFFIRMATIVE DEFENSES                    Case No. SACV11-01846 DOC (ANx)
AND COUNTERCLAIMS

95.     The idea of creating an index by selecting a portfolio based on a fundamental factor such as profit and then weighting the assets of the portfolio based on a fundamental factor was not conceived of first by Robert Arnott.

96.     In early November 2004, The New York Times published an article entitled "Why Your Stock Index Fund is Lagging the Market", suggesting that a new indexing method based on fundamentals like total revenue had been devised by "three analysts at Research Affiliates," including Robert Arnott.  Shortly thereafter, however, The New York Times published a correction as follows:

"The Strategies column on Nov. 7, about the weighting of stocks in index funds according to fundamental categories of accounting, rather than market capitalization, referred incompletely to the origins of the approach.  In addition to three analysts at Research Affiliates ..., others have explored similar methods, including Robert C. Jones, a managing director at Goldman Sachs Asset Management; Paul Wood, a fund manager based in London; and Counsel Trust, a fund sponsor in York, Pa."

97.     On information and belief, prior to the publication of The New York Times articles in November 2004, neither Mr. Arnott nor Counterclaim Defendant RA was aware of the work of Mr. Wood on indexing based on fundamental factors or of the 2003 publication by Wood and Evans.

98.     Based on the above and other prior art references, the inventions claimed in the three Patents-in-Suit are anticipated or invalid as obvious, and should be declared invalid by this Court.

99.     The accused WT Indexes and the WT ETF funds referenced in Plaintiff's Complaint also do not infringe the claims of the Patents-in-Suit.  During the prosecution of the Patents-in-Suit, and consistent with statements in the specifications of the Patents-in Suit and in the various patent applications related to the Patents-in-Suit, Counterclaim Defendant RA proposed and obtained amended claim language clarifying that the claims of the Patents-in-Suit do not cover indexes

1  based on an asset selection or weighting that relies upon stock or asset price or
2  market capitalization. Claim 1 of the '719 patent, for example, states that both
3  selecting and weighting the assets to be used for creation of the index must be based
4  upon factors that are "substantially independent of the market prices (P) of any of
5  said assets (A) and … substantially independent of a market capitalization (MC) of
6  any of said entities (E)."

7      100.  Completely separate from any efforts by Mr. Arnott or Counterclaim
8  Defendant RA to develop their index and investment methodology, WT Investments
9  developed its own different investment methodology. In the past, WT Investments'
10 principal businesses were financial media and index development, with roots in the
11 construction of stock indexes that stretch back to the 1990's. In 2000, for example,
12 WT Investments, then called Individual Investor Group, Inc., licensed to Nuveen
13 Investments its America's Fastest Growing Companies Index to serve as the
14 underlying index for an ETF that Nuveen was planning to launch. Between 2001
15 and 2004, WT Investments developed new fundamentals based indexes and index
16 methodologies that incorporated accounting data into the construction of its indexes.
17 In June of 2006, WT Investments supported the launch by WT Trust of twenty ETFs
18 that tracked dividend-weighted indexes developed by WT Investments without
19 using the methodology claimed in the Patents-in-Suit.

20     101.  For example, the factors used by the WisdomTree ETFs to select the
21 assets that are to be included in an index *include* market capitalization and the price
22 of the assets, and thus the index and associated ETFs fall outside the scope of the
23 claims of the three Patents-in-Suit. The WisdomTree Large Cap Dividend Index
24 ("WTLDI"), for instance, selects for inclusion the largest 300 dividend paying
25 companies in the United States based on market capitalization.

26     102.  In short, not only are the alleged inventions of the Patents-in-Suit not
27 valid or enforceable inventions because, among other things, they were anticipated
28 or rendered obvious by prior publications and activities of investment professionals

1  before the invention or priority date of the claims in the Patents-in-Suit, but also the

2  ETFs that Counterclaim Defendant RA accuses of infringement in this case do not

3  even practice the methods that are recited in the Patents-in-Suit.

## COUNT I:  DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '502 PATENT

6      103.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs

7  71-102 above in these Counterclaims as if fully set forth herein.

8      104.   Counterclaim Plaintiffs do not infringe the '502 patent because, among

9  other things, they do not make, use, import, sell, or offer to sell, and have not made,

10  used, imported, sold, or offered for sale, in the United States any product or service

11  which infringes any valid and enforceable claim of the '502 Patent either directly or

12  indirectly, contributorily or otherwise, and have not induced any others to infringe

13  any valid and enforceable claim of the '502 Patent.

14      105.   Counterclaim Plaintiffs are entitled to a declaratory judgment that their

15  products, services, and activities do not infringe any valid or enforceable claim of

16  the '502 Patent.

## COUNT II:  DECLARATORY JUDGMENT OF
## INVALIDITY OF THE '502 PATENT

19      106.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs

20  71-102 above in these Counterclaims as if fully set forth herein.

21      107.   The '502 Patent is invalid because it fails to satisfy one or more of the

22  requirements specified in Title 35, United States Code, including, but not limited to,

23  35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

24      108.   Counterclaim Plaintiffs are entitled to a declaratory judgment that the

25  '502 Patent is invalid.

26

27

28

ANSWER, AFFIRMATIVE DEFENSES                    Case No. SACV11-01846 DOC (ANx)
AND COUNTERCLAIMS

## COUNT III:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '719 PATENT

109.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 71-102 above in these Counterclaims as if fully set forth herein.

110.   WT Investments, WT Trust and WT Asset Management do not infringe the '719 patent because, among other things, they do not make, use, import, sell, or offer to sell, and have not made, used, imported, sold, or offered for sale, in the United States any product or service which infringes any valid and enforceable claim of the '719 Patent either directly or indirectly, contributorily or otherwise, and have not induced any others to infringe any valid and enforceable claim of the '719 Patent.

111.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that their products, services, and activities do not infringe any valid or enforceable claim of the '719 Patent.

## COUNT IV:  DECLARATORY JUDGMENT OF INVALIDITY OF THE '719 PATENT

112.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 71-102 above in these Counterclaims as if fully set forth herein.

113.   The '719 Patent is invalid because it fails to satisfy one or more of the requirements specified in Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

114.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that the '719 Patent is invalid.

LIBA/2254980.1

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

## COUNT V:  DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '740 PATENT

115.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 71-102 above in these Counterclaims as if fully set forth herein.

116.   WT Investments, WT Trust and WT Asset Management do not make, use, import, sell, or offer to sell, and have not made, used, imported, sold, or offered for sale, in the United States any product or service which infringes any valid and enforceable claim of the '740 Patent either directly or indirectly, contributorily or otherwise, and have not induced any others to infringe any valid and enforceable claim of the '740 Patent.

117.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that their products, services, and activities do not infringe any valid or enforceable claim of the '740 Patent.

## COUNT VI:  DECLARATORY JUDGMENT OF
## INVALIDITY OF THE '740 PATENT

118.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 71-102 above in these Counterclaims above as if fully set forth herein.

119.   The '740 Patent is invalid because it fails to satisfy one or more of the requirements specified in Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

120.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that the '740 Patent is invalid.

## RESERVATION OF RIGHTS

121.   Counterclaim Plaintiffs reserve the right to add additional defenses and/or counterclaims that discovery may reveal.

ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS                          Case No. SACV11-01846 DOC (ANx)

1   **JURY DEMAND**

2   Pursuant to Federal Rule of Civil Procedure Rule 38, Defendants demand a

3   trial by jury of all issues raised by this Amended Complaint which are triable by

4   jury.

5   **PRAYER FOR RELIEF**

6   WHEREFORE, Counterclaim Plaintiffs deny that Plaintiff/Counterclaim-

7   Defendant is entitled to any of the relief prayed for in its Complaint and pray that

8   the Court:

9       1)    Dismiss Plaintiff's Complaint with prejudice;

10      2)    Deny all relief requested by Plaintiff;

11      3)    Enter judgment in favor of Defendants and against Plaintiff on all

12              counts in Plaintiff's Complaint;

13      4)    Enter judgment in favor of Counterclaim Plaintiffs and against

14              Counterclaim Defendant on all counterclaims;

15      5)    Declare that Counterclaim Plaintiffs do not and have not infringed,

16              directly or indirectly, any of the Patents-in-Suit;

17      6)    Declare that each of the Patents-in-Suit is invalid;

18      7)    Award Defendants/Counterclaim Plaintiffs their attorneys' fees and

19              costs;

20      8)    Permanently enjoin Plaintiff, its successors, assigns, and anyone

21              acting in concert therewith or on its behalf, from attempting to

22              enforce the Patents-in-Suit against Defendants or any parents,

23              affiliates, subsidiaries thereof, or Defendants respective officers,

24              agents, employees, successors, assigns, or customers;

25      9)    Declare this case exceptional under 35 U.S.C. § 285 if warranted;

26              and

27

28

1          10)    Grant such other further relief as the Court may deem just and

2          proper.

3

4  Dated:  January 17, 2012          Respectfully submitted,

5

6            By:
             Ruby Wayne Wood

7             *rwood@goodwinprocter.com*
           **GOODWIN PROCTER** LLP

8             Attorneys for Defendants

9             **WISDOM TREE
INVESTMENTS, INC., WISDOM**

10            **TREE TRUST, WISDOM TREE
ASSET MANAGMENET, INC.,**

11            **WISDOM TREE RETIREMENT
SERVICES, INC., MELLON**

12            **CAPITAL MANAGMENT
CORP., AND ALPS**

13            **DISTRIBUTORS, INC.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER, AFFIRMATIVE DEFENSES        Case No. SACV11-01846 DOC (ANx)
AND COUNTERCLAIMS

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Goodwin Procter LLP, 601 S. Figueroa Street, 41st Floor, Los Angeles, California 90017.

On January 17, 2012, I served the **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** on the person(s) listed below as follows:

| | |
|---|---|
| David S. Steuer<br>**WILSON SONSINI GOODRICH<br>& ROSATI, P.C.**<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>E-Mail: *dsteuer@wsgr.com*<br>Tel: 650.493.9300<br>Fax: 650.565-5100 | Attorneys for Plaintiff<br>**RESEARCH AFFILIATES, LLC** |
| Natalie J. Morgan<br>**WILSON SONSINI GOODRICH<br>& ROSATI, P.C.**<br>12235 El Camino Real, Suite 200<br>San Diego, CA 92130<br>Email: *nmorgan@wsgr.com*<br>Tel.: 858.350.2303<br>Fax: 858.350-2399 | Attorneys for Plaintiff<br>**RESEARCH AFFILIATES, LLC** |

☑ **(MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.**

☐ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

LIBA/2254980.1

PROOF OF SERVICE OF ANSWER,
AFFIRMATIVE DEFENSES & COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

1   ☐   (EXPRESS MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this

2   firm's practice for collecting and processing Express Mail for mailing. On the same day that Express Mail is placed for collection and mailing, it is

3   deposited in the ordinary course of business with the United States Postal Service, in a post office, mailbox, sub-post office, substation, mail chute, or

4   other like facility regularly maintained by the United States Postal Service for receipt of Express Mail.

5   ☐   (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a

6   courier or driver authorized by said express service carrier to receive

7   documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated

8   above, with fees for overnight delivery paid or provided for.

9   ☐   (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and

10   provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service

11   will be filed under separate cover.

12   ☐   (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers

13   listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

14

15   ☐   (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail

16   addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the

17   transmission was unsuccessful.

18   I declare under penalty of perjury that I am employed in the office of a

19   member of the bar of this Court at whose direction this service was made and that

20   the foregoing is true and correct.

21   Executed on January 17, 2012, at Los Angeles, California.

22

23

24   _____        _____
     Eugenia Durán                          (Signature)
25   (Type or print name)

26

27

28

PROOF OF SERVICE OF ANSWER,                 Case No. SACV11-01846 DOC (ANx)
AFFIRMATIVE DEFENSES & COUNTERCLAIMS