1   DAVID S. STEUER, State Bar No. 127059
dsteuer@wsgr.com
2   WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
3   Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
4   Facsimile: (650) 565-5100

5   NATALIE J. MORGAN, State Bar No. 211143
nmorgan@wsgr.com
6   WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real, Suite 200
7   San Diego, CA 92130
Telephone: (858) 350-2303
8   Facsimile: (858) 350-2399

9   Attorneys for Plaintiff and Counterdefendant
Research Affiliates, LLC

10

11           **UNITED STATES DISTRICT COURT**
          **CENTRAL DISTRICT OF CALIFORNIA**
12                **SOUTHERN DIVISION**

13

| | |
|---|---|
| Research Affiliates, LLC, | CASE NO.: SACV11-01846 DOC (ANx) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| WisdomTree Investments, Inc., WisdomTree Trust, WisdomTree Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc., | |
| Defendants. | Date: April 2, 2012 |
| | Time: 8:30 a.m. |
| | Dept: Santa Ana Courthouse |
| |      Courtroom 9D |
| |      411 West Fourth Street |
| |      Santa Ana, CA 92701-4516 |
| | Judge Hon. David O. Carter |
| AND RELATED COUNTERCLAIMS. | Complaint Filed:  December 1, 2011 |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................... 1

II.   BACKGROUND ........................................................................ 2

        1.   Computer-driven RA Indexing Improves On The Prior Art...... 2

        2.   Intricate And Complex Programming Efforts Are Essential
            To RA Fundamental Indexing.................................................... 3

        3.   The RA Patents Require And Claim Special Purpose
            Computers. .............................................................................. 5

        4.   The Patented Technology Is Commercially Successful............ 6

III.  ARGUMENT .............................................................................. 7

    A.   § 101 Issues Should Not Be Addressed Early In This Case. ............... 7

    B.   WT Bears A Clear And Convincing Burden Of Proof. ....................... 9

    C.   Only A Few Narrow Exceptions Limit Patent Eligible Matter
        Under § 101. ........................................................................................ 9

    D.   WT's Motion Is Premature.................................................................. 11

        1.   RA's Complaint Properly States A Claim. ............................... 11

        2.   Claim Construction Is Required To Assess § 101. .................. 12

    E.   The RA Patent Claims Are Patentable Under § 101. .......................... 14

        1.   RA's Patents Are Not Abstract Because They Require A
            Special Purpose Computer...................................................... 15

        2.   The RA Patent Claims Do Not Preempt An Overly Broad
            "Abstract Field". ..................................................................... 18

        3.   The RA Patent Claims Cannot Be Performed Mentally. .......... 19

        4.   The RA Patent Claims Pass The Machine-Or-Transformation
            Test. ........................................................................................ 20

        5.   WT's Motion Relies On Distinguishable Case Law................. 21

    F.   WT's Motion Fails Because WT Does Not Address All Claims
        Of RA's Asserted Patents.................................................................... 24

IV.   CONCLUSION........................................................................... 25

# TABLE OF AUTHORITIES

Page

## CASES

*Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008)..................................9

*Aristocrat Techs. Australia PTY, Ltd. v. Int'l Game Tech.*, 543 F.3d 657 (Fed. Cir. 2008)..................................8

*Arrhythmia Research Tech. Inc. v. Corazonix Corp.*, 958 F.2d 1053 (Fed. Cir. 1992) .................................. 11

*Bilski v. Kappos* 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010)........................ 9, 10, 19, 20, 22

*Bird Barrier America, Inc. v. Bird-B-Gone, Inc.*, No. 09-0418-AG-RNBX, 2010 WL 761241 (C.D. Cal. Mar. 1, 2010) .................................. 13

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .................................. 11

*Cima Labs, Inc. v. Actavis Group HF*, Nos. 07-893-DRD, 06-1970-DRD .................................. 14

*CLS Bank Int'l v. Alice Corp.*, 768 F. Supp. 2d 221 (D.D.C. 2011)..................... 22

*Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009)..................................12

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) .................................. 12, 23

*Dealertrack, Inc. v. Huber*, Nos. 2009-1566, 2009-1588, 2012 WL 164439.................................. 23

*Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665 (D. Del. 2010) .................................. 14

*Diamond v. Diehr*, 450 U.S. 175,101 S. Ct. 1048, 67 L. Ed. 2d 155 (1981) .................................. 8, 10, 15, 22

*Fort Props. v. Am. Master Lease LLC*, No. 2009-1242, 2012 WL 603969 (Fed. Cir. Feb. 27, 2012).................................. 24

*Fuzzysharp Techs. Inc. v. 3dLabs Inc., Ltd.*, No. 2010-1160, 2011 WL 5248297 (Fed. Cir. Nov. 4, 2011).................................. 13

*Gottschalk v. Benson*, 409 U.S. 63, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972) .................................. 21

*Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*, No. 07-796-RJL-AK, 2010 U.S. Dist. LEXIS 141399 (D.D.C. Aug. 27, 2010) .................................. 23

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990) ................................................................................ 11

*Iconfind, Inc. v. Google, Inc.*, No. 2:11-CV-0319-GEB-JFM, 2012 WL 158366 (E.D. Cal. Jan. 18, 2012) ....................................................... 17

*Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312 (Fed. Cir. 2008) ...................................................................................................... 9

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (*en banc*) .......................... 19

*In re Lowry*, 32 F.3d 1579 (Fed. Cir. 1994) ............................................ 21

*In re Maucorps*, 609 F.2d 481 (C.C.P.A. 1979) ..................................... 22

*In re Warmerdam*, 33 F.3d 1354 (Fed. Cir. 1994) ................................. 22

*Investpic, LLC v FactSet Research Sys., Inc.*, No. 10-1028-SLR, 2011 WL 4591078 (D. Del. Sept. 30, 2011) ...................................................... 13

*Island Intellectual Prop., LLC v. Deutsche Bank AG*, No. 09-2675-KBF, 2012 WL 386282 (S.D.N.Y. Feb. 6, 2012) ............................... 9, 17

*J.E.M. Ag Supply Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001) ...................................................... 15

*Jones v. Hardy*, 727 F.2d 1524 (Fed. Cir. 1984) .................................... 24

*Lonberg v. City of Riverside*, 300 F. Supp. 2d 942 (C.D. Cal. 2004) ..... 25

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ...................................................................................................... 11

*Microsoft Corp. v. i4i LP*, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) .... 9

*MySpace v. Graphon Corp.*, No. 2011-1499, 2012 WL 716435 (Fed. Cir. Mar. 2, 2012) (Fed. Cir. Mar. 2, 2012) ..................................... 1, 7, 8

*Parker v. Flook*, 437 U.S. 584, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978) ........ 15, 21

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......................... 13

*Progressive Casualty Ins. Co. v. Safeco Ins. Co.*, 1:10-cv-1370, slip op. (N.D. Ohio Nov. 12, 2010) ................................................................... 13

*Prompt Med. Sys., L.P. v. Allscriptmysis Healthcare Solutions, Inc.*, No. 6:10-CV-71, 2012 WL 678216 (E.D. Tex. Feb. 13, 2012) .......... 17, 21

*Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010) ....................................................................................... 11, 17, 18, 20

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344 (Fed. Cir. 2001) ............................................................................................... 9

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010) ............. 17

*Spark Networks USA, LLC v. Humor Rainbow, Inc.*, 2:11-cv-0143-
    JHN-JEMx (C.D. Cal. July 7, 2011).................................................... 13

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................ 13

*State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*, 149 F.3d 1368
    (Fed Cir. 1998).................................................................................... 12

*Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903 (D.
    Md. 2008)............................................................................................ 14

*Ultramercial, LLC v. Hulu, LLC*
    657 F.3d 1323 (Fed. Cir. 2011) ................................................ *passim*

*VS Techs., LLC v. Twitter, Inc.*, No. 2:11-CV-43, 2011 WL 4744911
    (E.D. Va. Oct. 5, 2011)....................................................................... 17

*Yangaroo Inc. v. Destiny Media Techs., Inc.*, No. 09-C-462, 2009 WL
    2836643 (E.D. Wis. Aug. 31, 2009).................................................. 14

**STATUTES**

35 U.S.C. § 100(b) ....................................................................................................9

35 U.S.C. § 101 ............................................................................................... *passim*

35 U.S.C. § 102 .................................................................................................. 7, 8

35 U.S.C. § 103 .................................................................................................. 7, 8

35 U.S.C. § 112 ........................................................................................................8

35 U.S.C. § 282 ............................................................................................. 8, 9, 24

Title 35 of the United States Code ......................................................................... 11

**RULES**

Rule 12 .................................................................................................. 1, 13, 17, 25

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| "CFPI ¶ __" | Refers to the indicated paragraph of Plaintiff's Complaint for Patent Infringement, Dkt. No. 1 |
| "D. Br. __" | Refers to the indicated page(s) of Defendants' opening brief on this motion, Dkt. No. 20. |
| "Surti ¶ __." | Refers to the indicated paragraph of the Declaration of Himanshu Sudhir Surti, submitted herewith |
| "Morgan Ex. __." | Refers to the indicated exhibit to the Declaration of Natalie Morgan, submitted herewith |
| "RA" | Research Affiliates, LLC |
| "WT" | Collectively, Defendants WisdomTree Investments, Inc., WisdomTree Trust, WisdomTree Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital Management Corp., and Alps Distributors, Inc. |
| § 101 | 35 U.S.C. § 101 |
| '502 Patent | Refers to U.S. Patent No. 7,747,502 |
| '719 Patent | Refers to U.S. Patent No. 7,792,719 |
| '740 Patent | Refers to U.S. Patent No. 8,005,740 |
| '502 Patent __:__- __ | Refers to the indicated column and lines of U.S. Patent No. 7,747,502 |
| '719 Patent __:__- __ | Refers to the indicated column and lines of U.S. Patent No. 7,792,719 |
| '740 Patent __:__- __ | Refers to the indicated column and lines of U.S. Patent No. 8,005,740 |
| ***Citations omitted*** | Citations from cited cases are omitted unless otherwise noted |

## I.   INTRODUCTION

Defendants' ("WT's") motion fails to establish that each claim of Research Affiliates, LLC's ("RA's") three asserted patents are abstract under § 101.  More importantly, WT's motion is fatally premature under recent Federal Circuit guidance.  *MySpace v. Graphon Corp.*, No. 2011-1499, 2012 WL 716435, at *8 (Fed. Cir. Mar. 2, 2012).  In particular, *MySpace* holds that courts should not address § 101 until after all other invalidity challenges are exhausted.  The only exception is the "unusual and infrequent" circumstance where claims are clearly and convincingly abstract "beyond peradventure—that is, under virtually any meaning of 'abstract'" *Id.* at *8.  This Court should follow *MySpace* by exercising its "inherent power to control the processes of litigation" and declining to rule on § 101 at this time.

Even if this Court decides to rule on § 101 at this stage of the litigation, WT's motion fails as premature for other reasons and also fails on the merits.  RA's complaint states that the RA patents are valid and duly issued in compliance with the Patent Act.  Because the Court must accept RA's allegations as true when considering a Rule 12(c) motion, WT's motion fails.  Also, resolution of § 101 depends on proper construction of the RA patent claims.  Rather than accepting WT's claim construction, which RA disputes, this Court should not rule on § 101 until after claim construction proceedings.

On the merits, each claim of the RA patents satisfies § 101.  The Federal Circuit holds that claims directed to "special purpose computers" satisfy § 101 and that "a general purpose computer . . . becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1329 (Fed. Cir. 2011).  This is precisely the case for claims of the RA patents.  Each claim recites performing steps "by" a computer processor (or similar).  Indeed, to practice its own patents, RA has employed over 7,000 lines of complex computer code.

1    Because the RA patent claims require a special purpose computer directed to a

2    specific method, the claims do not preempt an abstract field, are impossible to

3    perform mentally, and satisfy the non-dispositive machine-or-transformation test.

4        Moreover, the law WT relies on to argue that RA's patents are abstract is

5    clearly distinguishable.  For example, *Cybersource* is inapplicable because, in that

6    case, the patent claims could be performed with pen and paper, and computer

7    limitations were not significant to the invention.  As another example, in contrast to

8    the RA patent claims, the Supreme Court's *Bilski* decision invalidates patent claims

9    that involved no computer at all.  Thus, because the RA patent claims require a

10   special purpose computer, any § 101 decision should confirm patentability of the

11   RA patent claims.

12       Finally, WT's motion is incomplete because it presents no argument as to

13   why claims 42-88 of the '719 Patent, claims 2-52 or 57-61 of the '502 Patent, or

14   claims 73-119 of the '740 Patent are not patentable.  Also, WT groups other claims

15   together in a cursory fashion in order to hide terms problematic to WT's

16   arguments—like the index "construction manager device" of '740 Patent, claim 45.

17   Each RA patent claim is a separate property right, and, therefore, WT's motion for

18   judgment must fail because it does not address all claims of the patents-in-suit.

19       For these reasons, as explained in detail below, WT's motion should be

20   denied.

21   **II.    BACKGROUND**

22       **1.    Computer-driven RA Indexing Improves On The Prior Art.**

23       In the past, investors who wanted to own a diverse portfolio of securities had

24   two options.  The first option was active management where an individual fund

25   manager manually selected funds to be included in an investment.  '740 Patent,

26

27

28

1:41-46.[1]  Problems with this approach include high management fees, human misjudgment, and infrequent rebalancing. *Id.* at 2:41-53.

The second option was passive index investing based on market capitalization, equal weighting, or share price. *Id.* at 2:8-23. This option overcame many disadvantages of active management. *Id.* at 2:41-53. However, this option tended to buy high and sell low–the opposite of an investor's goals–because high price securities are weighed more heavily in the index. *Id.* at 2:24-40.

The inventions embodied by the RA patent claims improve upon both of these prior art options by utilizing special purpose computer systems to create financial indexes based on objective measures of scale other than stock price. *See, e.g., id.* at 8:35-48. Such systems utilize sophisticated computer data retrieval and specially programmed computers to select and weigh financial and business data points to efficiently create indexes that could be based, for example, on dividends, cash flow, and/or revenue. *Id.*

### 2.  Intricate And Complex Programming Efforts Are Essential To RA Fundamental Indexing.

RA uses a high speed computer system, including a special purpose computer, to create patented indexes. For example, RA has developed over 7,000 lines of complex Python code to create scores for one of RA's most successful partner indexes, FTSE RAFI. Surti ¶ 12. An explanation of the system's process is illustrative. Every business day, RA computers electronically retrieve electronic financial reports via internet file transfer protocol (FTP) for over 130,000 companies over a computer network. *Id.* ¶ 14. The data consists of more than 169,000,000 financial and business data points. *Id.* ¶ 15. Special purpose Perl

---

[1]  Although this brief, at times, provides citations only to one patent, parallel and/or similar text are typically available in RA's other patents. The complete text of all three patents is incorporated herein by reference.

scripts parse the data and upload it into an in-house SQL (Structured Query Language) database. *Id.* ¶ 16. Periodically, the computer system extracts the relevant financial information into a massive text file over 158,000,000 characters long so that the index calculation process can begin. *Id.* ¶ 18. It is not possible to gather and organize this information without use of a computer. *Id.* ¶ 19.

To create "fundamental scores" for each of the over 10,000 companies that comprise the FTSE RAFI universe, several steps are required. The computer system calculates average sales over a period of time for each of the 10,000 companies. *Id.* ¶ 20. The system sums average sales to create a total. *Id.* ¶ 21. Then, the system divides average sales for each company by total sales to create over 10,000 separate ratios. *Id.* ¶ 22. Parallel calculations create ratios for other values. *Id.* ¶ 23. Ratio calculations for every company are averaged to create a final "fundamental score." *Id.* ¶ 24. In total, the process requires more than 200,000 calculations, and many of these calculations involve dividing one huge number (such as $347,179,800,000— EXXON's revenue for a year) by an even larger number ($12,016,678,686,882— sum revenue of all selected companies). *Id.* ¶ 27. The "fundamental score" may then be used to create indexes and may be used to buy or sell security assets. *See, e.g.,* '502 Patent, claim 53.

A person could not do these calculations in their mind or with pen and paper without making an unacceptable number of math errors. Surti ¶ 29. Also, any human would necessarily introduce rounding errors if attempting to do these calculations in their mind or with pen and paper, and the rounding would have a multiplicative effect on end results. *Id.* ¶ 29. Accurate creation of RA's FTSE RAFI index without computer assistance is not possible, and any errors would cause deviation from the FTSE RAFTI strategy and will impact investment outcome. *Id.* ¶ 30, 32.

Moreover, it would be very expensive to pay a team of people to even attempt to do these calculations by hand. *Id.* ¶ 31. The cost of to hire such people

1 would undermine the invention's advantage of low management costs through a
2 passive approach. *See, e.g.,* '740 Abstract, 2:41-47.

3        Thus, the invention of RA's special purpose computer system—along with
4 electronic access to current financial data—makes RA's unique approach possible.

**3.      The RA Patents Require And Claim Special Purpose
         Computers.**

6

7        The importance of special purpose
8 computers to the invention is apparent in each
9 of the RA patents.  Figure 1 of each patent
10 illustrates computer hardware and special
11 programming logic required for the
12 invention's first embodiment.  The figure
13 depicts three computers: an analysis host, a
14 trading host, and an exchange host.  The
15 analysis host and trading host are special
16 purpose: they both include custom "analysis
17 program" and "trading software."



18        The Abstract summarizing the '502 and
19 '740 Patents call the invention a "system, method and *computer program*
20 *product.* . . ."  All three patents describe exemplary computer hardware in detail
21 including, for example, an I/O subsystem, network interface card (NIC), modem,
22 bus, and a storage medium such as a WORM drive or CD-ROM.  '502 Patent, 10:4-
23 31; '719 Patent, 9:5-39; '740 Patent, 70:56-72:32.

24        Every claim of each asserted patent explains how a computer is used and
25 what special programming is required:

26 •      The '502 Patent has 61 claims.  Independent claims 1, 53, and 56 are all
27 **"computer implemented methods."**  The claims explain how the computer is
28 involved.  Claim 1, for example, requires that "creating . . . the index," "selecting . .

1  . financial objects," "weighting . . . constituents," "managing . . . the index," and

2  "altering . . . the relative weightings" are all "**by at least one computer.**"

3  •    The '719 Patent has 88 claims.  Claim 1 recites implementation "by at least

4  one **analysis host processor**" comprising "at least **one computer processor**"

5  where each step of computer involvement is explicitly defined.  Claim 42 recites a

6  system including an "**analysis host**" and a "**memory**" where the host is specially

7  "configured to" perform numerous detailed steps.  Claim 85 recites "**a computer**

8  **program product embodied on a machine readable storage medium**" that

9  provides instructions that cause a "**host processor**" to perform a detailed method.

10 Also, various claims include elements such as "accessing . . . databases" (Claim 1)

11 that could require network or Internet communications.

12 •    The '740 Patent has 119 claims.   Claims 1 and 96 recite a "**computer**

13 **implemented method**" requiring many steps by at least one "**computer**

14 **processor**."  Claim 73 recites a "**nontransitory computer processor readable**

15 **storage medium**" with "**computer processor readable program code**" that when

16 executed by a "**computer processor**" in a "**data processing apparatus**" performs a

17 "**computer processor-implemented method**" comprising detailed steps.  Claim

18 108 recites a system with a "**computer processor**' coupled to a "**data network**"

19 comprising a connection or "**coupling**" to a "**database.**"

20        Every single claim requires a computer; no claim of the patents-in-suit covers

21 calculations solely performed mentally or by pen and paper.

22        **4.    The Patented Technology Is Commercially Successful.**

23        RA's Fundamental Index® approach has been very successful for RA, its

24 clients, its licensees, and its infringing competitor – the WisdomTree entities.  *See*

25 Morgan ¶ Ex. A-C; CFPI ¶ 25, 32-59.  Despite being aware of the applications

26 leading to the patents-in-suit and the issuance of the RA patents, WT continues to

27

28

deliberately and willfully infringe the RA patents. *Id.* at 17-59.[2]  As such, RA has

brought suit against WT by alleging infringement of "at least" one claim of each of

the three patents-in-suit. *Id.*  RA will identify all asserted claims by number once

the discovery process so requires.[3]

## III.   ARGUMENT

### A.   § 101 Issues Should Not Be Addressed Early In This Case.

Under the Federal Circuit's recent rule in *MySpace*, 2012 WL 716435, WT's

motion should be denied as premature. *MySpace* requires that, absent an "unusual

and infrequent" circumstance, courts avoid ruling on § 101 until other validity

issues, including validity in light of prior art, are resolved.  *Id.* at *8 (holding that

trial court took "proper course of action" by ruling on §§ 102 and 103 prior to

considering § 101).   This is because if a "typical patent case" proceeds this way,

"litigation over the question of validity of the patent would be concluded under

these provisions, and it would be unnecessary to enter the murky morass that is

§ 101 jurisprudence." *Id.* at *7.[4]  The *MySpace* rule presents only one narrow

exception: courts may address § 101 in an early phase of litigation where

abstractness is "clear and convincing beyond peradventure—that is, under virtually

any meaning of 'abstract'. . . ." *Id.* at *8.

Here, as explained in this brief, the RA patent claims are directed at a special

purpose computer, are not abstract, and certainly do not present the "unusual and

infrequent" circumstance of being abstract "beyond peradventure."  Also, WT's

---

[2]    Deliberate and willful infringement allegations are based on information and belief.

[3]    Note that compliance with Fed. R. Civ. P. Form 18 does not require a patentee to identify *any* asserted claim by number.

[4]    The "murky morass" of § 101 jurisprudence presents an independent reason for the Court to deny WT's motion.  The Federal Circuit admits its judges continue to "vigorously" disagree about § 101. *Id.* at *7.

1    answer alleges invalidity under 35 U.S.C. §§ 102, 103, 112, and other law, Dkt.

2    No.14, but WT has not moved the Court to decide those invalidity allegations.

3    Rather, in its motion, WT implicitly argues that the RA patent claims are invalid

4    under § 102 or 103 based on prior art and/or indefinite under § 112. *See, e.g.*, D.

5    Br. at 1, 6, 17, 20, 23, 24 (claims are allegedly "vague," "predictable," "intuitive

6    steps," and "basic" using "long known and used" metrics).  However, WT offers no

7    proof or cohesive argument to support these allegations.  Moreover, no discovery—

8    critical to resolving these invalidity allegations—has taken place.

9           Because the RA patent claims are not manifestly abstract and because

10   validity issues aside from § 101 remain undecided, the *MySpace* rule applies.  This

11   Court should follow Federal Circuit guidance and decline to rule on § 101 until

12   after the parties have an opportunity to obtain discovery and after WT's other

13   invalidity allegations are resolved.[5]

---

[5]    Also, although courts have routinely permitted patent defendants to assert a §
101 subject matter defense in litigation, this practice is contrary to statute.  35
U.S.C. § 282 limits invalidity defenses to the assertion of a "ground specified in
part II of this title as a condition for patentability" (and certain defenses irrelevant
to this motion.")  However, Section 101 does not specify any "condition for
patentability."  Rather, 35 U.S.C. §§ 102 and 103 each list specific "Conditions for
patentability" where a patent is granted "unless" and "not . . . if" enumerated
conditions are met.  Indeed, the U.S. Supreme Court has explained that "[s]pecific
conditions for patentability follow" § 101.  *Diamond v. Diehr*, 450 U.S. at 189-90,
101 S. Ct. 1048, 67 L. Ed. 2d 155 (1981).
       Neither the U.S. Supreme Court nor the Federal Circuit has squarely
addressed whether 35 U.S.C. § 282 permits a § 101 subject matter defense in
litigation.  *But see MySpace*, 2012 WL 716435, *8 (indicating in dicta that lower
courts may address § 101); *Aristocrat Techs. Australia PTY, Ltd. v. Int'l Game
Tech.*, 543 F.3d 657, 661, n.3 (Fed. Cir. 2008) (stating in dicta that §101 presents a
condition for patentability).  However, the Patent Act's language suggests that the
issue of statutory subject matter under § 101 is one reserved for the patent office—
not litigants.  Thus, WT cannot raise a § 101 defense now, and WT's motion to
dismiss can be denied on that single basis.

### B.    WT Bears A Clear And Convincing Burden Of Proof.

If this Court chooses to address § 101, WT bears a heavy burden. Patents are presumed valid in deference to the careful consideration the Patent Office provides patents before issuance. 35 U.S.C. § 282. Thus, WT must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i LP*, 131 S. Ct. 2238, 2242, 180 L. Ed. 2d 131 (2011); *see also Island Intellectual Prop., LLC v. Deutsche Bank AG*, No. 09-2675-KBF, 2012 WL 386282, at *2 (S.D.N.Y. Feb. 6, 2012) (denying § 101 summary judgment). This burden is particularly heavy with regard to a ground the Patent Office considered during prosecution. *C.f. Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008). This burden remains with WT; RA never bears the burden of proving validity. *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1346 (Fed. Cir. 2008). It is error to hold ***any claim*** invalid absent clear and convincing evidence directed to that specific claim. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1356 (Fed. Cir. 2001) (validity of dependent claims must be judged separately from independent claims).

### C.    Only A Few Narrow Exceptions Limit Patent Eligible Matter Under § 101.

35 U.S.C. § 101 allows "any new and useful *process, machine, manufacture, or composition of matter*, or any new and useful *improvement* thereof" to be patented. These categories are expansive. For example, a "process" is *any* "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." *Ultramercial, LLC*, 657 F.3d at 1326 (quoting 35 U.S.C. § 100(b)). Indeed, the Supreme Court in *Bilski* confirmed that business methods are a type of patent eligible "process." *Bilski v. Kappos*, 130 S. Ct. 3218, 3228, 177 L. Ed. 2d 792 (2010).

Under these expansive categories, "any new, nonobvious, and fully disclosed technical advance" is eligible for patent protection unless it falls within one of three "limited judicially created exceptions": laws of nature, physical phenomena, and

1  abstract ideas. *Id.* Only the "abstract idea" exception is relevant here, and even

2  then, the "abstract idea" limitation is subject to three important principles.

3      First Principle: An exception to eligibility is only applied if an ***entire*** patent

4  claim is directed to an abstract idea. Applied abstract ideas are patentable. *See*

5  *Bilski*, 130 S. Ct. at 3230. In deciding whether an invention is an application rather

6  than just an idea, the Court must consider each claim as a whole; it is improper to

7  dissect patent claims and then ignore "old elements" in the analysis. *Id.* (citing

8  *Diehr*, 101 S. Ct. 1048) ("*Diehr* emphasized the need to consider the invention as a

9  whole, rather than 'dissect[ing] the claims into old and new elements and then . . .

10  ignor[ing] the presence of the old elements in the analysis.'"). While an abstract

11  idea is not patentable in isolation, it may be patentable when a claim combines an

12  abstract idea with non-abstract matter. *See Diehr*, 101 S. Ct. at 1057-58. "This is

13  particularly true in a process claim because a new combination of steps in a process

14  may be patentable even though all the constituents of the combination were well

15  known and in common use before the combination was made." *Diehr*, 101 S. Ct. at

16  1058.

17      Second Principle: Courts should not look into whether the claims are

18  anticipated or obvious in light of prior art when determining § 101 subject matter

19  eligibility. *Id.* ("The 'novelty' of any element or step in a process, or ***even of the***

20  ***process itself***, is of no relevance in determining whether the subject matter of a

21  claim falls within the § 101 categories of possibly patentable subject matter.")

22  (emphasis added). Moreover, patent claims can be a novel combination of abstract

23  elements and elements known in the prior art. *Id.* at n. 12.

24      Third Principle: The "abstract" exception under § 101 is narrow. Inventions

25  should only be disqualified as too abstract if the abstractness "exhibit[s] itself so

26  manifestly as to override the broad statutory categories of eligible subject matter

27  and the statutory context that directs primary attention on the patentability criteria

28

1    of the rest of the Patent Act." *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d

2    859, 868 (Fed. Cir. 2010) (reversing § 101 summary judgment of invalidity).

3           As explained below, these principles support the conclusion that WT's § 101

4    motion is premature and not meritorious.

5           **D.    WT's Motion Is Premature.**

6                  **1.    RA's Complaint Properly States A Claim.**

7           As a threshold matter, WT's motion fails because RA properly pleaded the

8    validity and proper issuance of the patents-in-suit. "Judgment on the pleadings is

9    proper when the moving party clearly establishes on the face of the pleadings that

10   no material issue of fact remains to be resolved and that it is entitled to judgment as

11   a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

12   1550 (9th Cir. 1990)). Dismissal is only appropriate where the complaint lacks a

13   cognizable legal theory or sufficient facts to support such a theory. *See Mendiondo*

14   *v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

15          While § 101 ultimately presents a question of law, "determination of this

16   question may require findings of underlying facts specific to the particular subject

17   matter and its mode of claiming." *Arrhythmia Research Tech. Inc. v. Corazonix*

18   *Corp.*, 958 F.2d 1053, 1055-56 (Fed. Cir. 1992). In evaluating facts, the Court must

19   assume plaintiff's allegations are true and consider the complaint in the light most

20   favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

21   337-38 (9th Cir. 1996); *see also* D. Br. at 9.

22          For WT's motion to succeed, it must establish that ***each*** claim of the patents-

23   in-suit is invalid and that the Patent Office erred in issuing those claims, each by

24   clear and convincing evidence. But RA pled that "[t]he Patents-in-Suit are valid,

25   enforceable, and were duly issued in full compliance with Title 35 of the United

26

27

28

1    States Code." CFPI ¶ 16.[6]  WT cites no case law or exception to the Federal Rules

2    that allows dismissal despite RA's pleadings properly establishing the asserting

3    patents' validity.  RA's pleading of validity and proper patent issuance, accepted as

4    true, compels denial of WT's motion.

5                 **2.    Claim Construction Is Required To Assess § 101.**

6           WT improperly asks the Court to decide patent eligibility without first

7    construing the RA patent claims.  Claim validity under § 101 is a matter of claim

8    construction.  *State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*, 149 F.3d

9    1368, 1370 (Fed Cir. 1998).  Without determining what the RA patent claims

10   mean, how can the Court decide if claims are directed to patentable subject matter?

11   *See also Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073

12   (N.D. Cal. 2009) ("claim construction is ***an important first step*** in a § 101

13   analysis") (emphasis added), *aff'd Cybersource Corp. v. Retail Decisions, Inc.*, 654

14   F.3d 1366, 1375 (Fed. Cir. 2011).

15          In *Ultramercial*, the Federal Circuit explained how critical claim

16   construction can be to the § 101 analysis:

17          On many occasions, however, a definition of the invention via claim

18          construction can clarify the basic character of the subject matter of the

19          invention.  Thus, claim meaning may clarify the actual subject matter at

20          stake in the invention and can enlighten, or even answer, questions

21          about subject matter abstractness.

22

23

24   ─────────────────────

     [6]    Indeed, during prosecution of the '719 Patent and the '740 Patent, the Patent
25   Office examiner specifically addressed §101 and rejected certain claims because
     they were directed to non-statutory subject matter.  *See* Morgan Ex. D ('719 Patent
26   File History, Office Action dated March 13, 2008, pp. 5-6), Ex. E ('740 Patent File
27   History, Office Action dated July 23, 2010, pp. 4-5).  However, RA overcame these
     rejections by amending the claims to include special purpose computer elements.

28

1    657 F.3d at 1325.  Although *Ultramercial* ultimately decided § 101 without claim

2    construction, it decided the patent was valid.[7]  *See also Fuzzysharp Techs. Inc. v.*

3    *3dLabs Inc., Ltd.*, No. 2010-1160, 2011 WL 5248297, at *4 (Fed. Cir. Nov. 4,

4    2011) (unpublished) (vacating summary judgment and remanding so that district

5    court could perform claim construction because "the patent eligibility of at least one

6    of the asserted claims turns on questions of claim construction.").

7            Claim construction raises its own issues of law with its own unique factual

8    underpinnings.  For example, claim construction requires a review of prosecution

9    history for each asserted patent and may involve the consideration of relevant

10   dictionaries and testimony of inventors and expert witnesses.  *See Philips v. AWH*

11   *Corp.*, 415 F.3d 1303, 1314, 1317 (Fed. Cir. 2005).  None of this material is

12   available to the Court at this stage.  D. Br. at 10 (citing *Sprewell v. Golden State*

13   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  Thus, it is not surprising that courts

14   routinely refuse to engage in premature claim construction.  *See, e.g., Bird Barrier*

15   *America, Inc. v. Bird-B-Gone, Inc.*, No. 09-0418-AG-RNBX, 2010 WL 761241, at

16   *3 (C.D. Cal. Mar. 1, 2010) (Andrew J. Guilford) ("The proper time for this Court

17   to address claim construction is not a motion to dismiss.").[8]

18

19   [7]     Indeed, WT cites only *Ultramercial* and *Bilski* for the premise that § 101 can
20   be decided without claim construction.  But *Ultramercial* confirmed patentability,
     and *Bilski* was on appeal from proceedings before the Patent Office, not from
21   litigation as here.  The Patent Office never engages in claim construction
22   proceedings.

23   [8]     *See also Investpic, LLC v FactSet Research Sys., Inc.*, No. 10-1028-SLR,
     2011 WL 4591078, at *1 (D. Del. Sept. 30, 2011) (declining to address § 101
24   without discovery or claim construction.); *Spark Networks USA, LLC v. Humor*
     *Rainbow, Inc.*, 2:11-cv-0143-JHN-JEMx (C.D. Cal. July 7, 2011) (D.I. 40)
25   (refusing to decide § 101 on motion to dismiss); *Progressive Casualty Ins. Co. v.*
     *Safeco Ins. Co.*, 1:10-cv-1370, slip op. at 6-7 (N.D. Ohio Nov. 12, 2010) (D.I. 48)
26   (denying Rule 12(b)(6) motion that subject matter is patent-ineligible; "At this time
27   the Court is without the benefit of the prosecution history and the parties' argument
     on claim construction.  The record that the Court may consider on a 12(b)(6)
28   motion- the complaint and the attached patent- is insufficient for the court to
                                                                        (continued...)

1    Here, to set up its § 101 arguments, WT implicitly asks the Court to assume

2 claim constructions without proof or even argument that the assumed constructions

3 are correct.  For example, WT would have the Court assume:

4 •    All claims of the patents-in-suit do not include machines.  (D. Br. at 1)

5 •    The "at least one analysis host processor" of '719 Patent, claim 1 is "any

6    general purpose computer" (D. Br. at 2), and the "computer" of '502 claim 53

7    is "generic." (D. Br. at 19)

8 •    The requirement that computers make purchases in '502 Patent, claim 53 is

9    mere math and the facilitation of transactions.  (D. Br. at 7)

10 •    The elements "at least one processor" and "at least one computer storage" of

11    '740 Patent, claim 1 are not limiting at all.  (D. Br. at 24)

12 RA disputes each WT claim construction assumption.  Accordingly, RA should be

13 afforded an opportunity to fully brief claim constructions in their proper context and

14 with full evidence available.  Until the Court properly construes the relevant words

15 of the patent claims, WT's motion is premature and must be denied.

16    **E.    The RA Patent Claims Are Patentable Under § 101.**

17    WT does not argue that the RA patents are not directed at the broad patent

18 eligible § 101 categories of machine or processes.  *C.f. Ultramercial*, 657 F.3d at

19 1326 (noting that "process" in § 101 as defined by 35 U.S.C. § 100(b) includes any

20

21    (...continued from previous page)
22 construe the patent claims..."); *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723
F. Supp. 2d 665, 670 (D. Del. 2010) ("the process for properly construing a patent
23 claim is unsuited for a motion to dismiss"); *Cima Labs, Inc. v. Actavis Group HF*,
Nos. 07-893-DRD, 06-1970-DRD, 06-1999-DRD, 2007 WL 1672229, at *3 (D.
24 N.J., June 7, 2007) ("proper time for this Court to address claim construction is not
on a motion to dismiss"); *Yangaroo Inc. v. Destiny Media Techs., Inc.*, No. 09-C-
25 462, 2009 WL 2836643, at *3 (E.D. Wis. Aug. 31, 2009) (refusing to construe
claims on motion to dismiss); *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F.
26 Supp. 2d 903, 919-20 (D. Md. 2008) (denying motion to dismiss because "better
approach is to have the claim construction issues fully briefed and presented to the
27 court at a later date").

28

1    method—under the common meaning of method—including business methods).

2    Rather, WT's motion hinges on arguing that the RA patent claims fall within the

3    narrow "abstract" exception to § 101.  Br. at 17-23.  As explained below, this

4    argument fails because the RA patent claims are directed to more than an abstract

5    idea; each claim requires a special purpose computer.  The RA patents do not

6    preempt any "abstract field."

7              **1.    RA's Patents Are Not Abstract Because They Require A**
               **Special Purpose Computer.**
8

9              The RA patent claims are well within the scope of subject matter permitted

10   by § 101.  The Federal Circuit's *Ultramercial* decision is particularly illustrative.

11   *See* 657 F.3d at 1323.  There, patent claims are directed at distributing copyrighted

12   works for free over the Internet if the user views an advertisement.  *Id.* at 1324.

13   The claims make no explicit mention of a computer, processor, or other hardware.

14   *Id.*  The lower court dismissed based on the claims being too abstract to satisfy §

15   101, but the Federal Circuit reversed and remanded.  *Id.*

16             The court noted that § 101 is a "dynamic provision designed to encompass

17   new and unforeseen inventions."  *Id.* at 1327 (quoting *J.E.M. Ag Supply Inc. v.*

18   *Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 122 S. Ct. 593, 151 L. Ed. 2d 508

19   (2001)).  The court also emphasized that "**application of an abstract idea may**

20   **well be deserving of patent protection**."  *Id.* (citing *Diehr,* 101 S. Ct. 1048 and

21   *Parker v. Flook*, 437 U.S. 584, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978)) (emphasis

22   added).  This is because "the Patent Act covers and protects any new and useful

23   technical advance, **including applied ideas**."  *Id.* (emphasis added).

24             With this in mind, the Court reasoned that "the mere idea that advertising can

25   be used as a form of currency is abstract. . . ."  *Id.* at 1328.  However, the

26   Ultramercial patent "discloses a practical application of this idea."  *Id.*  In finding

27   the Ultramercial invention patent eligible, the court emphasized that the claims

28   include particular method steps which "are likely to require intricate and complex

computer programming." *Id.* Also, certain Ultramercial patent claim steps require "specific application to the Internet. . . ." *Id.*

The complex programming required by the Ultramercial claims is important because improvements to a computer "through interchangeable software or hardware enhancements deserve patent protection." *Id.* at 1329. "[P]rogramming creates a new machine, because **a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software**." *Id.* (emphasis added).

Here, the RA patent claims are meaningfully limited because they recite, for example, "computer implemented methods," an "analysis host processor," a "memory," a "nontransitory computer processor readable storage medium," a "computer processor readable program code," and a "data processing apparatus"— each forming part of a special purpose computer programmed to perform the particular functions required to create the specific index based on factors, such as dividends, cash flow, or revenue. Also, many RA patent claims require a computer network and/or the Internet. *See, e.g.*, '740 Patent, claim 108 (requiring coupling to a "data network"). Even more importantly, **each RA patent claim recites performing various steps "by" the computer processor** (or similar language). *See, e.g.*, '719 Patent, claim 1. Indeed, to practice its patents, RA has employed over 7,000 lines of intricate and complex computer programming. Surti ¶ 12.[9] Thus, the claims include "a special purpose computer" and are improvements to a computer that "deserve patent protection." *Ultramercial*, 657 F.3d at 1329.

---

[9] Under Fed. R. Civ. P. 12(d), RA is permitted a reasonable opportunity in opposing a motion under Fed. R. Civ. P. 12(c) to present pertinent material outside the pleadings. If this material is considered, WT's motion is converted to a motion for summary judgment. *Id.* Summary judgment is premature because the parties' have not had opportunity to take discovery on the factual issues referenced in this brief. Also, disputed factual disputes foreclose a grant of summary judgment at this time.

1    *Ultramercial* is not the only case holding that patent claims akin to RA's are

2    patentable. For example, in *Island Intellectual Prop. LLC v. Deutsche Bank, AG*,

3    the district court held that claims directed at methods for banks to sweep clients'

4    funds into external accounts were patentable under § 101. 2012 WL 386282, at *2.

5    The court noted that the claims "purport to improve existing technology" and

6    "invoke computers and applications of computer technology." *Id.* at *7. Also, the

7    methods would be "impracticable but for significant and complex computer

8    programming" but could be "completed in a hypothetical person's head-albeit very

9    inefficiently." *Id.* at *7-8.

10   Similarly, the RA patents improve existing technology. *See, e.g.,* '740

11   Patent, 1:41-3:51 (explaining old technology and expressing need for "an improved

12   method of weighting financial objects"). The RA patent claims invoke computers

13   with special purpose programming. *See* Section II(3), above. And, practicing the

14   RA patent claims is impossible without "significant and complex computer

15   programming" and cannot possibly be "completed in a hypothetical person's head."

16   *Id.* As such, the RA patent claims are patentable.[10]

17

18

---

19   [10]    *See also, e.g., Research Corp. Techs*, 627 F.3d at 865 (reversing summary
20   judgment of invalidity under § 101 where claim asserted mathematical function for
     improving digital images); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319,
21   1333 (Fed. Cir. 2010) (affirming decision that patent claims directed to calculations
     requiring use of a machine, a GPS, were patentable); *Prompt Med. Sys., L.P. v.*
22   *Allscriptmysis Healthcare Solutions, Inc.*, No. 6:10-CV-71, 2012 WL 678216, at *9
23   (E.D. Tex. Feb. 13, 2012) (denying § 101 motion for summary judgment where
     patent claims "involve the use of a computer and complex programming" and "are
24   not drawn to purely mental processes"); *Iconfind, Inc. v. Google, Inc.*, No. 2:11-
     CV-0319-GEB-JFM, 2012 WL 158366, at *3 (E.D. Cal. Jan. 18, 2012) (summarily
25   denying Rule 12(c) motion to dismiss based on § 101 where claims were not
26   "manifestly abstract"); *VS Techs., LLC v. Twitter, Inc.*, No. 2:11-CV-43, 2011 WL
     4744911, at *5 (E.D. Va. Oct. 5, 2011) (denying § 101 summary judgment of
27   invalidity where patent "claimed a particular method for creating a virtual
     community").

28

1    As explained in Section III(C), above, this Court need not decide § 101 issues

2    on the merits at this time.  However, if the Court decides this issue, it should be

3    decided in RA's favor because RA's special purpose computer patent claims are

4    patentable under the law.

5              2.    **The RA Patent Claims Do Not Preempt An Overly Broad**
                     **"Abstract Field."**

6

7    WT's brief also incorrectly argues that the RA patents "improperly attempt to

8    claim a monopoly on the basic investing concept of using any of a broad range of

9    fundamental factors to build a securities index and associated portfolios." D. Br. 1-

10   2.  However, all inventions involve new ideas, and all patents provide a limited

11   monopoly to use that idea.  The RA patents are no different.  They provide RA a

12   limited right to exclude others from using its novel invention.

13   Further, the RA patents do not attempt to monopolize any "fundamental

14   concept or idea" of asset portfolio management that "would foreclose innovation in

15   this area." D. Br. 15.  For example, RA does not purport to have a patent on the

16   basic concept of building an index.  Rather, the RA patent claims are directed to or

17   require a special purpose computer programmed to use specific methods and factors

18   to create novel and useful indexes, and in some claims, create a portfolio of assets

19   such as stocks, which necessarily involves the trading of cash for securities.

20   Improvements to existing ideas, such as those in RA's patents, are precisely

21   the kind of new inventions encouraged by *Research Corp.* and *Ultramercial*:

22   "[I]nventions with specific applications or ***improvements to technologies in the***

23   ***marketplace*** are not likely to be so abstract that they override the statutory language

24   and framework of the Patent Act." *Ultramercial*, 657 F.3d at 1328 (quoting

25   *Research Corp.*, 627 F.3d at 869) (emphasis added).  Here, WT or anyone can

26   practice, for example, the prior art taught by the hundreds of patent or publication

27   references that the Patent Office considered when issuing the RA patents. *See, e.g.*,

28

1   '740 Patent, References Cited.  Thus, the RA patent claims are not overly broad and

2   do not improperly occupy an abstract field.

3                    **3.    The RA Patent Claims Cannot Be Performed Mentally.**

4          WT's motion repeatedly asserts, without any supporting evidence, that the

5   RA patent claims can be performed mentally or on paper.  WT offers no evidence

6   of how data from thousands of companies could be gathered by hand.  WT offers no

7   evidence of how hundreds of thousands of difficult long division calculations could

8   be done by hand without introducing inaccuracy, including inaccuracy by rounding

9   errors.  Indeed, contrary to WT's assertions, it is impossible to perform the RA

10  patent claims by hand.  *See* Section II(2), above.  Alternatively, at a minimum, this

11  raises a fact issue that must be decided in RA's favor at this stage.

12         Moreover, WT's assertion is incorrect for at least three additional reasons.

13  First, each RA patent claim requires a computer.  Moreover, the computer is not

14  incidental to RA's invention—each claim requires use of a special purpose

15  computer (or, in some cases, the claims are directed at the special purpose computer

16  itself).  *C.f. Ultramercial*, 657 F.3d at 1329 (stating that a general purpose computer

17  becomes a special purpose computer once programmed for particular functions); *In*

18  *re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (*en banc*) (computer programmed

19  to perform particular functions becomes patentable special purpose computer)[11].

20         Second, if WT's assertions were true, WT could and should simply avoid

21  infringement by creating its indexes solely with pen and paper.  If WT can establish

22  its indices are created without use of computers, RA would have no basis for further

23

24  ───────────────────

     [11]   The "useful, concrete, and tangible result" test of *In re Alappat* was
25  abrogated by the Federal Circuit's opinion in *In re Bilski* which held that the
    machine-or-transformation test is the exclusive § 101 test, 545 F.3d 943, 945 (Fed.
26  Cir. 2008).  However, the Supreme Court reversed the Federal Circuit's opinion by
    holding that the machine-or-transformation test is not the exclusive test.  *Bilski*, 130
27  S.Ct. at 3226.

28

1    pursuing this lawsuit.  But of course, WT uses computers—it would be impossible

2    not to.  Indeed, WT infringes the RA patents by using special purpose computers to

3    create products and will continue to do so unless enjoined by this Court.  CFPI ¶¶

4    30-59.

5          Third, WT focuses on certain exemplary embodiments from the RA patent

6    *specifications* to suggest that the RA *patent claims* could be performed mentally.

7    D. Br. 5-6.  However, the § 101 analysis must focus on the patent claims.  *E.g.*

8    *Research Corp.*, 627 F.3d at 869.  And, as explained above, each RA patent claim

9    requires special purpose computers.  Moreover, if individual embodiments in

10   specifications matter, the Court could equally consider embodiments that are plainly

11   not abstract.  *See, e.g.,* '502 Patent, 4-31; '719 Patent, 9:5-39; '740 Patent, 70:56-

12   72:32 (explaining exemplary computer hardware in detail: CPUT, I/O subsystem,

13   network interface card (NIC), modem, bus, and storage medium such as a WORM

14   drive or CD-ROM).

15         The RA patent claims are not "so manifestly abstract as to override the

16   statutory language of Section 101."  *Research Corp.*, 627 F.3d at 869.  As such,

17   WT's motion should be denied.

18         **4.     The RA Patent Claims Pass The Machine-Or-**
             **Transformation Test.**
19

20         Although not a dispositive or exclusive test, the RA patent claims satisfy

21   § 101 because they pass each prong of the machine-or-transformation test.  In

22   *Bilski*, the Supreme Court rejected the machine-or-transformation test as the sole

23   test for determining subject matter eligibility but noted that the test still could be

24   useful in a court's § 101 analysis.  *Bilski*, 130 S. Ct. at 3227.  Although the test

25   "may well provide sufficient basis for evaluating processes similar to those in the

26   Industrial Age … there are reasons to doubt whether the test should be the sole

27   criterion for determining the patentability of inventions in the Information Age."

28   *Id.* at 3227.  Indeed, patents that fail the machine or transformation test can still be

patentable and not abstract. *See Prompt Med. Sys., L.P.*, 2012 WL 678216, at *6, 9-10 (holding that patent-at-issue was directed to eligible subject matter under § 101 despite it failing the machine-or-transformation test).

Here, with respect to the machine prong, every claim is tied to a particular machine—a special purpose computer. *C.f. Ultramercial*, 657 F.3d at 1329. The RA patent claims detail what steps are by computer, and this provides a meaningful limitation to the claims. *See* Section III(E)(1), above.

As for transformation, stored computer data is physical structure. *See In re Lowry*, 32 F.3d 1579, 1583-1584 (Fed. Cir. 1994) ("More than mere abstraction, the data structures are specific electrical or magnetic structural elements in a memory"); *see also* '719 Patent, 10:6-24 (explaining that computing refers to transforming data represented as physical quantities within the computing system's registers and/or memories). The claims at issue transform raw financial data into data structures and values that can be used to create a functional financial index. Indeed, many RA patent claims go even further by requiring the purchase or selling of equities or other financial instruments to create and maintain a financial portfolio. *See, e.g.,* '502 Patent, claim 53.   In those specific claims, for example, the raw financial data is transformed into a combination of real stocks, bonds, or other real valued financial instruments. The use of special purpose computers and complex code to create a real and tangible asset portfolio meaningfully limits the claims and is undoubtedly a transformation.

Thus, the RA patent claims satisfy either prong of the machine-or-transformation test further confirming their patentability under § 101.

### 5.      WT's Motion Relies On Distinguishable Case Law.

WT relies upon distinguishable case law to press its § 101 arguments:

- First, WT cites *Gottschalk v. Benson*, 409 U.S. 63, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972) and *Parker v. Flook*, 98 S. Ct. 2522 (1978) for the proposition that math cannot be patentable. D. Br. at 12.  Unlike the RA patent claims,

the unpatentable *Benson* and *Flook* patent claims are pure math and include no computer limitations. *Benson*, 93 S. Ct. at app.; *Flook*, 98 S. Ct. at app.[12] Also, *Flook* notes that it is clear "that a process is ***not*** unpatentable simply because it ***contains*** a law of nature or a mathematical algorithm." *Flook*, 98 S. Ct. at 2526 (emphasis added).

• WT alleges that *Bilski*'s facts are "directly applicable" to this case. D. Br. at 13. But, like *Benson* and *Flook*, the *Bilski* claims include no computer limitations and certainly do not include any special purpose computer. *Bilski*, 130 S. Ct. at 3223-24.

• Similarly, with two exceptions, none of the six cases cited in the paragraph spanning pages 16-17 of WT's brief involve claims reciting computers. The first exception is *In re Warmerdam*, 33 F.3d 1354, 1360-61 (Fed. Cir. 1994), where claim five is directed at "a machine having a memory" (i.e., a computer). But the Federal Circuit held that claim five ***is*** patentable because of this computer element: "Claim 5 is for a machine, and is clearly patentable subject matter." *Id.* at 1360. The second case that involves computers is *In re Maucorps*, 609 F.2d 481 (C.C.P.A. 1979), where the CCPA held claims unpatentable under § 101 because they include math. However, *Maucorps* predates the Supreme Court's clarification in *Diehr* that math combined with non-abstract matter may present a patentable claim. *Diehr*, 101 S. Ct. at 1057-58. Accordingly, all of these six cases are distinguishable.

---

[12]   WT cites *CLS Bank Int'l v. Alice Corp.*, 768 F. Supp. 2d 221 (D.D.C. 2011), as stating that, under *Benson*, practical application of a math formula does not make a claim patentable under § 101 if the claim would cover all "practical application of the abstract concept." D. Br. at 19, 21. But, this misreads *Benson* because the *Benson* claims were directed at pure math—there is no computer limitation at all. Indeed, *Diehr* holds that math plus a practical application may be patentable. 101 S. Ct. at 1057-58. Also note that *CLS Bank* is presently on appeal to the Federal Circuit. Morgan Ex. F.

1 • WT cites *Cybersource* to argue that the RA patents are invalid because

2 method steps could be performed with "pen and paper." D. Br. at 15 (*citing*

3 *Cybersource Corp.*, 654 F.3d at 1375). Again, WT is off-point. All the RA

4 patent claims *expressly require* a computer and thus are impossible to

5 perform with pen and paper. *See* Section III(D)(3), above. Moreover, even if

6 a computer was not required by the RA patent claims, it would be impossible

7 to practice the RA inventions entirely within a human mind. *See id.*

8 Additionally, unlike the vague claims of *Cybersource*, the RA patent claims

9 detail "how the information [] will be sorted, weighed and ultimately

10 converted into a useable conclusion. . . ." *Id.* at n.4. Thus, for the RA patent

11 claims, a computer must "play a significant part in permitting the claimed

12 method" and are therefore patentable under *Cybersource*.

13 • In *Dealertrack*, the one patent found invalid under § 101 was directed to a

14 "computer-aided" method, but the claims included no other mention of a

15 computer. *Dealertrack, Inc. v. Huber*, Nos. 2009-1566, 2009-1588, 2012

16 WL 164439, at *14. *Dealertrack*'s claims were "silent as to how a computer

17 aids the method, the extent to which a computer aids the method, or the

18 significance of a computer to the performance of the method." *Id.* at *17.

19 Here, the RA patent claims explicitly state many detailed steps each "by" a

20 specially programmed computer. Thus, a computer is essential to performing

21 the RA patent claims.

22 • WT cites *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*, No. 07-

23 796-RJL-AK, 2010 U.S. Dist. LEXIS 141399 (D.D.C. Aug. 27, 2010) as an

24 example of a case holding that computer limitations alone do not make

25 claims patentable. However, the cited decision is a Magistrate Judge's report

26 and recommendation. Despite this report issuing in 2010, the district judge

27 has not yet adopted this report. *See* Morgan Ex. G.

28

1   •      Finally, on reply, WT may cite *Fort Props. v. Am. Master Lease LLC*, No.

2          2009-1242, 2012 WL 603969 (Fed. Cir. Feb. 27, 2012), as a recent case

3          affirming summary judgment of § 101 invalidity. However, *Fort Properties*

4          is distinguishable because, there, few claims referenced use of the computer

5          and for claims that did, the claims did not "play a significant part in

6          permitting the claimed method to be performed" and were merely

7          "insignificant post-solution activity." *Id.* at *6. The many steps of the RA

8          patent claims are explicitly "by" a special purpose computer, and the

9          computer is neither "insignificant" nor "post-solution."

10 The RA patent claims are much more akin to the claims of the patentable specially

11 programmed computer of *Ultramercial* and *Island Intellectual Property* than the

12 more cursory claims of, for example, *Dealertrack* and *Cybersource*. Thus, WT's

13 motion should be denied, and, to the extent the Court is willing to make any § 101

14 decision, it should hold the RA patent claims valid under § 101.

15      **F.**      **WT's Motion Fails Because WT Does Not Address All Claims Of RA's Asserted Patents.**

16

17      WT's motion presents no argument at all that '719 Patent, claims 42-88, '502

18 Patent, claims 2-52 or 57-61, or '740 Patent, claims 74-96 and 97-119 fail to satisfy

19 § 101. But it is black-letter law that "each claim must be considered as defining a

20 separate invention." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) (citing

21 35 U.S.C. § 282).

22      By entirely ignoring these claims and by grouping other claims together in a

23 conclusory fashion, WT attempts to mask severe flaws in its position that become

24 apparent when the RA patent claims are considered individually. As examples: the

25 "data processing apparatus" and "one computer processor being couple to at least

26 one data network" referenced by '740 Patent, claims 73-77 and 108-119 are not

27 abstract; the "index construction manager device" of '740 Patent, claim 45 is not

28 abstract; the "trading host computer processing apparatus," "index retrieval

1   subsystem, "trading accounts management subsystem," and "purchasing

2   subsystem" of '740 Patent, claim 86 are not abstract; the "trading accounts

3   database" and "trading accounts management subsystem" of '740 Patent, claim 87

4   are not abstract; the "exchange host computer processing apparatus" of claim 88 is

5   not abstract; the "computerized databases" in '719 Patent, claim 29 are not abstract;

6   and steps of '502 Patent, claims 45-48 that must be "by the at least one processor

7   based on user input" are not abstract.

8       WT's failure to meet its burden of proof on each individual RA patent claim,

9   even standing alone, requires denial of WT's motion.

10  **IV.   CONCLUSION**

11      For the reasons above, WT's motion for judgment on the pleadings should be

12  denied.  Alternatively, any dismissal should permit RA leave to amend its

13  complaint.  *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal.

14  2004) (court may grant Rule 12(c) motion with leave to amend and dismiss without

15  entering judgment); Fed. R. Civ. P. 15(a) (leave to amend should be liberally

16  granted).

17  Dated:  March 12, 2012          WILSON SONSINI GOODRICH & ROSATI
                                    Professional Corporation
18
19                                  By: */s/Natalie J. Morgan*
                                        David S. Steuer
20                                      Natalie J. Morgan

21                                  Attorneys for Plaintiff and Counterdefendant
                                    RESEARCH AFFILIATES, LLC
22

23

24

25

26

27

28

1 | *Of Counsel*

2 | JOSE C. VILLARREAL (*pro hac vice submitted*)
3 | jvillarreal@wsgr.com
   | BRIAN D. RANGE (*pro hac vice submitted*)
4 | brange@wsgr.com
   | ADEN M. ALLEN (*pro hac vice submitted*)
5 | aallen@wsgr.com
   | WILSON SONSINI GOODRICH & ROSATI, P.C.
6 | 900 South Capital of Texas Hwy.
7 | Las Cimas IV, Fifth Floor
   | Austin, TX 78746
8 | Telephone:   (512) 338-5400
   | Facsimile:    (512) 338-5499

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2    The undersigned hereby certifies that a true and correct copy of the above

3  and foregoing document has been served on March 12, 2012 to all counsel of

4  record deemed to have consented to electronic service via the Court's CM/ECF

5  system.

6    Any other counsel of record will be served by electronic mail and regular

7  mail.

8

9                                         */s/Natalie J. Morgan*

10                                        Natalie J. Morgan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28