1 | Peter J. Wied (SBN 198475)
*pwied@goodwinprocter.com*
2 | **GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
3 | Los Angeles, CA 90017
Tel.: 213.426.2500
4 | Fax: 213.623.1673

ORIGINAL

5 | Attorneys for Defendants
**WISDOM TREE INVESTMENTS,**
6 | **INC.; WISDOM TREE TRUST;**
**WISDOM TREE ASSET**
7 | **MANAGEMENT, INC.; WISDOM**
**TREE RETIREMENT SERVICES,**
8 | **INC.; MELLON CAPITAL**
**MANAGEMENT CORP.; and ALPS**
9 | **DISTRIBUTORS, INC.**

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 | **SOUTHERN DIVISION**

13 | Research Affiliates, LLC, | Case No. SACV11-01846 DOC (ANx)

14 | Plaintiff, | **FIRST AMENDED ANSWER,**
**AFFIRMATIVE DEFENSES AND**
15 | | **COUNTERCLAIMS**

16 | v.

17 | Wisdom Tree Investments, Inc., | Judge: Hon. David O. Carter
Wisdom Tree Trust, Wisdom Tree Asset | Complaint Filed: December 1, 2011
18 | Management, Inc., Wisdom Tree
Retirement Services, Inc., Mellon | **DEMAND FOR JURY TRIAL**
19 | Capital Management Corp., and ALPS
Distributors, Inc.,

20 | Defendants.

1

## **ANSWER**

2          Defendants WisdomTree Investments, Inc., WisdomTree Trust, WisdomTree

3  Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital

4  Management Corp., and ALPS Distributors, Inc. (collectively "Defendants") hereby

5  answer and otherwise respond to the numbered paragraphs of the Complaint for

6  Patent Infringement ("Complaint") filed by Plaintiff Research Affiliates, LLC

7  ("Plaintiff" or "RA"), as follows:

8                          **NATURE OF THE SUIT**

9          1.      In response to Paragraph 1 of the Complaint, Defendants admit that

10  Plaintiff purports to allege a cause of action for patent infringement arising under

11  Title 35 of the United States Code.

12          2.      Defendants lack sufficient knowledge or information to form a belief as

13  to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, deny

14  each allegation.

15          3.      In response to Paragraph 3 of the Complaint, WisdomTree Investments,

16  Inc. ("WT Investments") admits that it is a corporation organized and existing under

17  the laws of the State of Delaware, with a place of business at 380 Madison Avenue,

18  21st Floor, New York, New York 10017.

19          4.      WisdomTree Trust ("WT Trust") admits the allegations contained in

20  Paragraph 4, except to state that the Chief Executive Officer of WT Investments

21  currently serves as a Trustee and President of WT Trust; and the Chief Financial

22  Officer of WT Investments currently serves as Treasurer of WT Trust.

23          5.      In response to Paragraph 5 of the Complaint, WisdomTree Asset

24  Management, Inc. ("WT Asset Management") admits that it is a corporation

25  organized and existing under the laws of the State of Delaware, with a place of

26  business at 380 Madison Avenue, 21st Floor, New York, New York 10017.  WT

27  Asset Management admits that it is a wholly-owned subsidiary of WT Investments

28

1  that provides investment advisory services. Defendants deny the remaining

2  allegations in Paragraph 5.

3      6.     WisdomTree Retirement Services, Inc. ("WT Retirement Services")

4  admits that it is a corporation organized and existing under the laws of the State of

5  Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York,

6  New York 10017 and that WT Retirement Services is a wholly-owned subsidiary of

7  WT Investments. Defendants deny the remaining allegations in Paragraph 6.

8      7.     Mellon Capital Management Corp. ("MCM") admits that it is a

9  corporation organized and existing under the laws of the State of Delaware, with a

10  place of business at 50 Fremont Street, Suite 3900, San Francisco, California 94105.

11  MCM admits that it has contracts with WT Asset Management to provide certain

12  services. Defendaents deny the remaining allegations of Paragraph 7.

13      8.     ALPS Distributors Inc. ("ALPS") admits that it is a corporation

14  organized and existing under the laws of the State of Colorado, with a place of

15  business at 1290 Broadway, Suite 1100, Denver, Colorado 80203.

16  Defendant WT Investments admits that ALPS is a distributor of WT ETFs.

17                    **JURISDICTION AND VENUE**

18      9.     Defendants admit that this Court has jurisdiction over the subject

19  matter of the Complaint.

20      10.    Paragraph 10 states legal conclusions as to which no responsive

21  pleading is required, and to the extent any responsive pleading is required,

22  Defendants deny the allegations in Paragraph 10.

23      11.    Paragraph 11 states legal conclusions as to which no responsive

24  pleading is required, and to the extent any responsive pleading is required,

25  Defendants deny the allegations in Paragraph 11.

26                    **THE PATENTS-IN-SUIT**

27      12.    Defendants admit that U.S. Patent No. 7,747,502 ( "the '502 Patent")

28  was issued on June 29, 2010 and is entitled "Using Accounting Data Based Indexing

2

1   to Create A Portfolio of Assets." Defendants are otherwise without knowledge or
2   information sufficient to admit or deny the remaining allegations in Paragraph 12
3   and on that basis deny them.

4       13.    Defendants admit that U.S. Patent No. 7,792,719 ( "the '719 Patent")
5   was issued on September 7, 2010 and is entitled "Valuation Indifferent Non-
6   Capitalization Weighted Index and Portfolio." Defendants are otherwise without
7   knowledge or information sufficient to admit or deny the remaining allegations in
8   Paragraph 13 and on that basis deny them.

9       14.    Defendants admit that U.S. Patent No. 8,005,740 ( "the '740 Patent")
10  was issued on August 23, 2011 and is entitled "Using Accounting Data Based
11  Indexing to Create a Portfolio of Financial Objects." Defendants are otherwise
12  without knowledge or information sufficient to admit or deny the remaining
13  allegations in Paragraph 14 and on that basis deny them.

14      15.    Defendants lack sufficient knowledge or information either to admit or
15  deny the truth of the allegations regarding the ownership of the '502 Patent, '719
16  Patent, and '740 Patent (collectively, "Patents-in-Suit") and on that basis deny the
17  allegations in Paragraph 15.

18      16.    Defendants deny the allegations of Paragraph 16.

19      17.    WT Investments was advised of the existence of a published version of
20  the patent application corresponding to the '719 Patent and had knowledge of the
21  existence of the Patents-in-Suit at different points after their issuance. Defendants
22  deny the remaining allegations in Paragraph 17.

23      18.    WT Investments received a letter from counsel for RA in September
24  2005 identifying a patent application published as U.S. Pub. No. 20050171884 ("the
25  '884 Application"). That application evolved into the '719 Patent five years later
26  with a different title and claims. Defendants deny the remaining allegations of
27  Paragraph 18.

28

1    19.    WT Investments admits that Mr. S. Craig Hemenway responded to the
2  September 2005 letter with an October 7, 2005 letter on behalf of WT Investments.
3  Defendants deny the remaining allegations in Paragraph 19.

4    20.    WT Investments admits that Mr. Hemenway's October 7, 2005 letter
5  did mention service copies of a Third Party Submission to the United States Patent
6  and Trademark Office ("USPTO") that included prior art references material to the
7  patentability of the '884 Application but apparently not disclosed by the applicant to
8  the USPTO at the time of the letter. Defendants deny the remaining allegations in
9  Paragraph 20.

10    21.    WT Investments admits that Mr. Hemenway provided copies of the two
11  Third Party Submissions regarding the application for the '719 Patent in an October
12  12, 2005 letter to RA. Defendants deny the remaining allegations of Paragraph 21.

13    22.    WT Investments admits that Mr. Hemenway also submitted prior art
14  during the prosecution of the application that led to the issuance of the '502 Patent.
15  Defendants deny the remaining allegations of Paragraph 22.

16    23.    Defendants deny the allegations of Paragraph 23.

17    24.    Defendants lack sufficient knowledge or information either to admit or
18  deny the truth of the allegations in Paragraph 24 of the Complaint and, therefore,
19  deny those allegations.

20    25.    Defendants lack sufficient knowledge or information either to admit or
21  deny the truth of the allegations in Paragraph 25 of the Complaint and, therefore,
22  deny those allegations.

23    26.    WT Investments admits that Robert Arnott met in 2007 in New York
24  with Mr. Michael Steinhardt, who is the current chairman of the Board of Directors
25  of WT Investments. Defendants are without sufficient knowledge or information
26  either to admit or deny the truth of the remaining allegations in Paragraph 26 and on
27  that basis deny them.

28

4

1    27.   WT Investments denies that Bruce Lavine attended or was aware of

2  matters discussed at the purported meeting referenced in Paragraph 27 of the

3  Complaint. Defendants lack sufficient knowledge or information either to admit or

4  deny the truth of the remaining allegations in Paragraph 27 of the Complaint and,

5  therefore, deny those allegations.

6    28.   Defendants deny the allegations of Paragraph 28.

7    29.   Defendants lack sufficient knowledge or information either to admit or

8  deny the truth of the allegations in Paragraph 29 and, therefore, deny those

9  allegations.

10         **COUNT I – INFRINGEMENT OF THE '502 PATENT**

11              **(Against All Defendants)**

12   30.   Defendants incorporate by reference their responses to Paragraphs 1

13  through 29 of the Complaint, as if fully set forth herein.

14   31.   Defendants deny each of the allegations of Paragraph 31.

15   32.   Defendants deny each of the allegations in Paragraph 32.

16   33.   Defendants deny each of the allegations in Paragraph 33.

17   34.   Defendants deny each of the allegations in Paragraph 34.

18   35.   Defendants admit that WT Trust issues certain ETFs that seek to track

19  the WT Indexes. Defendants deny the remaining allegations in Paragraph 35.

20   36.   Defendants deny each of the allegations in Paragraph 36.

21   37.   Defendants deny each of the allegations in Paragraph 37.

22   38.   Defendants deny each of the allegations in Paragraph 38.

23   39.   Defendants deny each of the allegations in Paragraph 39.

24   40.   Defendants deny each of the allegations in Paragraph 40.

25   41.   Defendants deny each of the allegations in Paragraph 41.

26   42.   Defendants deny each of the allegations in Paragraph 42.

27   43.   Defendants deny each of the allegations in Paragraph 43.

28

5

1

## COUNT II – INFRINGEMENT OF THE '719 PATENT

2

### (Against WT Investments, WT Trust and WT Asset Management)

3       44.    Defendants incorporate by reference their responses to Paragraphs 1

4   through 43 of the Complaint, as if fully set forth herein.

5       45.    Defendants deny each of the allegations in Paragraph 45.

6       46.    Defendants deny each of the allegations in Paragraph 46.

7       47.    Defendants deny each of the allegations in Paragraph 47.

8       48.    Defendants deny each of the allegations in Paragraph 48.

9       49.    Defendants deny each of the allegations in Paragraph 49.

10       50.    Defendants deny each of the allegations in Paragraph 50.

11       51.    Defendants deny each of the allegations in Paragraph 51.

12

## COUNT III – INFRINGEMENT OF THE '740 PATENT

13

### (Against WT Investments, WT Trust and WT Asset Management)

14       52.    Defendants incorporate by reference their responses to Paragraphs 1

15   through 51 of the Complaint, as if fully set forth herein.

16       53.    Defendants deny each of the allegations in Paragraph 53.

17       54.    Defendants deny each of the allegations in Paragraph 54

18       55.    Defendants deny each of the allegations in Paragraph 55.

19       56.    Defendants deny each of the allegations in Paragraph 56.

20       57.    Defendants deny each of the allegations in Paragraph 57.

21       58.    Defendants deny each of the allegations in Paragraph 58.

22       59.    Defendants deny each of the allegations in Paragraph 59.

23

## PRAYER FOR RELIEF

24       60.    Defendants deny that RA is entitled to any judgment or relief, including

25   but not limited to that requested in Paragraphs A through H, of the Prayer for Relief

26   in the Complaint.

27

28

6

**GENERAL DENIAL**

61.    Except as specifically admitted, Defendants deny each and every allegation contained in Plaintiff's Claims.

**AFFIRMATIVE AND OTHER DEFENSES**

62.    In addition to the defenses described below, each Defendant expressly reserves the right to allege additional defenses as they become known through the course of discovery.

**FIRST AFFIRMATIVE DEFENSE:  NON-INFRINGEMENT**

63.    Plaintiff is not entitled to any relief against Defendants because Defendants do not infringe, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and enforceable claim of the Patents-in-Suit.

**SECOND AFFIRMATIVE DEFENSE:  INVALIDITY**

64.    The Patents-in-Suit are invalid for failure to meet one or more of the conditions for patentability set forth in Title 35 of the U.S. Code, 35 U.S.C. §§ 100 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

**THIRD AFFIRMATIVE DEFENSE:  UNENFORCEABILITY/ INEQUITABLE CONDUCT**

65.    The '502, '719 and '740 Patents (collectively, the "Patents-in-Suit") are unenforceable due to inequitable conduct.  Applicants, including Robert Arnott and prosecution counsel Ralph Albrecht, engaged in inequitable conduct during prosecution of the applications for the Patents-in-Suit in the USPTO.  That inequitable conduct renders the Patents-in-Suit and each of its claims unenforceable.

**The Patents-in-Suit are Unenforceable Due to Inequitable Conduct Based on the Failure to Disclose Material Prior Art to the USPTO**

66.    At least named inventor Robert Arnott and Research Affiliates' prosecuting attorney Ralph Albrecht engaged in inequitable conduct during the

7

1 | prosecution of the applications for the '502, '719 and '740 Patents (collectively, the

2 | "Patents-in-Suit") in the USPTO by intentionally failing to disclose at least:

3 |         a. the iShares Dow Jones Select Dividend Index Fund and its underlying

4 |            Dow Jones Select Dividend Index,

5 |         b. the work of David Morris using the FTSE Group ("FTSE") for the

6 |            GWA Wealth-based Indexes, and

7 |         c. Robert C. Jones work on the Goldman Sachs Earnings-Weighted Index,

8 | to the USPTO patent examiner during prosecution of the Patents-in-Suit.  That

9 | inequitable conduct renders the Patents-in-Suit and each of their claims

10 | unenforceable.

11 | **<u>Robert Arnott's and Ralph Albrecht's Failure to Disclose the iShares Dow</u>**

12 | **<u>Jones Select Dividend Index Fund and its Underlying Dow Jones U.S. Select</u>**

13 | **<u>Dividend Index to the USPTO</u>**

14 |     67.    At least named inventor Robert Arnott and Research Affiliates'

15 | prosecuting attorney, Ralph Albrecht, engaged in inequitable conduct during the

16 | prosecution of the applications for the '502, '719 and '740 Patents in the USPTO by

17 | withholding the iShares Dow Jones Select Dividend Index Fund and its underlying

18 | Dow Jones Select Dividend Index from the examiner during prosecution of the

19 | Patents-in-Suit.  That inequitable conduct renders the Patents-in-Suit and each of

20 | their claims unenforceable.

21 |     68.    But for Robert Arnott's and Ralph Albrecht's failure to disclose the

22 | iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select

23 | Dividend Index to the USPTO, at least claims 1-4, 15, 18-20, 23, 31, 33-34, 38-41,

24 | 49 and 52-55 of the '502 Patent; claims 1 and 34-36 of the '719 Patent; and claims

25 | 1, 6, 8, 10, 23-25 and 73 of the '740 Patent would not have issued or been allowed

26 | by the USPTO.

27 |     69.    At least as early as October 30, 2003, Dow Jones publicly disclosed the

28 | Dow Jones Select Dividend Index.  (Oct. 30, 2003 Press Release (hereinafter

1   "DJSDI News")).  The index included 50 stocks derived from the Dow Jones U.S.

2   Total Market Index, a broad market benchmark index that represented

3   approximately 95% of U.S. market capitalization.  (*Id.*).  The Dow Jones Select

4   Dividend Index selected its 50 components based on dividend yield and other

5   dividend-related fundamental factors such as historical dividend growth and

6   dividend payout ratio.  The DJSDI also weighted the 50 components of its index

7   based on dividend per share.  (Id.)

8        70.   In addition to being the subject of publication in October 2003, this

9   index was commercially launched in the United States by at least November 3,

10  2003, and therefore it is prior art to the Patents-in-Suit under at least 35 U.S.C.

11  § 102(a).  (*Id.*; *see also* iShares internet page located at

12  http://us.ishares.com/product_info/fund/overview/DVY.htm (showing an inception

13  date of 11/3/203); *Dow Jones Indexes:  Dow Jones Select Dividend Index Summary*,

14  Dow Jones & Company, Inc. (2003) (hereinafter "DJSDI Summary")).

15       71.   On August 18, 2003, iShares Trust ("iShares") publicly filed a

16  registration statement with the United States Securities and Exchange Commission

17  ("SEC") that states the iShares Dow Jones Select Dividend Index Fund is based on,

18  and corresponds to, the Dow Jones Select Dividend Index.  (Aug. 18, 2003

19  Registration Statement, Amendment No. 25 (hereinafter "iShares RS")).

20       72.   In addition to being the subject of publication in August 2003, the

21  iShares Dow Jones Select Dividend Index Fund was commercially launched by

22  Barclays Global Investors ("BGI") on November 7, 2003, and therefore is prior art

23  to the Patents-in-Suit under at least 35 U.S.C. § 102(a).  (Nov. 7, 2003 Press Release

24  (hereinafter "iShares news")).

25       73.   The iShares Dow Jones Select Dividend Index Fund and its underlying

26  Dow Jones Select Dividend Index are but for material under 35 U.S.C. § 102 and

27  103 for at least claims 1-4, 15, 18-20, 23, 31, 33-34, 38-41, 49 and 52-55 of the '502

28  Patent; claims 1 and 34-36 of the '719 Patent; and claims 1, 6, 8, 10, 23-25 and 73

9

1   of the '740 Patent.  Moreover, the iShares Dow Jones Select Dividend Index Fund
2   and its underlying Dow Jones Select Dividend Index in combination with other prior
3   art renders at least the identified claims of the Patents-in-Suit obvious.  Had the
4   USPTO patent examiner considered the iShares Dow Jones Select Dividend Index
5   Fund and its underlying Dow Jones Select Dividend Index, the Patents-in-Suit
6   would not have issued.

7       74.    For example, Claim 1 of the '502 Patent claims a method of creating an
8   index by selecting constituents of the index based upon at least one accounting data
9   other than price; weighting the constituents of the index based upon at least one
10  accounting data other than price; and managing the index.  ('502 Patent at 21:1-36).

11      75.    The iShares Dow Jones Select Dividend Index Fund and its underlying
12  Dow Jones Select Dividend Index disclose an "index of financial objects"
13  constructed with a computer-implemented method meeting all the elements of claim
14  1 of the '502 Patent.

15      76.    The method of claim 1of the '502 Patent creates, by at least one
16  computer, an index of the financial objects.  ('502 Patent at 21:5-6).  The iShares
17  Dow Jones Select Dividend Index Fund "seeks investment results that correspond
18  generally to the price and yield performance, before fees and expenses, of the Dow
19  Jones Select Dividend Index, an index compiled by Dow Jones & Company (the
20  'Index Provider')."  (iShares RS at p. ii (emphasis added)).  The Dow Jones Select
21  Dividend Index "employs clear, unbiased and systematic methodologies that are
22  fully integrated" within the index.  (DJSDI News (emphasis added)).

23      77.    On information and belief, the Dow Jones Select Dividend Index was
24  created and managed by using at least one computer or processor.  Further, Research
25  Affiliates admitted during prosecution of App. No. 10/159,610 "that computers and
26  processing systems were well known in the art in relation to construction and
27  management of a financial index or investment instruments..." (Response to Office
28  Action in App. No. 10/159,610, submitted 6/9/2008 (pp.13-15), 5/4/2009 (pp. 13-

14), and 2/8/2010 (pp. 18-19)).  Thus, in the unlikely event the Dow Jones Select
Dividend Index was found not to be created with a computer, it would have been
obvious to create the index "by at least one computer" as claimed.

78.    In the method of claim 1 of the '502 Patent the index is created by
"selecting, by at least one computer, financial objects as constituents of the index
based upon at least one accounting data regarding entities issuing the financial
objects rather than price of the financial objects." ('502 Patent at 21:7-10).  The
iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
Dividend Index disclose such a selection:  "To be eligible for inclusion in the [Dow
Jones Select Dividend] index, a component must have a positive historical five-year
dividend per share growth, an average five-year dividend payout percentage rate less
than or equal to 60% and an annual average daily dollar trading volume greater than
$1.5 million.  Components that pass this criteria are then ranked by dividend yield,
and the top 50 components of the Dow Jones U.S. Total Market Index are **selected**
for the Dow Jones Select Dividend Index."  (DJSDI News (emphasis added)).

79.    In the method of claim 1 of the '502 Patent the selection criteria of
constituent financial objects must include at least one of several accounting data,
including "cash flow of the entities issuing the financial objects, sales of the entities
issuing the financial objects, book value of the entities issuing the financial objects
or any dividends of the entities issuing the financial objects." ('502 Patent at 21:11-
16).  The iShares Dow Jones Select Dividend Index Fund and its underlying Dow
Jones Select Dividend Index disclose such a selection criteria:  "To be eligible for
inclusion in the [Dow Jones Select Dividend] index, a component must have a
positive historical five-year dividend per share growth, an average five-year
dividend payout percentage rate less than or equal to 60% and an annual average
daily dollar trading volume greater than $1.5 million.  Components that pass this
criteria are then ranked by dividend yield, and the top 50 components of the Dow

11

1  Jones U.S. Total Market Index are selected for the Dow Jones Select Dividend
2  Index." (DJSDI News).

3      80.   In addition to "selecting," the index is created in the method of claim 1
4  of the '502 Patent by "weighting, by the at least one computer, the constituents of
5  the index based upon at least one accounting data regarding the entities issuing the
6  financial objects rather than price of the financial objects, to obtain constituent
7  weightings of the constituents of the index." ('502 Patent at 21:17-22).  The iShares
8  Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
9  Dividend Index disclose such a weighting. (iShares RS at p. 5 ("The stocks
10 included in the Index are weighted by dividend per share")).  The Dow Jones
11 publicly disclosed that "Each company's weight in the Dow Jones Select Dividend
12 Index is based on the amount of its indicated dividend.  The indicated annual
13 dividends for all components are totaled, and each component's weight is equal to
14 its dividend contribution." (DJSDI News).

15     81.   Like the selecting criteria, in the method of claim 1 of the '502 Patent,
16 the weighting criteria of constituent financial objects must include at least one of
17 several accounting data, including "cash flow of the entities issuing the financial
18 objects, sales of the entities issuing the financial objects, book value of the entities
19 issuing the financial objects or any dividends of the entities issuing the financial
20 objects." ('502 Patent at 21:22-26).  The iShares Dow Jones Select Dividend Index
21 Fund and its underlying Dow Jones Select Dividend Index disclose such weighting
22 criteria.  "The Dow Jones Select Dividend Index invests in 50 of the highest
23 dividend-yielding companies in the Dow Jones U.S. Total Market Index (excluding
24 REITS) that have a proven track record for consistent dividend payout, based on the
25 following criteria:  they must have a positive historical five-year dividend-per-share
26 growth rate, a five-year average dividend payout percentage rate less than or equal
27 to 60%, and annual average daily dollar trading volume greater than $1.5 million.

28

12

FIRST AMENDED ANSWER, AFFIRMATIVE          Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1   The index is rebalanced once a year and a company's weight is based on its

2   indicated annual dividend." (iShares News).

3       82.    The method of claim 1 of the '502 Patent also includes a managing step

4   providing for "managing, by the at least one computer, the index, and managing at

5   least one portfolio of financial objects based on the index." ('502 Patent at 21:28-

6   30). It was well known that Barclays managed the iShares Dow Jones Select

7   Dividend Index Fund: "As investment advisor, [Barclays Global Fund Advisor

8   ("BGFA")] has overall responsibility for the general management and

9   administration of the Trust. BGFA provides an investment program for the [iShares

10  Dow Jones Select Dividend Index] Fund and manages the investment of its assets.

11  BGFA uses teams of portfolio managers, investment strategists and other investment

12  specialists." (iShares RS at p. 7). Likewise, the index itself was managed: "The

13  Dow Jones Select Dividend Index will be reviewed on an annual basis in

14  December." (DJSDI News).

15      83.    The managing step of claim 1 of the '502 Patent also includes

16  "altering, by the at least one computer, the relative weightings of the financial

17  objects within said at least one portfolio of financial objects based on the index as

18  the at least one accounting data concerning the entities of the financial objects

19  changes or the constituents of the index change over time" ('502 Patent at 21:31-

20  36), which is also disclosed by the withheld prior art. For example, "[t]he Index is

21  reconstituted annually. The Fund uses a Replication strategy to try to track the

22  Index." (iShares RS at p. 5). "The [Dow Jones Select Dividend] index includes 50

23  stocks, weighted by their indicated annual dividends. Components must fall below

24  100 in the rankings to be removed from the index during the annual review.

25  Changes are made in between reviews due to corporate actions or when a company

26  announces that it will eliminate its dividend." (DJSDI Summary, at p. 1). On

27  information and belief, the iShares Dow Jones Select Dividend Index Fund was

28  rebalanced or re-weighted by using at least one computer or processor.

13

1    84.    Any differences between the asserted claims of the '502 Patent and the
2  iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
3  Dividend Index are such that the subject matter as a whole would have been obvious
4  to a person of ordinary skill in the art at the time the invention was made. Because
5  the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones
6  Select Dividend Index discloses each of the limitations of claim 1 and claims 2-4,
7  15, 18-20, 23, 31, 33-34, 38-41, 49 and 52-55 of the '502 Patent, the iShares Dow
8  Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend
9  Index were therefore but-for material prior art.

10    85.    The iShares Dow Jones Select Dividend Index Fund and its underlying
11  Dow Jones Select Dividend Index also disclose "a method of constructing an index
12  of assets" meeting all the elements of claim 1 of the '719 Patent.

13    86.    The method of claim 1 of the '719 Patent constructs an index by first
14  "**accessing** by the at least one analysis host processor of one or more databases
15  storing and permitting retrieval of data (D) about a plurality of entities (E) and a
16  plurality of corresponding assets (A) each issued by or having been issued by at
17  least one of the plurality of entities (E)." ('719 Patent at 10:47-51). Second, the
18  method of claim 1 of the '719 Patent constructs an index by "**receiving** by the at
19  least one analysis host processor at least one objective measure of scale (O)
20  regarding one or more of the plurality of said assets, or one or more of the plurality
21  of said entities (E) associated with said corresponding assets (A)." ('719 Patent at
22  10:53-56). Third, the method of claim 1 of the '719 Patent constructs the index by
23  "**retrieving** by the at least one analysis host processor one or more of said data (D)
24  about said plurality of said entities (E) and said corresponding assets (A)." ('719
25  Patent at 10:57-59). On information and belief, the Dow Jones Select Dividend
26  Index was created and/or managed by accessing a database and receiving/retrieving
27  data. Also, as Applicant has admitted that the use of computers for construction and
28  management of indices or funds was well known in the art (Response to Office

1  Action in App. No. 10/159,610, submitted 6/9/2008 (pp.13-15), 5/4/2009 (pp. 13-
2  14), and 2/8/2010 (pp. 18-19)), it necessarily follows that the "accessing,"
3  "receiving," "retrieving," and "storing" of related data/information steps recited in
4  claim 1 are also firmly in the prior art because these are all required computing
5  operations.

6       87.    Construction of the index claimed in method claim 1 of the '719 Patent
7  also includes a "selecting" step: "selecting by the at least one analysis host
8  processor a selection from said plurality of said assets (A) and said entities (E) to
9  comprise a plurality of constituent index assets (IA) comprising the index of assets
10  (I)." ('719 Patent at 10:60-64). As discussed above for the '502 Patent, the iShares
11  Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
12  Dividend Index disclose such a selection: "To be eligible for inclusion in the [Dow
13  Jones Select Dividend] index, a component must have a positive historical five-year
14  dividend per share growth, an average five-year dividend payout percentage rate less
15  than or equal to 60% and an annual average daily dollar trading volume greater than
16  $1.5 million. Components that pass this criteria are then ranked by dividend yield,
17  and the top 50 components of the Dow Jones U.S. Total Market Index are selected
18  for the Dow Jones Select Dividend Index." (DJSDI News).

19       88.    The "selecting" step of method claim 1of the '719 Patent further
20  comprises:

21      "selecting by the at least one analysis host processor said one or more
22      data (D) to be a quantitative data (Q) reflecting the amount of said at
23      least one objective measure of scale (O) associated with each of said
24      entities, . . . wherein said at least one objective measure of scale (O)
25      comprises a measure of size (SZ) of each said entity (E) associated
26      with each said given asset (A), and wherein said measure of the size
27      (SZ) of each said entity (E) corresponding to each said asset (A)
28      comprises at least one of:  a demographic measure of a said entity (E)

15

1    associated with said asset (A); a financial metric of a said entity (E)
2    associated with said asset (A); a metric from information disclosures
3    of a publicly traded entity; or a metric from information about a said
4    entity (E) associated with said asset (A)."

5    ('719 Patent at 10:65-11:20).  As discussed above, the iShares Dow Jones Select
6    Dividend Index Fund and its underlying Dow Jones Select Dividend Index disclose
7    such a selection: "To be eligible for inclusion in the [Dow Jones Select Dividend]
8    index, a component must have a positive historical five-year dividend per share
9    growth, an average five-year dividend payout percentage rate less than or equal to
10   60% and an annual average daily dollar trading volume greater than $1.5 million.
11   Components that pass this criteria are then ranked by dividend yield, and the top 50
12   components of the Dow Jones U.S. Total Market Index are selected for the Dow
13   Jones Select Dividend Index." (DJSDI News).  Thus, in selecting high dividend-
14   yielding companies for the Dow Jones Select Dividend Index, the various dividend
15   data constitute "a financial metric of a said entity (E) associated with said asset (A)"
16   and therefore "a measure of size (SZ)," as claimed.

17        89.    Furthermore, the "selecting" step of method claim 1 comprises
18   "ranking by the at least one analysis host processor said entities (E) based upon at
19   least one of a said quantitative data (Q) associated with the at least one objective
20   measure of scale (O) of each of said entities (E) and selecting by the at least one
21   analysis host processor said selection from said plurality of said assets (A) or said
22   entities (E) to comprise said plurality of constituent index assets (IA) based on said
23   ranking." ('719 Patent at 11:21-29).  As discussed above, the iShares Dow Jones
24   Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index
25   disclose such a ranking: "Components that pass this criteria are then ranked by
26   dividend yield, and the top 50 components of the Dow Jones U.S. Total Market
27   Index are selected for the Dow Jones Select Dividend Index." (DJSDI News).

28

16

1    90.    Finally, construction of the index claimed in the method claim 1 of the

2  '719 Patent includes a "calculating" step:

3         **"calculating** by the at least one analysis host processor proportional

4         **weights** for the index of assets to be objective measure of scale

5         weights (OW) . . . wherein said calculating comprises: (i) adding by

6         the at least one analysis host processor the quantitative data (Q) of

7         each of said at least one objective measure of scale (O) for all of said

8         constituent index assets (IA) to yield a sum total quantitative data

9         (SUMQ) for said at least one objective measure of scale (O); and (ii)

10        determining by the at least one analysis host processor a relative size

11        of the quantitative data (Q) of a said at least one objective measure of

12        scale (O) for each said constituent index asset (IA) as a proportion of

13        said sum total quantitative data (SUMQ) for said at least one objective

14        measure of scale (O) to yield the objective measure of scale weight

15        (OW) of each of the constituent index assets (IA) comprising the

16        index of assets (I), wherein said at least one objective measure of

17        scale (O) comprises a measure of size (SZ) of each said entity (E)

18        associated with each said given constituent index asset (IA), and

19        wherein said measure of the size (SZ) of each said entity (E)

20        corresponding to each said constituent index asset (IA) comprises at

21        least one of: a demographic measure of a said entity (E) associated

22        with said constituent index asset (IA); a financial metric of a said

23        entity (E) associated with said constituent index asset (IA); a metric

24        from information disclosures of a publicly traded entity; or a metric

25        from information about a said entity (E) associated with said

26        constituent index asset (IA)."

27  ('719 Patent at 11:30-65). As discussed above, the iShares Dow Jones Select

28  Dividend Index Fund and its underlying Dow Jones Select Dividend Index disclose

17

1    such a step. (iShares RS at p. 5 ("The stocks included in the Index are weighted by

2    dividend per share")). The Dow Jones publicly disclosed that "[e]ach company's

3    weight in the Dow Jones Select Dividend Index is based on the amount of its

4    indicated dividend. The indicated annual dividends for all components are totaled,

5    and each component's weight is equal to its dividend contribution." (DJSDI News).

6    Thus, "[e]ach company's weight in the Dow Jones Select Dividend Index is based

7    on the amount of its indicated dividend. The indicated annual dividends for all

8    components are totaled, and each component's weight is equal to its dividend

9    contribution." (DJSDI News).

10         91.    Any differences between the asserted claims of the '719 Patent and the

11   iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select

12   Dividend Index are such that the subject matter as a whole would have been obvious

13   to a person of ordinary skill in the art at the time the invention was made. Because

14   the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones

15   Select Dividend Index discloses each of the limitations of claim 1 and claims 34-

16   36of the '719 Patent, the iShares Dow Jones Select Dividend Index Fund and its

17   underlying Dow Jones Select Dividend Index were therefore but-for material prior

18   art.

19         92.    The iShares Dow Jones Select Dividend Index Fund and its underlying

20   Dow Jones Select Dividend Index also disclose "a computer-implemented method

21   for constructing data indicative of a financial object index" meeting all the elements

22   of claim 1 of the '740 Patent.

23         93.    The method of claim 1of the '740 Patent "**construct[s]**, by at least one

24   computer processor, data indicative of the financial object index comprising

25   selecting . . . data indicative of constituent financial objects of the financial object

26   index based upon at least one accounting data . . . said at least one accounting data

27   regarding at least one entity relating to each of said financial objects, the at least one

28   entity comprising at least one of a region, a country, **a company**, or a sovereign

18

1   associated with said each of said financial objects." ('740 Patent at 78:6-16). The

2   iShares Dow Jones Select Dividend Index Fund "seeks investment results that

3   correspond generally to the price and yield performance, before fees and expenses,

4   of the Dow Jones Select Dividend Index, an index compiled by Dow Jones &

5   Company (the 'Index Provider')." (iShares RS at p. ii). Furthermore, "[t]he Dow

6   Jones Select Dividend Index (DJSDI) measures the performance of high dividend-

7   yielding **U.S. companies**. The Index is comprised of the 50 highest dividend-

8   yielding companies (excluding REITs) included in the Dow Jones U.S. Total Market

9   Index. Those companies have had a positive 5-year dividend growth rate and an

10  average 3-year dividend payout ratio of approximately 60% or less." (iShares RS,

11  Statement of Additional Information, at p. 9 (emphasis added)).

12      94.   In addition to "selecting," the index is constructed in the method of

13  claim 1 of the '740 Patent by "**weighting**, by the at least one computer processor,

14  data indicative of said constituent financial objects based upon at least one

15  accounting data . . . said at least one accounting data regarding the at least one

16  entity, to obtain data indicative of constituent weightings for each of said constituent

17  financial objects." ('740 Patent at 17-23). As discussed above, the iShares Dow

18  Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend

19  Index disclose such a weighting. (iShares RS at p. 5 ("The stocks included in the

20  Index are **weighted** by dividend per share") (emphasis added)). The Dow Jones

21  publicly disclosed that "[e]ach company's weight in the Dow Jones Select Dividend

22  Index is based on the amount of its indicated dividend. The indicated annual

23  dividends for all components are totaled, and **each component's weight is equal to**

24  **its dividend contribution**." (DJSDI News (emphasis added)).

25      95.   The method of claim 1 of the '740 Patent also includes a "storing" step

26  whereby "storing, by the at least one computer processor, said data indicative of said

27  constituent financial objects and said constituent weightings on at least one

28  computer storage device." ('740 Patent at 78:24-27). On information and belief, the

19

1   Dow Jones Select Dividend Index was constructed and/or managed by using at least
2   one computer or processor, including for the purposes of storing said data on a
3   computer storage device.  Applicants repeatedly admitted during prosecution of
4   Application Number 10/159,610 "that computers and processing systems were well
5   known in the art in relation to construction and management of a financial index or
6   investment instruments…" (Response to Office Action in App. No. 10/159,610,
7   submitted 6/9/2008 (pp.13-15), 5/4/2009 (pp. 13-14), and 2/8/2010 (pp. 18-19)).
8   Thus, even if the Dow Jones Select Dividend Index were not found to be
9   constructed with a computer, it would have been obvious to construct the index and
10  store data "by at least one computer" as claimed.

11         96.    Claim 1 of the '740 patent also broadly recites that the "financial
12  objects" . . . include one or more of the following:

13         "a bond; a fixed income debt instrument; a debt instrument; an
14         emerging market debt instrument; a high yield debt instrument; a
15         corporate debt instrument; an investment grade debt instrument; a
16         debenture; a bank loan; a convertible bond; a senior debt; a
17         subordinated debt; a term loan; a government debt instrument; a
18         government bond; a corporate bond; a high yield bond; an emerging
19         market bond; a municipal bond debt instrument; a treasury bond debt
20         instrument; a treasury bill debt instrument; a mortgage based debt
21         instrument; a securitized debt instrument; a security; **a stock**; a
22         commodity; a futures contract; a mutual fund; a hedge fund; a fund of
23         funds; an exchange traded fund (ETF); a derivative; a negative
24         weighting on any asset; an asset account; a separate account; a pooled
25         trust; or a limited partnership.

26  ('740 Patent at 78:32-79:1 (emphasis added)).  It was well known that the iShares
27  Dow Jones Select Dividend Index Fund and the Dow Jones Select Dividend Index
28  were based on and comprised of stocks: "[t]he stocks included in the Index are

FIRST AMENDED ANSWER, AFFIRMATIVE          Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1   weighted by dividend per share." (iShares RS, Statement of Additional Information,

2   at p. 9), and "[t]he [iShares Dow Jones Select Dividend Index] fund is the only

3   exchange traded fund (ETF) investing solely in dividend-yielding stocks." (iShare

4   News).

5          97.     Lastly, the method of claim 1 of the '740 Patent requires that at least

6   one accounting data comprise at least one of "at least one financial metric of the at

7   least one entity associated with each of said constituent financial objects; or at least

8   one metric, level, rate, or expenditure amount from information disclosures of the at

9   least one entity." ('740 Patent at 79:1-6).  In selecting high dividend-yielding

10  companies for the Dow Jones Select Dividend Index, the various dividend data

11  constitute "at least one financial metric of the at least one entity associated with each

12  of said constituent financial objects," and such data are well known to be from

13  "information disclosures" (e.g., SEC filings and press releases) of the companies.

14         98.     Any differences between the asserted claims of the '740 Patent and the

15  iShares Dow Jones Select Dividend Index Fund and the Dow Jones Select Dividend

16  Index are such that the subject matter as a whole would have been obvious to a

17  person of ordinary skill in the art at the time the invention was made.

18         99.     Because the iShares Dow Jones Select Dividend Index Fund and the

19  Dow Jones Select Dividend Index discloses each of the limitations of claim 1 and

20  claims 6, 8, 10, 23-25 and 73 of the '740 Patent, the iShares Dow Jones Select

21  Dividend Index Fund and the Dow Jones Select Dividend Index were therefore but-

22  for material prior art.

23         100.    The Dow Jones Select Dividend Index and the iShares Dow Jones

24  Select Dividend Index Fund are not cumulative of references cited during the

25  prosecution of the applications leading to the Patents-in-Suit.  The prosecution

26  record of the Patents-in-Suit reflects no indication that the index and fund disclosed

27  in the Dow Jones Select Dividend Index and the iShares Dow Jones Select Dividend

28  Index Fund was considered by the patent examiner.  Moreover, the Dow Jones

FIRST AMENDED ANSWER, AFFIRMATIVE                    Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1 Select Dividend Index and the iShares Dow Jones Select Dividend Index Fund are
2 but for material under 35 U.S.C. §§ 102 and 103 for each of the asserted claims of
3 the Patents-in-Suit.

4       101.   On October 4, 2005, an interested third party (WisdomTree
5 Investments, Inc.) submitted a Third Party Submission Under 37 C.F.R. § 1.99 in
6 the prosecution of the application that led to the '719 patent. (Oct. 4, 2005 Third
7 Party Submission).  That submission tried to disclose information about the iShares
8 Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
9 Dividend Index to the USPTO.  However, under USPTO practice, MPEP 1134.01, a
10 third party does not have the right to have the USPTO consider any references
11 submitted by a third party under  37 CFR § 1.99.  That submission of the Dow Jones
12 Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index, as
13 evidenced by the face of the '719 patent, was never considered by the USPTO
14 patent examiner.

15       102.   On information and belief, Robert Arnott and Ralph Albrecht (the
16 attorney responsible for prosecuting the applications that led to the Patents-in-Suit)
17 each received a copy of the October 4, 2005 Third Party Submission along with
18 various prior art references disclosing the Dow Jones Select Dividend Index and the
19 iShares Select Dividend Index Fund.

20       103.   Both Robert Arnott and Ralph Albrecht had a duty to disclose any
21 material information cited in the Third Party Submission to the USPTO patent
22 examiner in the form of an Information Disclosure Statement ("IDS"). (*See* MPEP
23 1134.01 ("Furthermore, an individual who has a duty to disclose under 37 CFR
24 § 1.56 should submit any material information contained in a third-party submission
25 to the Office in an IDS in compliance with 37 CFR §§ 1.97 and 1.98 to ensure such
26 material information is properly disclosed to the examiner, if the examiner has not
27 indicated that the reference has been considered.")).

28

FIRST AMENDED ANSWER, AFFIRMATIVE          Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

104.   Despite Robert Arnott's and Ralph Albrecht's knowledge of the material prior art cited in this Third Party Submission, neither Robert Arnott nor Ralph Albrecht took any action to ensure that the USPTO patent examiner considered the information disclosed in that submission.  Neither individual filed an IDS as required by the MPEP.

105.   Independent of the October 4, 2005 Third Party Submission, Robert Arnott repeatedly acknowledged the importance of the Dow Jones Select Dividend Index and the iShares Dow Jones Select Dividend Index Fund to the investment community at the same time as the  prosecution of the Patents-in-Suit.  In fact, Mr. Arnott had knowledge of this prior art and its materiality before the Third Party Submission.

106.   In the March/April 2005 issue of Financial Analysts Journal, Robert Arnott authored another article entitled "Fundamental Indexation," which again recognized the importance of the Dow Jones Select Dividend Index Fund:  "We are not the first to explore weighting by fundamental factors, although none of these works came to our attention before our research was completed."  (R. Arnott, FINANCIAL ANALYSTS JOURNAL, *Fundamental Indexation* (Mar. / April 2005) at fn. 3).

107.   In December of 2006, Robert Arnott authored an article for the Institutional Investor entitled "An Overwrought Orthodoxy" that states "[in 2003], Barclays Global Investors launched iShares Dow Jones select dividend index, an exchange-traded fund that reweights the S&P 900 on the basis of the total dividends paid by each company. **This ETF was the first dividend-weighted fund and remains the largest fundamentally reweighted strategy in the world**."  (R. Arnott, INSTITUTIONAL INVESTOR, *An Overwrought Orthodoxy* (Dec 2006) at 40 (emphasis added)).

108.   Furthermore, in 2008, Mr. Arnott authored a book entitled "The Fundamental Index, A Better Way to Invest", where he states "[t]his exchange-

23

1   traded fund [the Dow Jones Select Dividend Index] was the first dividend-weighted

2   fund and remains the largest fundamentally reweighted strategy in the world..."

3   (Arnott, THE FUNDAMENTAL INDEX (2008) at Chp. 6 fn. 7).

4        109.   Despite Robert Arnott's repeated acknowledgements of the importance

5   of the prior Dow Jones Select Dividend Index and the iShares Dow Jones Select

6   Dividend Index Fund in articles directed to the investment community, neither he

7   nor his patent attorney, Mr. Albrecht, disclosed that knowledge to the USPTO patent

8   examiner.

9        110.   On the contrary, Mr. Arnott expressly told the patent examiner that he

10   had never heard of index fund products that selected and weighted based on

11   fundamental factors prior to his RAFI® product.  For example, the sworn

12   Declaration of Robert D. Arnott Under 37 C.F.R. § 1.132 ("Declaration") filed on or

13   about May 26, 2009 states "I know of no product, other than those based on the

14   RAFI® concept, in which stocks for a stock market index or index fund were

15   selected and weighted using financial values exclusive of a material influence of

16   share price of the underlying companies that issue the stocks." (Application No.

17   10/961,404, 5-26-2009 Amendment and Response to Final Office Action at

18   Schedule A, ¶ 7).

19        111.   This sworn statement is false because at the time Mr. Arnott had

20   knowledge of at least the Dow Jones Select Dividend Index and the iShares Dow

21   Jones Select Dividend Index Fund.  (*See* Paragraphs 101-109).

22        112.   This sworn statement is also false because at the time Mr. Arnott had

23   knowledge of the 2003 article by Richard Evans and Paul Wood entitled

24   "Fundamentally Profit-based Equity Indexation (2003).  The article referenced the

25   SandsEnd Profit Based 100 US Index that was being commercialized by Counsel

26   Trust.  The Profit Based Index selected and weighted stocks based on profits, a

27   fundamental factor.

28

FIRST AMENDED ANSWER, AFFIRMATIVE            Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS