Peter J. Wied (SBN 198475)
*pwied@goodwinprocter.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Tel.:  213.426.2500
Fax:   213.623.1673

Attorneys for Defendants
**WISDOM TREE INVESTMENTS,
INC.; WISDOM TREE TRUST;
WISDOM TREE ASSET
MANAGEMENT, INC.; WISDOM
TREE RETIREMENT SERVICES,
INC.; MELLON CAPITAL
MANAGEMENT CORP.; and ALPS
DISTRIBUTORS, INC.**

ORIGINAL

FILED 2012 JUL 20 PM 3: 51 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA BY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| Research Affiliates, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Wisdom Tree Investments, Inc., Wisdom Tree Trust, Wisdom Tree Asset Management, Inc., Wisdom Tree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc.,<br><br>Defendants. | Case No. 8:11-CV-01846 DOC (ANx)<br><br>**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge:  Hon. David O. Carter<br>Complaint Filed:  December 1, 2011<br><br>**DEMAND FOR JURY TRIAL** |

## ANSWER

Defendants WisdomTree Investments, Inc., WisdomTree Trust, WisdomTree Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc. (collectively "Defendants") hereby answer and otherwise respond to the numbered paragraphs of the First Amended Complaint for Patent Infringement ("Complaint") filed by Plaintiff Research Affiliates, LLC ("Plaintiff" or "RA"), as follows:

## NATURE OF THE SUIT

1.      In response to Paragraph 1 of the Complaint, Defendants admit that Plaintiff purports to allege a cause of action for patent infringement arising under Title 35 of the United States Code.

2.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, deny each allegation.

3.      In response to Paragraph 3 of the Complaint, WisdomTree Investments, Inc. ("WT Investments") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017.

4.      WisdomTree Trust ("WT Trust") admits the allegations contained in Paragraph 4, except to state that the Chief Executive Officer of WT Investments currently serves as a Trustee and President of WT Trust; and the Chief Financial Officer of WT Investments currently serves as Treasurer of WT Trust.

5.      In response to Paragraph 5 of the Complaint, WisdomTree Asset Management, Inc. ("WT Asset Management") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017.  WT Asset Management admits that it is a wholly-owned subsidiary of WT Investments

1

1  that provides investment advisory services.  Defendants deny the remaining

2  allegations in Paragraph 5.

3    6.    WisdomTree Retirement Services, Inc. ("WT Retirement Services")

4  admits that it is a corporation organized and existing under the laws of the State of

5  Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York,

6  New York 10017 and that WT Retirement Services is a wholly-owned subsidiary of

7  WT Investments.  Defendants deny the remaining allegations in Paragraph 6.

8    7.    Mellon Capital Management Corp. ("MCM") admits that it is a

9  corporation organized and existing under the laws of the State of Delaware, with a

10  place of business at 50 Fremont Street, Suite 3900, San Francisco, California 94105.

11  MCM admits that it has contracts with WT Asset Management to provide certain

12  services.  Defendants deny the remaining allegations of Paragraph 7.

13    8.    ALPS Distributors Inc. ("ALPS") admits that it is a corporation

14  organized and existing under the laws of the State of Colorado, with a place of

15  business at 1290 Broadway, Suite 1100, Denver, Colorado 80203.

16  Defendant WT Investments admits that ALPS is a distributor of WT ETFs.

### JURISDICTION AND VENUE

18    9.    Defendants admit that this Court has jurisdiction over the subject

19  matter of the Complaint.

20    10.    Paragraph 10 states legal conclusions as to which no responsive

21  pleading is required, and to the extent any responsive pleading is required,

22  Defendants deny the allegations in Paragraph 10.

23    11.    Paragraph 11 states legal conclusions as to which no responsive

24  pleading is required, and to the extent any responsive pleading is required,

25  Defendants deny the allegations in Paragraph 11.

### THE PATENTS-IN-SUIT

27    12.    Defendants admit that U.S. Patent No. 7,747,502 ( "the '502 Patent")

28  was issued on June 29, 2010 and is entitled "Using Accounting Data Based Indexing

2

ANSWER, AFFIRMATIVE                     Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1   to Create A Portfolio of Assets."  Defendants are otherwise without knowledge or
2   information sufficient to admit or deny the remaining allegations in Paragraph 12
3   and on that basis deny them.

4        13.   Defendants admit that U.S. Patent No. 7,792,719 ( "the '719 Patent")
5   was issued on September 7, 2010 and is entitled "Valuation Indifferent Non-
6   Capitalization Weighted Index and Portfolio."  Defendants are otherwise without
7   knowledge or information sufficient to admit or deny the remaining allegations in
8   Paragraph 13 and on that basis deny them.

9        14.   Defendants admit that U.S. Patent No. 8,005,740 ( "the '740 Patent")
10  was issued on August 23, 2011 and is entitled "Using Accounting Data Based
11  Indexing to Create a Portfolio of Financial Objects."  Defendants are otherwise
12  without knowledge or information sufficient to admit or deny the remaining
13  allegations in Paragraph 14 and on that basis deny them.

14       15.   Defendants lack sufficient knowledge or information either to admit or
15  deny the truth of the allegations regarding the ownership of the '502 Patent, '719
16  Patent, and '740 Patent (collectively, "Patents-in-Suit") and on that basis deny the
17  allegations in Paragraph 15.

18       16.   Defendants deny the allegations of Paragraph 16.

19       17.   WT Investments was advised of the existence of a published version of
20  the patent application corresponding to the '719 Patent and had knowledge of the
21  existence of the Patents-in-Suit at different points after their issuance.  Defendants
22  deny the remaining allegations in Paragraph 17.

23       18.   WT Investments received a letter from counsel for RA in September
24  2005 identifying a patent application published as U.S. Pub. No. 20050171884 ("the
25  '884 Application").  That application evolved into the '719 Patent five years later
26  with a different title and claims.  Defendants deny the remaining allegations of
27  Paragraph 18.

28

3

---

ANSWER, AFFIRMATIVE                              Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

19.    WT Investments admits that Mr. S. Craig Hemenway responded to the September 2005 letter with an October 7, 2005 letter on behalf of WT Investments. Defendants deny the remaining allegations in Paragraph 19.

20.    WT Investments admits that Mr. Hemenway's October 7, 2005 letter did mention service copies of a Third Party Submission to the United States Patent and Trademark Office ("USPTO") that included prior art references material to the patentability of the '884 Application but apparently not disclosed by the applicant to the USPTO at the time of the letter.  Defendants deny the remaining allegations in Paragraph 20.

21.    WT Investments admits that Mr. Hemenway provided copies of the two Third Party Submissions regarding the application for the '719 Patent in an October 12, 2005 letter to RA.  Defendants deny the remaining allegations of Paragraph 21.

22.    WT Investments admits that Mr. Hemenway also submitted prior art during the prosecution of the application that led to the issuance of the '502 Patent. Defendants deny the remaining allegations of Paragraph 22.

23.    Defendants deny the allegations of Paragraph 23.

24.    Defendants lack sufficient knowledge or information either to admit or deny the truth of the allegations in Paragraph 24 of the Complaint and, therefore, deny those allegations.

25.    Defendants lack sufficient knowledge or information either to admit or deny the truth of the allegations in Paragraph 25 of the Complaint and, therefore, deny those allegations.

26.    WT Investments admits that Robert Arnott met in 2007 in New York with Mr. Michael Steinhardt, who is the current chairman of the Board of Directors of WT Investments.  Defendants are without sufficient knowledge or information either to admit or deny the truth of the remaining allegations in Paragraph 26 and on that basis deny them.

4

27.    WT Investments denies that Bruce Lavine attended or was aware of matters discussed at the purported meeting referenced in Paragraph 27 of the Complaint.  Defendants lack sufficient knowledge or information either to admit or deny the truth of the remaining allegations in Paragraph 27 of the Complaint and, therefore, deny those allegations.

28.    Defendants deny the allegations of Paragraph 28.

29.    Defendants lack sufficient knowledge or information either to admit or deny the truth of the allegations in Paragraph 29 and, therefore, deny those allegations.

## COUNT I – INFRINGEMENT OF THE '502 PATENT

### (Against All Defendants)

30.    Defendants incorporate by reference their responses to Paragraphs 1 through 29 of the Complaint, as if fully set forth herein.

31.    Defendants deny each of the allegations of Paragraph 31.

32.    Defendants deny each of the allegations in Paragraph 32.

33.    Defendants deny each of the allegations in Paragraph 33.

34.    Defendants deny each of the allegations in Paragraph 34.

35.    Defendants admit that WT Trust issues certain ETFs that seek to track the WT Indexes.  Defendants deny the remaining allegations in Paragraph 35.

36.    Defendants deny each of the allegations in Paragraph 36.

37.    Defendants deny each of the allegations in Paragraph 37.

38.    Defendants deny each of the allegations in Paragraph 38.

39.    Defendants deny each of the allegations in Paragraph 39.

40.    Defendants deny each of the allegations in Paragraph 40.

41.    Defendants deny each of the allegations in Paragraph 41.

42.    Defendants deny each of the allegations in Paragraph 42.

43.    Defendants deny each of the allegations in Paragraph 43.

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

## COUNT II – INFRINGEMENT OF THE '719 PATENT

### (Against WT Investments, WT Trust and WT Asset Management)

44.   Defendants incorporate by reference their responses to Paragraphs 1 through 43 of the Complaint, as if fully set forth herein.

45.   Defendants deny each of the allegations in Paragraph 45.

46.   Defendants deny each of the allegations in Paragraph 46.

47.   Defendants deny each of the allegations in Paragraph 47.

48.   Defendants deny each of the allegations in Paragraph 48.

49.   Defendants deny each of the allegations in Paragraph 49.

50.   Defendants deny each of the allegations in Paragraph 50.

51.   Defendants deny each of the allegations in Paragraph 51.

## COUNT III – INFRINGEMENT OF THE '740 PATENT

### (Against WT Investments, WT Trust and WT Asset Management)

52.   Defendants incorporate by reference their responses to Paragraphs 1 through 51 of the Complaint, as if fully set forth herein.

53.   Defendants deny each of the allegations in Paragraph 53.

54.   Defendants deny each of the allegations in Paragraph 54

55.   Defendants deny each of the allegations in Paragraph 55.

56.   Defendants deny each of the allegations in Paragraph 56.

57.   Defendants deny each of the allegations in Paragraph 57.

58.   Defendants deny each of the allegations in Paragraph 58.

59.   Defendants deny each of the allegations in Paragraph 59.

## PRAYER FOR RELIEF

60.   Defendants deny that RA is entitled to any judgment or relief, including but not limited to that requested in Paragraphs A through H, of the Prayer for Relief in the Complaint.

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

## GENERAL DENIAL

61.     Except as specifically admitted, Defendants deny each and every allegation contained in Plaintiff's Claims.

## AFFIRMATIVE AND OTHER DEFENSES

62.     In addition to the defenses described below, each Defendant expressly reserves the right to allege additional defenses as they become known through the course of discovery.

## FIRST AFFIRMATIVE DEFENSE:  NON-INFRINGEMENT

63.     Plaintiff is not entitled to any relief against Defendants because Defendants do not infringe, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and enforceable claim of the Patents-in-Suit.

## SECOND AFFIRMATIVE DEFENSE:  INVALIDITY

64.     The Patents-in-Suit are invalid for failure to meet one or more of the conditions for patentability set forth in Title 35 of the U.S. Code, 35 U.S.C. §§ 100 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

## THIRD AFFIRMATIVE DEFENSE:  UNENFORCEABILITY/ INEQUITABLE CONDUCT

65.     The '502, '719 and '740 Patents (collectively, the "Patents-in-Suit") are unenforceable due to inequitable conduct.  Applicants, including Robert Arnott and prosecution counsel Ralph Albrecht, engaged in inequitable conduct during prosecution of the applications for the Patents-in-Suit in the USPTO.  That inequitable conduct renders the Patents-in-Suit and each of its claims unenforceable.

### The Patents-in-Suit are Unenforceable Due to Inequitable Conduct Based on the Failure to Disclose Material Prior Art to the USPTO

66.     At least named inventor Robert Arnott and Research Affiliates' prosecuting attorney Ralph Albrecht engaged in inequitable conduct during the

7

1   prosecution of the applications for the '502, '719 and '740 Patents (collectively, the
2   "Patents-in-Suit") in the USPTO by intentionally failing to disclose at least:

3         a.  the iShares Dow Jones Select Dividend Index Fund and its underlying
4               Dow Jones Select Dividend Index,

5         b.  the work of David Morris using the FTSE Group ("FTSE") for the
6               GWA Wealth-based Indexes, and

7         c.  Robert C. Jones work on the Goldman Sachs Earnings-Weighted Index,
8   to the USPTO patent examiner during prosecution of the Patents-in-Suit.  That
9   inequitable conduct renders the Patents-in-Suit and each of their claims
10  unenforceable.

11  **Robert Arnott's and Ralph Albrecht's Failure to Disclose the iShares Dow**
12  **Jones Select Dividend Index Fund and its Underlying Dow Jones U.S. Select**
13  **Dividend Index to the USPTO**

14      67.    At least named inventor Robert Arnott and Research Affiliates'
15  prosecuting attorney, Ralph Albrecht, engaged in inequitable conduct during the
16  prosecution of the applications for the '502, '719 and '740 Patents in the USPTO by
17  withholding the iShares Dow Jones Select Dividend Index Fund and its underlying
18  Dow Jones Select Dividend Index from the examiner during prosecution of the
19  Patents-in-Suit.  That inequitable conduct renders the Patents-in-Suit and each of
20  their claims unenforceable.

21      68.    But for Robert Arnott's and Ralph Albrecht's failure to disclose the
22  iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
23  Dividend Index to the USPTO, at least claims 1-4, 15, 18-20, 23, 31, 33-34, 38-41,
24  49 and 52-55 of the '502 Patent; claims 1 and 34-36 of the '719 Patent; and claims
25  1, 6, 8, 10, 23-25 and 73 of the '740 Patent would not have issued or been allowed
26  by the USPTO.

27      69.    At least as early as October 30, 2003, Dow Jones publicly disclosed the
28  Dow Jones Select Dividend Index.  (Oct. 30, 2003 Press Release (hereinafter

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS           Case No. SACV11-01846 DOC (ANx)

1   "DJSDI News")).  The index included 50 stocks derived from the Dow Jones U.S.

2   Total Market Index, a broad market benchmark index that represented

3   approximately 95% of U.S. market capitalization.  (*Id.*).  The Dow Jones Select

4   Dividend Index selected its 50 components based on dividend yield and other

5   dividend-related fundamental factors such as historical dividend growth and

6   dividend payout ratio.  The DJSDI also weighted the 50 components of its index

7   based on dividend per share.  (Id.)

8       70.    In addition to being the subject of publication in October 2003, this

9   index was commercially launched in the United States by at least November 3,

10   2003, and therefore it is prior art to the Patents-in-Suit under at least 35 U.S.C.

11   § 102(a).  (*Id.*; *see also* iShares internet page located at

12   http://us.ishares.com/product_info/fund/overview/DVY.htm (showing an inception

13   date of 11/3/203); *Dow Jones Indexes:  Dow Jones Select Dividend Index Summary*,

14   Dow Jones & Company, Inc. (2003) (hereinafter "DJSDI Summary")).

15       71.    On August 18, 2003, iShares Trust ("iShares") publicly filed a

16   registration statement with the United States Securities and Exchange Commission

17   ("SEC") that states the iShares Dow Jones Select Dividend Index Fund is based on,

18   and corresponds to, the Dow Jones Select Dividend Index.  (Aug. 18, 2003

19   Registration Statement, Amendment No. 25 (hereinafter "iShares RS")).

20       72.    In addition to being the subject of publication in August 2003, the

21   iShares Dow Jones Select Dividend Index Fund was commercially launched by

22   Barclays Global Investors ("BGI") on November 7, 2003, and therefore is prior art

23   to the Patents-in-Suit under at least 35 U.S.C. § 102(a).  (Nov. 7, 2003 Press Release

24   (hereinafter "iShares news")).

25       73.    The iShares Dow Jones Select Dividend Index Fund and its underlying

26   Dow Jones Select Dividend Index are but for material under 35 U.S.C. § 102 and

27   103 for at least claims 1-4, 15, 18-20, 23, 31, 33-34, 38-41, 49 and 52-55 of the '502

28   Patent; claims 1 and 34-36 of the '719 Patent; and claims 1, 6, 8, 10, 23-25 and 73

9

1    of the '740 Patent.  Moreover, the iShares Dow Jones Select Dividend Index Fund

2    and its underlying Dow Jones Select Dividend Index in combination with other prior

3    art renders at least the identified claims of the Patents-in-Suit obvious.  Had the

4    USPTO patent examiner considered the iShares Dow Jones Select Dividend Index

5    Fund and its underlying Dow Jones Select Dividend Index, the Patents-in-Suit

6    would not have issued.

7         74.     For example, Claim 1 of the '502 Patent claims a method of creating an

8    index by selecting constituents of the index based upon at least one accounting data

9    other than price; weighting the constituents of the index based upon at least one

10   accounting data other than price; and managing the index.  ('502 Patent at 21:1-36).

11         75.     The iShares Dow Jones Select Dividend Index Fund and its underlying

12   Dow Jones Select Dividend Index disclose an "index of financial objects"

13   constructed with a computer-implemented method meeting all the elements of claim

14   1 of the '502 Patent.

15         76.     The method of claim 1of the '502 Patent creates, by at least one

16   computer, an index of the financial objects.  ('502 Patent at 21:5-6).  The iShares

17   Dow Jones Select Dividend Index Fund "seeks investment results that correspond

18   generally to the price and yield performance, before fees and expenses, of the Dow

19   Jones Select Dividend Index, an index compiled by Dow Jones & Company (the

20   'Index Provider')."  (iShares RS at p. ii (emphasis added)).  The Dow Jones Select

21   Dividend Index "employs clear, unbiased and systematic methodologies that are

22   fully integrated" within the index.  (DJSDI News (emphasis added)).

23         77.     On information and belief, the Dow Jones Select Dividend Index was

24   created and managed by using at least one computer or processor.  Further, Research

25   Affiliates admitted during prosecution of App. No. 10/159,610 "that computers and

26   processing systems were well known in the art in relation to construction and

27   management of a financial index or investment instruments…" (Response to Office

28   Action in App. No. 10/159,610, submitted 6/9/2008 (pp.13-15), 5/4/2009 (pp. 13-

10

1   14), and 2/8/2010 (pp. 18-19)).  Thus, in the unlikely event the Dow Jones Select

2   Dividend Index was found not to be created with a computer, it would have been

3   obvious to create the index "by at least one computer" as claimed.

4        78.    In the method of claim 1 of the '502 Patent the index is created by

5   "selecting, by at least one computer, financial objects as constituents of the index

6   based upon at least one accounting data regarding entities issuing the financial

7   objects rather than price of the financial objects." ('502 Patent at 21:7-10).  The

8   iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select

9   Dividend Index disclose such a selection:  <u>"To be eligible for inclusion in the [Dow</u>

10  <u>Jones Select Dividend] index</u>, a component must have a positive historical five-year

11  dividend per share growth, an average five-year dividend payout percentage rate less

12  than or equal to 60% and an annual average daily dollar trading volume greater than

13  $1.5 million.  Components that pass this criteria are then ranked by dividend yield,

14  and the top 50 components of the Dow Jones U.S. Total Market Index are **selected**

15  for the Dow Jones Select Dividend Index."  (DJSDI News (emphasis added)).

16       79.    In the method of claim 1 of the '502 Patent the selection criteria of

17  constituent financial objects must include at least one of several accounting data,

18  including "cash flow of the entities issuing the financial objects, sales of the entities

19  issuing the financial objects, book value of the entities issuing the financial objects

20  or any dividends of the entities issuing the financial objects." ('502 Patent at 21:11-

21  16).  The iShares Dow Jones Select Dividend Index Fund and its underlying Dow

22  Jones Select Dividend Index disclose such a selection criteria: "To be eligible for

23  inclusion in the [Dow Jones Select Dividend] index, a component must have a

24  positive historical five-year dividend per share growth, an average five-year

25  dividend payout percentage rate less than or equal to 60% and an annual average

26  daily dollar trading volume greater than $1.5 million.  Components that pass this

27  criteria are then ranked by dividend yield, and the top 50 components of the Dow

28

ANSWER, AFFIRMATIVE             Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1    Jones U.S. Total Market Index are selected for the Dow Jones Select Dividend
2    Index." (DJSDI News).

3        80.    In addition to "selecting," the index is created in the method of claim 1
4    of the '502 Patent by "weighting, by the at least one computer, the constituents of
5    the index based upon at least one accounting data regarding the entities issuing the
6    financial objects rather than price of the financial objects, to obtain constituent
7    weightings of the constituents of the index." ('502 Patent at 21:17-22). The iShares
8    Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
9    Dividend Index disclose such a weighting. (iShares RS at p. 5 ("The stocks
10   included in the Index are weighted by dividend per share")). The Dow Jones
11   publicly disclosed that "Each company's weight in the Dow Jones Select Dividend
12   Index is based on the amount of its indicated dividend. The indicated annual
13   dividends for all components are totaled, and each component's weight is equal to
14   its dividend contribution." (DJSDI News).

15       81.    Like the selecting criteria, in the method of claim 1 of the '502 Patent,
16   the weighting criteria of constituent financial objects must include at least one of
17   several accounting data, including "cash flow of the entities issuing the financial
18   objects, sales of the entities issuing the financial objects, book value of the entities
19   issuing the financial objects or any dividends of the entities issuing the financial
20   objects." ('502 Patent at 21:22-26). The iShares Dow Jones Select Dividend Index
21   Fund and its underlying Dow Jones Select Dividend Index disclose such weighting
22   criteria. "The Dow Jones Select Dividend Index invests in 50 of the highest
23   dividend-yielding companies in the Dow Jones U.S. Total Market Index (excluding
24   REITS) that have a proven track record for consistent dividend payout, based on the
25   following criteria:  they must have a positive historical five-year dividend-per-share
26   growth rate, a five-year average dividend payout percentage rate less than or equal
27   to 60%, and annual average daily dollar trading volume greater than $1.5 million.

28

ANSWER, AFFIRMATIVE                          Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1   The index is rebalanced once a year and a company's weight is based on its
2   indicated annual dividend." (iShares News).

3        82.    The method of claim 1 of the '502 Patent also includes a managing step
4   providing for "managing, by the at least one computer, the index, and managing at
5   least one portfolio of financial objects based on the index." ('502 Patent at 21:28-
6   30). It was well known that Barclays managed the iShares Dow Jones Select
7   Dividend Index Fund: "As investment advisor, [Barclays Global Fund Advisor
8   ("BGFA")] has overall responsibility for the general management and
9   administration of the Trust. BGFA provides an investment program for the [iShares
10  Dow Jones Select Dividend Index] Fund and manages the investment of its assets.
11  BGFA uses teams of portfolio managers, investment strategists and other investment
12  specialists." (iShares RS at p. 7). Likewise, the index itself was managed: "The
13  Dow Jones Select Dividend Index will be reviewed on an annual basis in
14  December." (DJSDI News).

15       83.    The managing step of claim 1 of the '502 Patent also includes
16  "altering, by the at least one computer, the relative weightings of the financial
17  objects within said at least one portfolio of financial objects based on the index as
18  the at least one accounting data concerning the entities of the financial objects
19  changes or the constituents of the index change over time" ('502 Patent at 21:31-
20  36), which is also disclosed by the withheld prior art. For example, "[t]he Index is
21  reconstituted annually. The Fund uses a Replication strategy to try to track the
22  Index." (iShares RS at p. 5). "The [Dow Jones Select Dividend] index includes 50
23  stocks, weighted by their indicated annual dividends. Components must fall below
24  100 in the rankings to be removed from the index during the annual review.
25  Changes are made in between reviews due to corporate actions or when a company
26  announces that it will eliminate its dividend." (DJSDI Summary, at p. 1). On
27  information and belief, the iShares Dow Jones Select Dividend Index Fund was
28  rebalanced or re-weighted by using at least one computer or processor.

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS
                        Case No. SACV11-01846 DOC (ANx)

84.     Any differences between the asserted claims of the '502 Patent and the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made.  Because the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index discloses each of the limitations of claim 1 and claims 2-4, 15, 18-20, 23, 31, 33-34, 38-41, 49 and 52-55 of the '502 Patent, the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index were therefore but-for material prior art.

85.     The iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index also disclose "a method of constructing an index of assets" meeting all the elements of claim 1 of the '719 Patent.

86.     The method of claim 1 of the '719 Patent constructs an index by first "**accessing** by the at least one analysis host processor of one or more databases storing and permitting retrieval of data (D) about a plurality of entities (E) and a plurality of corresponding assets (A) each issued by or having been issued by at least one of the plurality of entities (E)." ('719 Patent at 10:47-51).  Second, the method of claim 1 of the '719 Patent constructs an index by "**receiving** by the at least one analysis host processor at least one objective measure of scale (O) regarding one or more of the plurality of said assets, or one or more of the plurality of said entities (E) associated with said corresponding assets (A)." ('719 Patent at 10:53-56).  Third, the method of claim 1 of the '719 Patent constructs the index by "**retrieving** by the at least one analysis host processor one or more of said data (D) about said plurality of said entities (E) and said corresponding assets (A)." ('719 Patent at 10:57-59).  On information and belief, the Dow Jones Select Dividend Index was created and/or managed by accessing a database and receiving/retrieving data.  Also, as Applicant has admitted that the use of computers for construction and management of indices or funds was well known in the art (Response to Office

14

1  Action in App. No. 10/159,610, submitted 6/9/2008 (pp.13-15), 5/4/2009 (pp. 13-
2  14), and 2/8/2010 (pp. 18-19)), it necessarily follows that the "accessing,"
3  "receiving," "retrieving," and "storing" of related data/information steps recited in
4  claim 1 are also firmly in the prior art because these are all required computing
5  operations.
6      87.   Construction of the index claimed in method claim 1 of the '719 Patent
7  also includes a "selecting" step: "selecting by the at least one analysis host
8  processor a selection from said plurality of said assets (A) and said entities (E) to
9  comprise a plurality of constituent index assets (IA) comprising the index of assets
10 (I)." ('719 Patent at 10:60-64).  As discussed above for the '502 Patent, the iShares
11 Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
12 Dividend Index disclose such a selection:  "To be eligible for inclusion in the [Dow
13 Jones Select Dividend] index, a component must have a positive historical five-year
14 dividend per share growth, an average five-year dividend payout percentage rate less
15 than or equal to 60% and an annual average daily dollar trading volume greater than
16 $1.5 million.  Components that pass this criteria are then ranked by dividend yield,
17 and the top 50 components of the Dow Jones U.S. Total Market Index are selected
18 for the Dow Jones Select Dividend Index."  (DJSDI News).
19     88.   The "selecting" step of method claim 1of the '719 Patent further
20 comprises:
21     "selecting by the at least one analysis host processor said one or more
22     data (D) to be a quantitative data (Q) reflecting the amount of said at
23     least one objective measure of scale (O) associated with each of said
24     entities, . . . wherein said at least one objective measure of scale (O)
25     comprises a measure of size (SZ) of each said entity (E) associated
26     with each said given asset (A), and wherein said measure of the size
27     (SZ) of each said entity (E) corresponding to each said asset (A)
28     comprises at least one of:  a demographic measure of a said entity (E)

15

ANSWER, AFFIRMATIVE                    Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1    associated with said asset (A); a financial metric of a said entity (E)

2    associated with said asset (A); a metric from information disclosures

3    of a publicly traded entity; or a metric from information about a said

4    entity (E) associated with said asset (A)."

5    ('719 Patent at 10:65-11:20).  As discussed above, the iShares Dow Jones Select

6    Dividend Index Fund and its underlying Dow Jones Select Dividend Index disclose

7    such a selection: "To be eligible for inclusion in the [Dow Jones Select Dividend]

8    index, a component must have a positive historical five-year dividend per share

9    growth, an average five-year dividend payout percentage rate less than or equal to

10   60% and an annual average daily dollar trading volume greater than $1.5 million.

11   Components that pass this criteria are then ranked by dividend yield, and the top 50

12   components of the Dow Jones U.S. Total Market Index are selected for the Dow

13   Jones Select Dividend Index." (DJSDI News).  Thus, in selecting high dividend-

14   yielding companies for the Dow Jones Select Dividend Index, the various dividend

15   data constitute "a financial metric of a said entity (E) associated with said asset (A)"

16   and therefore "a measure of size (SZ)," as claimed.

17       89.    Furthermore, the "selecting" step of method claim 1 comprises

18   "ranking by the at least one analysis host processor said entities (E) based upon at

19   least one of a said quantitative data (Q) associated with the at least one objective

20   measure of scale (O) of each of said entities (E) and selecting by the at least one

21   analysis host processor said selection from said plurality of said assets (A) or said

22   entities (E) to comprise said plurality of constituent index assets (IA) based on said

23   ranking." ('719 Patent at 11:21-29).  As discussed above, the iShares Dow Jones

24   Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index

25   disclose such a ranking: "Components that pass this criteria are then ranked by

26   dividend yield, and the top 50 components of the Dow Jones U.S. Total Market

27   Index are selected for the Dow Jones Select Dividend Index." (DJSDI News).

28

16

90.     Finally, construction of the index claimed in the method claim 1 of the '719 Patent includes a "calculating" step:

> **"calculating** by the at least one analysis host processor proportional **weights** for the index of assets to be objective measure of scale weights (OW) . . . wherein said calculating comprises:  (i) adding by the at least one analysis host processor the quantitative data (Q) of each of said at least one objective measure of scale (O) for all of said constituent index assets (IA) to yield a sum total quantitative data (SUMQ) for said at least one objective measure of scale (O); and (ii) determining by the at least one analysis host processor a relative size of the quantitative data (Q) of a said at least one objective measure of scale (O) for each said constituent index asset (IA) as a proportion of said sum total quantitative data (SUMQ) for said at least one objective measure of scale (O) to yield the objective measure of scale weight (OW) of each of the constituent index assets (IA) comprising the index of assets (I), wherein said at least one objective measure of scale (O) comprises a measure of size (SZ) of each said entity (E) associated with each said given constituent index asset (IA), and wherein said measure of the size (SZ) of each said entity (E) corresponding to each said constituent index asset (IA) comprises at least one of: a demographic measure of a said entity (E) associated with said constituent index asset (IA); a financial metric of a said entity (E) associated with said constituent index asset (IA); a metric from information disclosures of a publicly traded entity; or a metric from information about a said entity (E) associated with said constituent index asset (IA)."

('719 Patent at 11:30-65).  As discussed above, the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index disclose

17

1  such a step.  (iShares RS at p. 5 ("The stocks included in the Index are weighted by

2  dividend per share")).  The Dow Jones publicly disclosed that "[e]ach company's

3  weight in the Dow Jones Select Dividend Index is based on the amount of its

4  indicated dividend.  The indicated annual dividends for all components are totaled,

5  and each component's weight is equal to its dividend contribution." (DJSDI News).

6  Thus, "[e]ach company's weight in the Dow Jones Select Dividend Index is based

7  on the amount of its indicated dividend.  The indicated annual dividends for all

8  components are totaled, and each component's weight is equal to its dividend

9  contribution."  (DJSDI News).

10      91.    Any differences between the asserted claims of the '719 Patent and the

11  iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select

12  Dividend Index are such that the subject matter as a whole would have been obvious

13  to a person of ordinary skill in the art at the time the invention was made. Because

14  the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones

15  Select Dividend Index discloses each of the limitations of claim 1 and claims 34-

16  36of the '719 Patent, the iShares Dow Jones Select Dividend Index Fund and its

17  underlying Dow Jones Select Dividend Index were therefore but-for material prior

18  art.

19      92.    The iShares Dow Jones Select Dividend Index Fund and its underlying

20  Dow Jones Select Dividend Index also disclose "a computer-implemented method

21  for constructing data indicative of a financial object index" meeting all the elements

22  of claim 1 of the '740 Patent.

23      93.    The method of claim 1of the '740 Patent "**construct[s]**, by at least one

24  computer processor, data indicative of the financial object index comprising

25  selecting . . . data indicative of constituent financial objects of the financial object

26  index based upon at least one accounting data . . . said at least one accounting data

27  regarding at least one entity relating to each of said financial objects, the at least one

28  entity comprising at least one of a region, a country, **a company**, or a sovereign

18

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS                Case No. SACV11-01846 DOC (ANx)

1  associated with said each of said financial objects." ('740 Patent at 78:6-16).  The

2  iShares Dow Jones Select Dividend Index Fund "seeks investment results that

3  correspond generally to the price and yield performance, before fees and expenses,

4  of the Dow Jones Select Dividend Index, an index compiled by Dow Jones &

5  Company (the 'Index Provider')."  (iShares RS at p. ii).  Furthermore, "[t]he Dow

6  Jones Select Dividend Index (DJSDI) measures the performance of high dividend-

7  yielding **U.S. companies**.  The Index is comprised of the 50 highest dividend-

8  yielding companies (excluding REITs) included in the Dow Jones U.S. Total Market

9  Index.  Those companies have had a positive 5-year dividend growth rate and an

10 average 3-year dividend payout ratio of approximately 60% or less."  (iShares RS,

11 Statement of Additional Information, at p. 9 (emphasis added)).

12       94.    In addition to "selecting," the index is constructed in the method of

13 claim 1 of the '740 Patent by "**weighting**, by the at least one computer processor,

14 data indicative of said constituent financial objects based upon at least one

15 accounting data . . . said at least one accounting data regarding the at least one

16 entity, to obtain data indicative of constituent weightings for each of said constituent

17 financial objects." ('740 Patent at 17-23).  As discussed above, the iShares Dow

18 Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend

19 Index disclose such a weighting.  (iShares RS at p. 5 ("The stocks included in the

20 Index are **weighted** by dividend per share") (emphasis added)).  The Dow Jones

21 publicly disclosed that "[e]ach company's weight in the Dow Jones Select Dividend

22 Index is based on the amount of its indicated dividend.  The indicated annual

23 dividends for all components are totaled, and **each component's weight is equal to**

24 **its dividend contribution**."  (DJSDI News (emphasis added)).

25       95.    The method of claim 1 of the '740 Patent also includes a "storing" step

26 whereby "storing, by the at least one computer processor, said data indicative of said

27 constituent financial objects and said constituent weightings on at least one

28 computer storage device." ('740 Patent at 78:24-27).  On information and belief, the

19

1   Dow Jones Select Dividend Index was constructed and/or managed by using at least
2   one computer or processor, including for the purposes of storing said data on a
3   computer storage device.  Applicants repeatedly admitted during prosecution of
4   Application Number 10/159,610 "that computers and processing systems were well
5   known in the art in relation to construction and management of a financial index or
6   investment instruments…" (Response to Office Action in App. No. 10/159,610,
7   submitted 6/9/2008 (pp.13-15), 5/4/2009 (pp. 13-14), and 2/8/2010 (pp. 18-19)).
8   Thus, even if the Dow Jones Select Dividend Index were not found to be
9   constructed with a computer, it would have been obvious to construct the index and
10  store data "by at least one computer" as claimed.
11          96.    Claim 1 of the '740 patent also broadly recites that the "financial
12  objects" . . . include one or more of the following:

13          "a bond; a fixed income debt instrument; a debt instrument; an
14          emerging market debt instrument; a high yield debt instrument; a
15          corporate debt instrument; an investment grade debt instrument; a
16          debenture; a bank loan; a convertible bond; a senior debt; a
17          subordinated debt; a term loan; a government debt instrument; a
18          government bond; a corporate bond; a high yield bond; an emerging
19          market bond; a municipal bond debt instrument; a treasury bond debt
20          instrument; a treasury bill debt instrument; a mortgage based debt
21          instrument; a securitized debt instrument; a security; **a stock**; a
22          commodity; a futures contract; a mutual fund; a hedge fund; a fund of
23          funds; an exchange traded fund (ETF); a derivative; a negative
24          weighting on any asset; an asset account; a separate account; a pooled
25          trust; or a limited partnership.

26  ('740 Patent at 78:32-79:1 (emphasis added)).  It was well known that the iShares
27  Dow Jones Select Dividend Index Fund and the Dow Jones Select Dividend Index
28  were based on and comprised of stocks:  "[t]he stocks included in the Index are

20

ANSWER, AFFIRMATIVE                              Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1 | weighted by dividend per share." (iShares RS, Statement of Additional Information,
2 | at p. 9), and "[t]he [iShares Dow Jones Select Dividend Index] fund is the only
3 | exchange traded fund (ETF) investing solely in dividend-yielding stocks." (iShare
4 | News).

5 |     97.   Lastly, the method of claim 1 of the '740 Patent requires that at least
6 | one accounting data comprise at least one of "at least one financial metric of the at
7 | least one entity associated with each of said constituent financial objects; or at least
8 | one metric, level, rate, or expenditure amount from information disclosures of the at
9 | least one entity." ('740 Patent at 79:1-6).  In selecting high dividend-yielding
10 | companies for the Dow Jones Select Dividend Index, the various dividend data
11 | constitute "at least one financial metric of the at least one entity associated with each
12 | of said constituent financial objects," and such data are well known to be from
13 | "information disclosures" (e.g., SEC filings and press releases) of the companies.

14 |     98.   Any differences between the asserted claims of the '740 Patent and the
15 | iShares Dow Jones Select Dividend Index Fund and the Dow Jones Select Dividend
16 | Index are such that the subject matter as a whole would have been obvious to a
17 | person of ordinary skill in the art at the time the invention was made.

18 |     99.   Because the iShares Dow Jones Select Dividend Index Fund and the
19 | Dow Jones Select Dividend Index discloses each of the limitations of claim 1 and
20 | claims 6, 8, 10, 23-25 and 73 of the '740 Patent, the iShares Dow Jones Select
21 | Dividend Index Fund and the Dow Jones Select Dividend Index were therefore but-
22 | for material prior art.

23 |     100.  The Dow Jones Select Dividend Index and the iShares Dow Jones
24 | Select Dividend Index Fund are not cumulative of references cited during the
25 | prosecution of the applications leading to the Patents-in-Suit.  The prosecution
26 | record of the Patents-in-Suit reflects no indication that the index and fund disclosed
27 | in the Dow Jones Select Dividend Index and the iShares Dow Jones Select Dividend
28 | Index Fund was considered by the patent examiner.  Moreover, the Dow Jones

21

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS
    Case No. SACV11-01846 DOC (ANx)

Select Dividend Index and the iShares Dow Jones Select Dividend Index Fund are but for material under 35 U.S.C. §§ 102 and 103 for each of the asserted claims of the Patents-in-Suit.

101. On October 4, 2005, an interested third party (WisdomTree Investments, Inc.) submitted a Third Party Submission Under 37 C.F.R. § 1.99 in the prosecution of the application that led to the '719 patent. (Oct. 4, 2005 Third Party Submission). That submission tried to disclose information about the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index to the USPTO. However, under USPTO practice, MPEP 1134.01, a third party does not have the right to have the USPTO consider any references submitted by a third party under 37 CFR § 1.99. That submission of the Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index, as evidenced by the face of the '719 patent, was never considered by the USPTO patent examiner.

102. On information and belief, Robert Arnott and Ralph Albrecht (the attorney responsible for prosecuting the applications that led to the Patents-in-Suit) each received a copy of the October 4, 2005 Third Party Submission along with various prior art references disclosing the Dow Jones Select Dividend Index and the iShares Select Dividend Index Fund.

103. Both Robert Arnott and Ralph Albrecht had a duty to disclose any material information cited in the Third Party Submission to the USPTO patent examiner in the form of an Information Disclosure Statement ("IDS"). (*See* MPEP 1134.01 ("Furthermore, an individual who has a duty to disclose under 37 CFR § 1.56 should submit any material information contained in a third-party submission to the Office in an IDS in compliance with 37 CFR §§ 1.97 and 1.98 to ensure such material information is properly disclosed to the examiner, if the examiner has not indicated that the reference has been considered.")).

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

_

104.   Despite Robert Arnott's and Ralph Albrecht's knowledge of the material prior art cited in this Third Party Submission, neither Robert Arnott nor Ralph Albrecht took any action to ensure that the USPTO patent examiner considered the information disclosed in that submission.  Neither individual filed an IDS as required by the MPEP.

105.   Independent of the October 4, 2005 Third Party Submission, Robert Arnott repeatedly acknowledged the importance of the Dow Jones Select Dividend Index and the iShares Dow Jones Select Dividend Index Fund to the investment community at the same time as the  prosecution of the Patents-in-Suit.  In fact, Mr. Arnott had knowledge of this prior art and its materiality before the Third Party Submission.

106.   In the March/April 2005 issue of Financial Analysts Journal, Robert Arnott authored another article entitled "Fundamental Indexation," which again recognized the importance of the Dow Jones Select Dividend Index Fund:  "We are not the first to explore weighting by fundamental factors, although none of these works came to our attention before our research was completed."  (R. Arnott, FINANCIAL ANALYSTS JOURNAL, *Fundamental Indexation* (Mar. / April 2005) at fn. 3).

107.   In December of 2006, Robert Arnott authored an article for the Institutional Investor entitled "An Overwrought Orthodoxy" that states "[in 2003], Barclays Global Investors launched iShares Dow Jones select dividend index, an exchange-traded fund that reweights the S&P 900 on the basis of the total dividends paid by each company.  **This ETF was the first dividend-weighted fund and remains the largest fundamentally reweighted strategy in the world**."  (R. Arnott, INSTITUTIONAL INVESTOR, *An Overwrought Orthodoxy* (Dec 2006) at 40 (emphasis added)).

108.   Furthermore, in 2008, Mr. Arnott authored a book entitled "The Fundamental Index, A Better Way to Invest", where he states "[t]his exchange-

23

1  traded fund [the Dow Jones Select Dividend Index] was the first dividend-weighted

2  fund and remains the largest fundamentally reweighted strategy in the world…"

3  (Arnott, THE FUNDAMENTAL INDEX (2008) at Chp. 6 fn. 7).

4      109.   Despite Robert Arnott's repeated acknowledgements of the importance

5  of the prior Dow Jones Select Dividend Index and the iShares Dow Jones Select

6  Dividend Index Fund in articles directed to the investment community, neither he

7  nor his patent attorney, Mr. Albrecht, disclosed that knowledge to the USPTO patent

8  examiner.

9      110.   On the contrary, Mr. Arnott expressly told the patent examiner that he

10  had never heard of index fund products that selected and weighted based on

11  fundamental factors prior to his RAFI® product.  For example, the sworn

12  Declaration of Robert D. Arnott Under 37 C.F.R. § 1.132 ("Declaration") filed on or

13  about May 26, 2009 states "I know of no product, other than those based on the

14  RAFI® concept, in which stocks for a stock market index or index fund were

15  selected and weighted using financial values exclusive of a material influence of

16  share price of the underlying companies that issue the stocks." (Application No.

17  10/961,404, 5-26-2009 Amendment and Response to Final Office Action at

18  Schedule A, ¶ 7).

19      111.   This sworn statement is false because at the time Mr. Arnott had

20  knowledge of at least the Dow Jones Select Dividend Index and the iShares Dow

21  Jones Select Dividend Index Fund.  (*See* Paragraphs 101-109).

22      112.   This sworn statement is also false because at the time Mr. Arnott had

23  knowledge of the 2003 article by Richard Evans and Paul Wood entitled

24  "Fundamentally Profit-based Equity Indexation (2003).  The article referenced the

25  SandsEnd Profit Based 100 US Index that was being commercialized by Counsel

26  Trust.  The Profit Based Index selected and weighted stocks based on profits, a

27  fundamental factor.

28

ANSWER, AFFIRMATIVE                          Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS