216.   Following the assignment of the '610 Application, Ralph Albrecht was substantively involved in the prosecution of the '610 Application on behalf of Research Affiliates.  Ralph Albrecht had a duty of candor and good faith to the USPTO with respect to representations made during the prosecution of the '610 Application.

217.   On or about January 15, 2005, the USPTO gave Ralph Albrecht access to inspect the '610 Application papers.

218.   The '610 Application had become abandoned during prosecution because of the failure to respond to a Notice to File-Corrected Application Papers that were mailed by the USPTO on or about July 10, 2002.  The USPTO mailed a Notice of Abandonment of the '610 Application on or about January 16, 2004

219.   Research Affiliates purchased Paul Wood's '610 Application in January 2005 with the knowledge that it was abandoned.  Messrs. Arnott and Albrecht knew the '610 Application was abandoned at that time.

220.   Robert Arnott and Ralph Albrecht allowed the '610 Application to remain abandoned for nearly four months after it was purchased.

221.   On or about May 15, 2005, Ralph Albrecht filed a Petition For Revival of an Application for Patent Abandoned Unintentionally Under 35 CFR 1.137(b) ("Petition for Revival") on behalf of Research Affiliates.  In the Petition for Revival, Ralph Albrecht represented that the entire delay, including the period from January 16, 2004 until May 15, 2005, was unintentional.  On information and belief, this statement was false at least with respect to the period from January 15, 2005 until May 15, 2005.

222.   On or about August 4, 2005, Ralph Albrecht filed U.S. Pat. Application No. 11/196,509 (the "'509 Application").  The '509 Application named Robert Arnott and Paul Wood as joint inventors of the subject matter disclosed and claimed therein.

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS                     Case No. SACV11-01846 DOC (ANx)

223.   Prior to the filing of the '509 Application, Robert Arnott and a colleague of Paul Wood both candidly recognized that Robert Arnott and Paul Wood did not collaborate with respect to indexing methodology.

224.   On November 7, 2004, a colleague of Paul Wood's sent an email to a New York Times reporter requesting correction of an article that appeared to credit Robert Arnott with creating the fundamental index concept:

> "Neither Mr. Arnott nor his firm are the creators of using fundamentals to create indexes.  The creator of fundamentally based indexing is Paul Wood, who holds a U.S. patent pending on this methodology in various forms, including its application to a variety of asset classes and a range of fundamental criteria."

(Nov. 7, 2004, email from Richard Evans to Mark Hulbert)

225.   In response, Mr. Arnott questioned the viability of Paul Wood's patent application:

> "Also, as I've already noted to Paul, he has a *legal* obligation to note prior art . . . in his patent applications.  This prior art, coupled with the fact that his 'patent' is so broad as to encompass investment strategies based on P/E or ROE, will almost certainly mean that no patent will be granted."

(Exh. A, Nov. 8, 2004, email from Robert Arnott to Paul Wood and Richard Evans, copying reporter Mark Hulbert.)

226.   Notwithstanding those events, on or about September 30, 2005, Robert Arnott and Paul Wood signed a declaration swearing that they were the original and first inventors of the subject matter claimed in the '509 Application.  The declaration further represented to the USPTO that all statements contained therein were true.

227.   On information and belief, Robert Arnott and Ralph Albrecht understood that the sworn declaration submitted to the USPTO was a representation

51

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

1  that the '509 Application disclosed and claimed subject matter that was jointly
2  invented by Robert Arnott and Paul Wood.

3      228.   Ralph Albrecht was substantively involved in the prosecution of the
4  '509 Application.

5      229.   Robert Arnott and Ralph Albrecht each owed a duty of candor and
6  good faith to the USPTO in connection with the prosecution of the '509 Application.

7      230.   No subject matter disclosed and claimed in the '509 Application was
8  jointly invented by Robert Arnott and Paul Wood.

9      231.   The '509 Application was a combination of the '610 Application,
10  which was solely developed by Paul Wood, and the '404 Application, solely
11  developed by Robert Arnott.  On information and belief, Robert Arnott and Ralph
12  Albrecht knew that no inventive subject matter was disclosed in the '509
13  Application that was not previously disclosed in either the '610 Application as being
14  invented solely by Paul Wood or the '404 Application as being invented solely by
15  Robert Arnott.

16      232.   The false claim of joint inventorship is egregious because the
17  specification of the '509 Application is merely the combination of the '610
18  Application and the '404 Application.  Thus, the '509 Application discloses
19  inventions that Robert Arnott and Ralph Albrecht had represented to the USPTO
20  were made at different times by different individual inventors without any
21  collaboration between Messrs. Wood and Arnott.  Under these circumstances, there
22  can be no joint invention.

23      233.   On information and belief, prior to the filing of the '509 Application
24  there were no communications, discussions or collaboration supporting joint
25  conception between Wood and Arnott regarding the subject matter disclosed in that
26  application.

27
28

ANSWER, AFFIRMATIVE                          Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

234.   The '509 Application issued as U.S. Pat. No. 7,620,577 (the "'577 Patent."). The front page of the '577 Patent listed Robert Arnott and Paul Wood as joint inventors.

235.   The representation to the USPTO by Robert Arnott and Ralph Albrecht that the '509 Application was jointly invented was a materially false representation. The combining of the 2002 patent application by Paul Wood with a 2004 patent application by Robert Arnott and submitting it as a new jointly-invented application is egregious misconduct.

236.   The '577 Patent claims priority to the '610 Application.

237.   The '577 Patent application could not have asserted priority to the '610 Application of Wood if it had been filed with Robert Arnott as the sole inventor. Filing the '577 Patent with Robert Arnott and Paul Wood listed as joint inventors enabled the priority assertion to be made.

238.   Upon information and belief, Robert Arnott and Ralph Albrecht were concerned that the '610 Application to Paul Wood filed in 2002 would be disqualifying prior art against Robert Arnott's patent applications, which were not filed until 2004 and later.

239.   On information and belief, the false claim of joint inventorship and the priority claim were made to divert the patent examiner  attention from the fact that the '610 Application was prior art to all claims in these application.

240.   On information and belief, Robert Arnott and Ralph Albrecht knew that the '610 Application was prior art to the '509 Application.  By claiming joint inventorship, filing a continuation-in-part application, and relying on the '610 Application for priority they were able to avoid having the '610 Application applied as a prior art reference by the USPTO.

241.   On information and belief, Robert Arnott and Ralph Albrecht were also concerned that Mr. Arnott's '404 Application filed in 2004 failed to disclose

53

1  selecting by fundamental factors, rather, it only disclosed weighting by fundamental

2  factors.

3      242.   On information and belief, Messrs. Arnott and Albrecht understood that

4  by claiming joint inventorship, filing a continuation-in-part application, and relying

5  on the Wood '610 Application for priority, Mr. Arnott could pursue patent

6  applications claiming indexes where the constituent stocks were selected based on

7  fundamental factors.

8      243.   The element of selecting based on fundamental factors was critical

9  because that element had to be added to each of the asserted claims in the patents-in-

10  suit before the examiner would allow those claims.

11      244.   Upon information and belief, Robert Arnott has publicly characterized

12  his realization that selecting as well as weighting must be based on fundamental

13  factors as a critical "second 'aha'" moment in his conception of his alleged

14  invention.  (R. Arnott, INSTITUTIONAL INVESTOR, *An Overwrought Orthodoxy* (Dec

15  2006) at 40

16      245.   While the '610 Application was disclosed to the examiner, it was not

17  substantively considered or applied as prior art against the '509 Application which

18  eventually led to the '577 patent.   For the same reasons, the '610 Application was

19  not substantively considered or applied as prior art against the applications that led

20  to the '502 patent and the '740 patent.

21      246.   The '610 Application is prior art under 35 U.S.C. § 102(e) against the

22  applications leading to the '577, '502, and '740 patents because it was filed before

23  those applications and was later published.   The '610 Application is material to the

24  applications leading to the '577, '502, and '740 patents because it discloses a

25  "fundamental index" made up of constituent assets that are selected based on

26  fundamental factors and that are weighted based on fundamental factors.  For

27  example, in his 2002 filing, Paul Wood described his invention as follows:

28

ANSWER, AFFIRMATIVE                              Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1   "A method for the construction of a new type of stock market index,

2   and stock market index fund, or funds where the index is constructed

3   based upon the fundamental realities of the companies contained

4   within the index **rather than on the price, or market capitalization**

5   **of the companies contained with the index**. This fundamental data

6   may include items such as the **relative size** of a collection of

7   company's profits or assets or **any fundamental accounting data**

8   **contained within a standard U.S. GAAP company annual report**

9   **and accounts."**

10  (Abstract, U.S. Pub. 2006/0149645 (emphasis added)).

11      247.   Each of the '577, '502, and '740 patents claims indexes built using

12  fundamental factors such as size and various accounting data rather than price or -

13  market capitalization.  Because the '610 Application discloses what the

14  aforementioned patents claim, it is highly material.  It is clearly more material than

15  the primary reference applied by the examiner, U.S. Pub. 2002/0184126, which

16  taught an index built using market capitalization and price.

17      248.   Upon information and belief, the '577, '502, and '740 patents would

18  not have issued had  Robert Arnott and Robert Albrecht not falsely claimed joint

19  inventorship to enable the priority claim to the '610 Application.

20      249.   Additionally, but-for the false assertion of joint inventorship to the '610

21  Application that was acknowledged by the patent examiner, each of the '577, '502,

22  and '740 Patents would have been entitled to assert a priority date no earlier than

23  August 4, 2005, the filing date of the '509 Application.  This is because the '509

24  Application is the first application bearing Robert Arnott's name as inventor that

25  discloses selecting assets by fundamental factors.

26      250.   Upon information and belief, Robert Arnott distributed a draft of his

27  "Redefining Indexation" article to colleagues in June 2004.  Neither Mr. Arnott nor

28  Mr. Albrecht ever disclosed the June 2004 article to the patent examiner.

55

251.   The June 2004 draft article by Robert Arnott would have been disqualifying § 102(b) prior art against the '577, '502, and '740 patents but-for the fact that Messrs. Arnott and Albrecht never disclosed it to the patent examiner coupled with their false assertion of joint inventorship discussed above.

252.   As detailed above, Robert Arnott and Ralph Albrecht knowingly and intentionally misrepresented the inventorship of the '577 patent application that led to as the '577 patent, '502 patent, and the '740 patent.  By virtue of their knowing and intentional misrepresentation regarding inventorship, the '502 patent, the '740 patent and the '577 patent are unenforceable due to inequitable conduct. Furthermore, infectious unenforceable results from the details alleged above regarding Robert Albrecht and Robert Arnott's false claims of joint inventorship that resulted in false claims of priority in the PTO.

**FOURTH AFFIRMATIVE DEFENSE:  NO INJUNCTIVE RELIEF**

253.   Plaintiff is not entitled to injunctive relief because any injury to RA is not immediate or irreparable, and/or RA has an adequate remedy at law.

**FIFTH AFFIRMATIVE DEFENSE:  PROSECUTION HISTORY ESTOPPEL & DISCLAIMER**

254.   The Patents-in-Suit are unenforceable in whole or in part and/or are limited in scope because of the doctrines of prosecution history estoppel and/or prosecution disclaimer and/or specification disclaimer.

**SIXTH AFFIRMATIVE DEFENSE:  LACHES, WAIVER, & ESTOPPEL**

255.   The Patents-in-Suit are unenforceable in whole or in part because of laches, waiver and/or estoppel.

**SEVENTH AFFIRMATIVE DEFENSE:LIMITS ON DAMAGES UNDER 35 U.S.C. § 287**

256.   Plaintiff's claims for relief and alleged damages are limited by 35 U.S.C. § 287.

56

## EIGHTH AFFIRMATIVE DEFENSE:  UNCLEAN HANDS, PATENT MISUSE & UNFAIR COMPETITION

257.   Plaintiff's claims are barred in whole or part by reason of its unclean hands, patent misuse, and/or unfair competition, such as by Plaintiff abusing and/or attempting to abuse, the exclusive rights purportedly enjoyed as a result of the issuance of the Patents-in-Suit with anticompetitive effect.

## COUNTERCLAIMS

258.   For their counterclaims against Counterclaim Defendant Research Affiliates, LLC ("RA"), Counterclaim Plaintiffs WisdomTree Investments, Inc., WisdomTree Asset Management, Inc., WisdomTree Retirement Services, Inc., Mellon Capital Management Corp., and ALPS Distributors, Inc. (collectively "Counterclaim Plaintiffs ") aver as set forth below.

## THE PARTIES

259.   Counterclaim Plaintiff WisdomTree Investments, Inc. ("WT Investments") is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017.

260.   Counterclaim Plaintiff WisdomTree Trust ("WT Trust") is a trust organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017.

261.   Counterclaim Plaintiff WisdomTree Asset Management, Inc. ("WT Asset Management") is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor, New York, New York 10017.  WT Asset Management is a wholly-owned subsidiary of WT Investments.

262.   Counterclaim Plaintiff WisdomTree Retirement Services, Inc. ("WT Retirement Services") is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 380 Madison Avenue, 21st Floor,

57

1   New York, New York 10017.  WT Retirement Services is a wholly-owned

2   subsidiary of WT Investments.

3          263.   Counterclaim Plaintiff Mellon Capital Management Corp. ("MCM") is

4   a corporation organized and existing under the laws of the State of Delaware, with a

5   place of business at 50 Fremont Street, Suite 3900, San Francisco, California 94105.

6          264.   Counterclaim Plaintiff ALPS Distributors Inc. ("ALPS") is a

7   corporation organized and existing under the laws of the State of Colorado, with a

8   place of business at 1290 Broadway, Suite 1100, Denver, Colorado 80203.  ALPS is

9   a distributor or broker-dealer.

10         265.   On information and belief, Counterclaim-Defendant Research Affiliates

11  LLC ("RA") is a limited liability company organized under the laws of the State of

12  California and has a principal place of business at 620 Newport Center Dr., Suite

13  900, Newport Beach, California.

14                    **NATURE OF THE COUNTERCLAIMS**

15         266.   The counterclaims seek a declaration of non-infringement and

16  invalidity of U.S. Patent Nos. 7,747,502; 7,792,719; and 8,005,740 ("the Patents-in-

17  Suit").

18         267.   RA alleges in its Complaint that it is the owner of all right, title, and

19  interest to the Patents-in-Suit and has the right to bring an action and recover

20  damages for infringement of the Patents-in-Suit.  RA further alleges that each of the

21  Counterclaim Plaintiffs infringes some or all of the Patents-in-Suit.

22         268.   Defendants deny that they have ever directly or indirectly infringed, or

23  infringed in any manner, any valid and enforceable claim of the Patents-in-Suit.

24                    **JURISDICTION AND VENUE**

25         269.   These counterclaims arise under the Declaratory Judgment Act, 28

26  U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. §§ 1

27  et seq.

28

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS                    Case No. SACV11-01846 DOC (ANx)

1    270.  This Court has subject matter jurisdiction over these counterclaims

2  based upon 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

3    271.  This Court has personal jurisdiction over Counterclaim-Defendant RA

4  at least for the reason that it consented to jurisdiction by initiating this action.

5    272.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391

6  and 1400(b).

7  **BACKGROUND FACTS ON COUNTERCLAIM PLAINTIFFS'**
8  **DECLARATORY JUDGMENT COUNTERCLAIMS**

9    273.  Exchange traded funds (ETFs) are funds that are traded on major

10  exchanges as shares much in the same way that shares of an individual stock can be

11  traded.  Typically, ETFs are built by selecting a portfolio of a particular set of assets

12  (such as stocks) and then weighting them in some fashion.  Certain ETFs also

13  attempt to track an index representing a selected set of assets.

14    274.  For many years, various stock indexes have been developed to factor in

15  the share price or market capitalization of the selected assets so that those indexes

16  are sensitive to price changes in the market.  For example, the Dow Jones Industrial

17  30 index weights its assets based on price.  The S&P 500 index weights its assets

18  based on market capitalization of the companies associated with each equity asset.

19  Other indexes have equally weighted their components, without respect to price.

20    275.  Over the years, some academics and investors have found price or

21  market-cap based funds to be unsatisfactory because they believe these funds to be

22  overly influenced by market valuation, too volatile, and susceptible to providing

23  sub-optimal returns.

24    276.  These and other criticisms of price or market-cap based funds arise

25  from some very old ideas—value investing and the related notion of investing based

26  on a company's fundamentals instead of blindly following market valuation.

27  Warren Buffet has long preached value investing.  Popular financial books like

28  "Beating the Dow" (HarperCollins 1991) by Michael B. O'Higgins published in the

59

ANSWER, AFFIRMATIVE                    Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1  early 1990's taught investors to select stocks based on fundamental factors like

2  dividend yields.

3      277.  In the early 1990s, Robert Jones of Goldman Sachs identified a

4  problem with market-cap indexes and so recommended the use of "economic

5  investing" such as the use of earnings as a fundamental factor to create funds.  Mr.

6  Jones went on to construct a stock index that was weighted on the basis of adjusted

7  operating earnings and he managed funds on this basis from 1990 to 1996.

8      278.  In 2003, Paul Wood and Richard Evans published "Fundamental Profit-

9  based Equity Indexation" (Journal of Indexes 2003), which advocated using

10  "fundamental accounting items" for indexes "instead of market capitalization."  The

11  Wood and Evans article described an index called the "SandsEnd Profit based US

12  100 Index" that was constructed by selecting the 100 U.S. companies with the

13  largest profits, and then applying a weighting factor based on profitability to

14  calculate the index.

15      279.  The article by Wood and Evans also disclosed in 2003 that "Counsel

16  Trust (a Pennsylvania based Trust Company) is in the process of creating a U.S. 100

17  profit based index fund with Paul Wood acting as subadvisor."

18      280.  Also in 2003, Dow Jones introduced the Dow Jones U.S. Select

19  Dividend Index, which selected stocks based on dividend data and which weighted

20  stocks based on dividend per share instead of market capitalization.  In November

21  2003, Barclay's Global Investors launched an ETF based on the Dow Jones U.S.

22  Select Dividend Index.

23      281.  The work of Mr. Jones, the 2003 publication by Wood and Evans, the

24  launching of the Counsel Trust profit based index fund, and the launching of the

25  Dow Jones U.S. Select Dividend Index and the related ETF based on that index,

26  each referenced above, predated the filing of any patent application by Mr. Robert

27  Arnott, who is the sole named inventor of the '719 Patent and one of the two named

28  inventors of the '502 and '740 Patents.

60

282.   On February 4, 2004, Robert Arnott filed, listing himself as the sole inventor, a provisional U.S. patent application, Serial No. 60/541,733, which stated in part: "A new method of passive investing that is based on indexes which are built with metrics other than market capitalization weighting or equal weighting is provided." On October 12, 2004, Robert Arnott filed, again listing himself as the sole inventor, U.S. patent application No. 10/961,404, in which he claimed to have invented "a new method, system and computer program product for passive investing that is based on indexes which are built with metrics other than market capitalization weighting, share price weighting or equal weighting." Counterclaim Defendant RA, in the subsequent prosecution of the three Patents-in-Suit, claimed the benefit of these two patent applications by Robert Arnott for purposes of determining the priority of the claims that RA is now asserting are infringed by Counterclaim Plaintiffs.

283.   The idea of creating an index by selecting a portfolio based on a fundamental factor such as profit and then weighting the assets of the portfolio based on a fundamental factor was not conceived of first by Robert Arnott.

284.   In early November 2004, The New York Times published an article entitled "Why Your Stock Index Fund is Lagging the Market", suggesting that a new indexing method based on fundamentals like total revenue had been devised by "three analysts at Research Affiliates," including Robert Arnott. Shortly thereafter, however, The New York Times published a correction as follows: "The Strategies column on Nov. 7, about the weighting of stocks in index funds according to fundamental categories of accounting, rather than market capitalization, referred incompletely to the origins of the approach. In addition to three analysts at Research Affiliates ..., others have explored similar methods, including Robert C. Jones, a managing director at Goldman Sachs Asset Management; Paul Wood, a fund manager based in London; and Counsel Trust, a fund sponsor in York, Pa."

285.   On information and belief, prior to the publication of The New York Times articles in November 2004, neither Robert Arnott nor Counterclaim Defendant RA was aware of the work of Paul Wood on indexing based on fundamental factors or of the 2003 publication by Wood and Evans.

286.   Based on the above and other prior art references, the inventions claimed in the three Patents-in-Suit are anticipated or invalid as obvious, and should be declared invalid by this Court.

287.   The accused WT Indexes and the WT ETF funds referenced in Plaintiff's Complaint also do not infringe the claims of the Patents-in-Suit.  During the prosecution of the Patents-in-Suit, and consistent with statements in the specifications of the Patents-in Suit and in the various patent applications related to the Patents-in-Suit, Counterclaim Defendant RA proposed and obtained amended claim language clarifying that the claims of the Patents-in-Suit do not cover indexes based on an asset selection or weighting that relies upon stock or asset price or market capitalization.  Claim 1 of the '719 patent, for example, states that both selecting and weighting the assets to be used for creation of the index must be based upon factors that are "substantially independent of the market prices (P) of any of said assets (A) and … substantially independent of a market capitalization (MC) of any of said entities (E)."

288.   Completely separate from any efforts by Robert Arnott or Counterclaim Defendant RA to develop their index and investment methodology, WT Investments developed its own different investment methodology.  In the past, WT Investments' principal businesses were financial media and index development, with roots in the construction of stock indexes that stretch back to the 1990's.  In 2000, for example, WT Investments, then called Individual Investor Group, Inc.,  licensed to Nuveen Investments its America's Fastest Growing Companies Index to serve as the underlying index for an ETF that Nuveen was planning to launch.  Between 2001 and 2004, WT Investments developed new fundamentals based indexes and index

62

1  methodologies that incorporated accounting data into the construction of its indexes.

2  In June of 2006, WT Investments supported the launch by WT Trust of twenty ETFs

3  that tracked dividend-weighted indexes developed by WT Investments without

4  using the methodology claimed in the Patents-in-Suit.

5      289.  For example, the factors used by the WisdomTree ETFs to select the

6  assets that are to be included in an index include market capitalization and the price

7  of the assets, and thus the index and associated ETFs fall outside the scope of the

8  claims of the three Patents-in-Suit.  The WisdomTree Large Cap Dividend Index

9  ("WTLDI"), for instance, selects for inclusion the largest 300 dividend paying

10  companies in the United States based on market capitalization.

11      290.  In short, not only are the alleged inventions of the Patents-in-Suit not

12  valid or enforceable inventions because, among other things, they were anticipated

13  or rendered obvious by prior publications and activities of investment professionals

14  before the invention or priority date of the claims in the Patents-in-Suit, but also the

15  ETFs that Counterclaim Defendant RA accuses of infringement in this case do not

16  even practice the methods that are recited in the Patents-in-Suit.

17          **COUNT I:  DECLARATORY JUDGMENT OF**
18      **NON-INFRINGEMENT OF THE '502 PATENT**

19      291.  Counterclaim Plaintiffs repeat each and every allegation in Paragraphs

20  258-290 above in these Counterclaims as if fully set forth herein.

21      292.  Counterclaim Plaintiffs do not infringe the '502 patent because, among

22  other things, they do not make, use, import, sell, or offer to sell, and have not made,

23  used, imported, sold, or offered for sale, in the United States any product or service

24  which infringes any valid and enforceable claim of the '502 Patent either directly or

25  indirectly, contributorily or otherwise, and have not induced any others to infringe

26  any valid and enforceable claim of the '502 Patent.

27

28

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

Case No. SACV11-01846 DOC (ANx)

293.   Counterclaim Plaintiffs are entitled to a declaratory judgment that their products, services, and activities do not infringe any valid or enforceable claim of the '502 Patent.

## COUNT II:  DECLARATORY JUDGMENT OF INVALIDITY OF THE '502 PATENT

294.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs 258-290 above in these Counterclaims as if fully set forth herein.

295.   The '502 Patent is invalid because it fails to satisfy one or more of the requirements specified in Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

296.   Counterclaim Plaintiffs are entitled to a declaratory judgment that the '502 Patent is invalid.

## COUNT III:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '719 PATENT

297.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 258-290 above in these Counterclaims as if fully set forth herein.

298.   WT Investments, WT Trust and WT Asset Management do not infringe the '719 patent because, among other things, they do not make, use, import, sell, or offer to sell, and have not made, used, imported, sold, or offered for sale, in the United States any product or service which infringes any valid and enforceable claim of the '719 Patent either directly or indirectly, contributorily or otherwise, and have not induced any others to infringe any valid and enforceable claim of the '719 Patent.

299.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that their products, services, and activities do not infringe any valid or enforceable claim of the '719 Patent.

## COUNT IV:  DECLARATORY JUDGMENT OF

64

**INVALIDITY OF THE '719 PATENT**

300.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 258-290 above in these Counterclaims as if fully set forth herein.

301.   The '719 Patent is invalid because it fails to satisfy one or more of the requirements specified in Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

302.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that the '719 Patent is invalid.

**COUNT V:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '740 PATENT**

303.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 258-290 above in these Counterclaims as if fully set forth herein.

304.   WT Investments, WT Trust and WT Asset Management do not make, use, import, sell, or offer to sell, and have not made, used, imported, sold, or offered for sale, in the United States any product or service which infringes any valid and enforceable claim of the '740 Patent either directly or indirectly, contributorily or otherwise, and have not induced any others to infringe any valid and enforceable claim of the '740 Patent.

305.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that their products, services, and activities do not infringe any valid or enforceable claim of the '740 Patent.

**COUNT VI:  DECLARATORY JUDGMENT OF INVALIDITY OF THE '740 PATENT**

306.   WT Investments, WT Trust and WT Asset Management repeat each and every allegation in Paragraphs 258-290 above in these Counterclaims above as if fully set forth herein.

65

307.   The '740 Patent is invalid because it fails to satisfy one or more of the requirements specified in Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 119, and/or 120.

308.   WT Investments, WT Trust and WT Asset Management are entitled to a declaratory judgment that the '740 Patent is invalid.

## COUNT VII:  DECLARATORY JUDGMENT OF UNENFORCEABILITITY OF THE PATENTS-IN-SUIT

309.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs 258-290 above in these Counterclaims as if fully set forth herein.

310.   The '502, '719 and '740 Patents (collectively, the "Patents-in-Suit") are unenforceable due to inequitable conduct.  Applicants, including Robert Arnott and prosecution counsel Ralph Albrecht, engaged in inequitable conduct during prosecution of the applications for the Patents-in-Suit in the USPTO.  That inequitable conduct renders the Patents-in-Suit and each of its claims unenforceable.

**The Patents-in-Suit are Unenforceable Due to Inequitable Conduct Based on the Failure to Disclose Material Prior Art to the USPTO**

311.   At least named inventor Robert Arnott and Research Affiliates' prosecuting attorney Ralph Albrecht engaged in inequitable conduct during the prosecution of the applications for the '502, '719 and '740 Patents (collectively, the "Patents-in-Suit") in the USPTO by intentionally failing to disclose at least:

    a.  the iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select Dividend Index,

    b.  the work of David Morris using the FTSE Group ("FTSE") for the GWA Wealth-based Indexes, and

    c.  Robert C. Jones work on the Goldman Sachs Earnings-Weighted Index, to the USPTO patent examiner during prosecution of the Patents-in-Suit.  That inequitable conduct renders the Patents-in-Suit and each of their claims unenforceable.

66

**Robert Arnott's and Ralph Albrecht's Failure to Disclose the iShares Dow
Jones Select Dividend Index Fund and its Underlying Dow Jones U.S. Select
Dividend Index to the USPTO**

312.   At least named inventor Robert Arnott and Research Affiliates'
prosecuting attorney, Ralph Albrecht, engaged in inequitable conduct during the
prosecution of the applications for the '502, '719 and '740 Patents in the USPTO by
withholding the iShares Dow Jones Select Dividend Index Fund and its underlying
Dow Jones Select Dividend Index from the examiner during prosecution of the
Patents-in-Suit.  That inequitable conduct renders the Patents-in-Suit and each of
their claims unenforceable.

313.   But for Robert Arnott's and Ralph Albrecht's failure to disclose the
iShares Dow Jones Select Dividend Index Fund and its underlying Dow Jones Select
Dividend Index to the USPTO, at least claims 1-4, 15, 18-20, 23, 31, 33-34, 38-41,
49 and 52-55 of the '502 Patent; claims 1 and 34-36 of the '719 Patent; and claims
1, 6, 8, 10, 23-25 and 73 of the '740 Patent would not have issued or been allowed
by the USPTO.

314.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs
67-123 above in these Affirmative Defenses as if fully set forth herein.

**Robert Arnott's Failure to Disclose the work of David Morris using the FTSE
for the GWA Wealth-Based Index to the USPTO**

315.   Robert Arnott engaged in inequitable conduct during the prosecution of
the applications for the '502, '719 and '740 patents (collectively, the "patents-in-
suit") in the United States Patent and Trademark Office ("USPTO") by withholding
David Morris' work using FTSE for the GWA Wealth-based Indexes from the
Examiner during prosecution.  That inequitable conduct renders the patents-in-suit
and each of their claims unenforceable.

316.   But for Robert Arnott's failure to disclose David Morris's work and
the FTSE GWA Indexes to the USPTO, at least claim 1 of the '502 Patent, claim 1

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS                         Case No. SACV11-01846 DOC (ANx)

1  of the '719 Patent, and claim 1 of the '740 Patent would not have issued or been

2  allowed by Patent Office.

3       317.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs

4  124-147 above in these Affirmative Defenses as if fully set forth herein.

5  **Robert Arnott's  Failure to Disclose Robert C. Jones's Earning-Weighted**

6  **Index and GSAM's Earnings-Weighted Index Fund to the USPTO**

7       318.   As a named inventor, Robert Arnott engaged in inequitable conduct

8  during the prosecution of the applications for the '502, '719 and '740 patents

9  (collectively, the "patents-in-suit") in the United States Patent and Trademark Office

10  ("USPTO") by withholding the Earnings-Weighted Index developed by Robert C.

11  Jones of Goldman Sachs Asset Management ("GSAM") and GSAM's Earnings-

12  Weighted Index Fund from the examiner during prosecution.  That inequitable

13  conduct renders the patents-in-suit and each of their claims unenforceable.

14       319.   But for Robert Arnott's failure to disclose Robert C. Jones's Earnings-

15  Weighted Index and GSAM's Earnings-Weighted Index Fund , at least claims 1-4,

16  15, 18-20, 23, 31, 33-34, 38-41, 49 and 52-55 of the '502 Patent; claims 1 and 34-36

17  of the '719 Patent; and claims 1, 6, 8, 10, 23-25 and 73 of the '740 Patent would not

18  have issued or been allowed by the USPTO.

19       320.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs

20  148-189 above in these Affirmative Defenses as if fully set forth herein.

21  **The Patents-in-Suit are Unenforceable Due to Intentional False Statements and**

22  **Egregious Misconduct Concerning False Claims of Joint Inventorship**

23       321.   At least Robert Arnott, founder of Research Affiliates LLC ("RA") and

24  its patent attorney, Ralph Albrecht, engaged in affirmative, egregious misconduct

25  and inequitable conduct during the prosecution of the applications for the '502

26  Patent, the '740 Patent and U.S. Patent No. 7,620,577 (the "'577 patent") that

27  renders at least the '502 Patent and the '740 Patent and each of their claims

28  unenforceable.  In particular, during the prosecution of the '502, '740 and '577

68

1  patents Robert Arnott and Ralph Albrecht knowingly and intentionally falsely

2  represented in the application for the '577 patent that Robert Arnott and Paul Wood

3  were joint inventors of the subject matter disclosed and claimed therein.  That

4  misrepresentation was perpetuated when the applications for the '502 and '740

5  patents asserted priority to the '577 patent.

6       322.   Counterclaim Plaintiffs repeat each and every allegation in Paragraphs

7  190-252 above in these Affirmative Defenses as if fully set forth herein.

8                    **RESERVATION OF RIGHTS**

9       323.   Counterclaim Plaintiffs reserve the right to add additional defenses

10  and/or counterclaims that discovery may reveal.

11                          **JURY DEMAND**

12       Pursuant to Federal Rule of Civil Procedure Rule 38, Defendants demand a

13  trial by jury of all issues raised by this Amended Complaint which are triable by

14  jury.

15                        **PRAYER FOR RELIEF**

16       WHEREFORE, Counterclaim Plaintiffs deny that Plaintiff/Counterclaim-

17  Defendant is entitled to any of the relief prayed for in its Complaint and pray that

18  the Court:

19       1)    Dismiss Plaintiff's Complaint with prejudice;

20       2)    Deny all relief requested by Plaintiff;

21       3)    Enter judgment in favor of Defendants and against Plaintiff on all

22             counts in Plaintiff's Complaint;

23       4)    Enter judgment in favor of Counterclaim Plaintiffs and against

24             Counterclaim Defendant on all counterclaims;

25       5)    Declare that Counterclaim Plaintiffs do not and have not infringed,

26             directly or indirectly, any of the Patents-in-Suit;

27       6)    Declare that each of the Patents-in-Suit is invalid;

28       7)    Declare that each of the Patents-in-Suit is unenforceable.

ANSWER, AFFIRMATIVE                    Case No. SACV11-01846 DOC (ANx)
DEFENSES AND COUNTERCLAIMS

1      8)    Award Defendants/Counterclaim Plaintiffs their attorneys' fees and

2            costs;

3      9)    Permanently enjoin Plaintiff, its successors, assigns, and anyone

4            acting in concert therewith or on its behalf, from attempting to

5            enforce the Patents-in-Suit against Defendants or any parents,

6            affiliates, subsidiaries thereof, or Defendants respective officers,

7            agents, employees, successors, assigns, or customers;

8      10)   Declare this case exceptional under 35 U.S.C. § 285 if warranted;

9            and

10     11)   Grant such other further relief as the Court may deem just and

11            proper.

12

13  Dated:  July 16, 2012           Respectfully submitted,

14

15                        By: _____
                           Peter J. Wied

16                        *pwied@goodwinprocter.com*
                         **GOODWIN PROCTER LLP**

17                        Attorneys for Defendants

18                        **WISDOM TREE INVESTMENTS, INC., WISDOM TREE TRUST, WISDOM TREE**

19                        **ASSET MANAGMENET, INC.,**

20                        **WISDOM TREE RETIREMENT SERVICES, INC., MELLON CAPITAL MANAGMENT**

21                        **CORP., AND ALPS DISTRIBUTORS, INC.**

22

23

24

25

26

27

28

ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS           Case No. SACV11-01846 DOC (ANx)

# **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 S. Figueroa Street, 41st Floor, Los Angeles, California 90017-5704.

On **July 20, 2012**, I caused the following:

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

to be served upon the following persons listed below:

| | |
|---|---|
| Natalie J. Morgan<br>*nmorgan@wsgr.com*<br>**WILSON SONSINI GOODRICH & ROSATI, P.C.**<br>12235 El Camino Real, Suite 200<br>San Diego, CA 92130<br>Tel.: 858.350.2303<br>Fax: 858.350.2399 | Attorneys for Plaintiff:<br>**RESEARCH AFFILIATES, LLC** |
| David S. Steuer<br>*dsteuer@wsgr.com*<br>**WILSON SONSINI GOODRICH & ROSATI, P.C.**<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Tel.: 650.493.9300<br>Fax: 650.565.5100 | Attorneys for Plaintiff:<br>**RESEARCH AFFILIATES, LLC** |
| Jose C. Villarreal<br>*jvillarreal@wsgr.com*<br>**WILSON SONSINI GOODRICH & ROSATI, P.C.**<br>900 South Capital of Texas Hwy<br>Las Cimas IV, Fifth Floor<br>Austin, TX 78746<br>Tel.: 512.338.5400<br>Fax: 512.338.5499 | Attorneys for Plaintiff:<br>**RESEARCH AFFILIATES, LLC** |

☑ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

1        I declare under penalty of perjury that I am employed in the office of a member
2    of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

3        Executed on **July 20, 2012**, at Los Angeles, California.

4

5

6    _____          _____
         Kemi Oyemade
7        (Type or print name)                    (Signature)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28